HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

BRITTANY E. BENNETT
MEGAN FREDERICK
Trial Attorneys, Voting Section
Civil Rights Division

U.S. Department of Justice
4CON – Room 8.141
950 Pennsylvania Avenue N.W.
Washington, D.C. 20530
Telephone: (202) 304-2927
Email: Megan.Frederick@usdoj.gov

Attorneys for Plaintiff, UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA BOARD OF ELECTIONS; MONICA H. EVANS, in her Official Capacity as Executive Director for the District of Columbia Board of Elections; GARY THOMPSON, in his official capacity for the District of Columbia Board of Elections as Chair and Member; and KARYN GREENFIELD, in her official capacity for the District of Columbia Board of Elections as Member,<br><br>Defendants. | CASE NO:<br><br>MEMORANDUM IN SUPPORT OF THE REQUEST FOR ORDER TO COMPEL PRODUCTION OF RECORDS PURSUANT TO 52 U.S.C. § 20701, *et seq*. |

**MEMORANDUM OF LAW**

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 4

BACKGROUND ..................................................................................................................... 5

       A.     Title III of the Civil Rights Act of 1960 .................................................... 5

       The Attorney General is demanding federal election records under the CRA to assess District of Columbia's NVRA and HAVA compliance.
…………………………………………………………………………...7

ARGUMENT…………………………………………............................................9

       A.  The United States is entitled to an Order to Compel Production under the CRA……………………………………………………………..9

       B.  The CRA does not permit Defendants to withhold federal elections because of privacy concerns.…………..…………………………………………….11

       C.  The Attorney General is entitled to relief under the CRA's summary proceeding for obtaining federal election records………………………….13

CONCLUSION………………………………………………………………………...14

# TABLE OF AUTHORITIES

**Cases**

*Abbot v. Am. Cyanamid Co.*, 844 F.2d 1108 (4th Cir. 1988) .......................................................... 16

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960) ........................................ 6

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ................................................. 16

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ................................................................ 5, 15

*Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025) ................................................................................................................................ 16, 17

*Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961) ........................................................... 6

*In re Gordon*, 218 F. Supp. 826 (S.D. Miss. 1963) ........................................................................ 8

*Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1241 (11th Cir. 2020)……………………......14

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) ........................................................................... 8

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) .................................................................. passim

*Smith v. City of Jackson*, 544 U.S. 228 (2005) ............................................................................ 18

**Statutes**

18 U.S.C. § 2721 ........................................................................................................................... 11

5 U.S.C. § 552a ............................................................................................................................. 11

52 U.S.C. § 20501 ......................................................................................................................... 10

52 U.S.C. § 20507 ......................................................................................................................... 18

52 U.S.C. § 20701 ................................................................................................................. 5, 7, 13

52 U.S.C. § 20704 ......................................................................................................................... 12

52 U.S.C. § 20706 ......................................................................................................................... 13

52 U.S.C. § 21083 ................................................................................................................... 10, 11

52 U.S.C. § 20507 ......................................................................................................................... 10

D.C. Code § 2–534(a)(2) ............................................................................................................ 9, 10

**Constitutional Provisions**

U.S. Const. art. VI ......................................................................................................................... 15

## INTRODUCTION

Section 301 of Title III of the Civil Rights Act of 1960 ("CRA") imposes a "sweeping" obligation on election officials. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962).[1] It provides, "Every officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election…" 52 U.S.C. § 20701 (transferred from 42 U.S.C. § 1974) (emphasis added).

Section 303 provides the Attorney General of the United States a correspondingly sweeping power to obtain Federal election records: "Any record or paper required by [52 U.S.C. § 20701] to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying … by the Attorney General or [her] representative…." 52 U.S.C. § 20703. The written demand need only "contain a statement of the basis and the purpose therefor." *Id.*; *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam).

On August 14, 2025, the Attorney General, through her representatives, made a written demand to Defendants to produce certain federal election records covered by the CRA. That written demand explained that the purpose of the demand was to assess District of Columbia's compliance with the list maintenance requirements of the National Voter Registration Act

---

[1] Caselaw addressing the CRA in any depth is confined to courts within the Fifth Circuit in the early years following the CRA's enactment. Since then, courts have not had occasion to revisit the issue. The United States is unaware of any courts disagreeing with the Fifth Circuit's approach to the CRA.

("NVRA") and the Help America Vote Act ("HAVA"). Defendants refused to produce the requested Federal election records. This litigation followed.

Pursuant to Section 305 of the CRA, the United States moves for an order to compel production that requires Defendants to produce the Federal election records identified in the written demand. *See Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 855-56 (M.D. Ala. 1960), *aff'd and adopted in full sub nom. Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961) (per curiam). The CRA displaces the Federal Rules of Civil Procedure by creating a "special statutory proceeding." *Lynd*, 306 F.2d at 225. "All that is required is a simple statement by the Attorney General" after making a written demand for Federal election records and papers covered by the statute, explaining that the person against whom an order is sought has failed or refused to make the requested records "'available for inspection, reproduction, and copying…'" *Id.* at 226 (quoting 52 U.S.C. § 20703). The United States has satisfied those requirements. Accordingly, the United States respectfully requests that the Court issue an order to compel Defendants to produce the federal election records described in its written demand.

## BACKGROUND

**A. Title III of the Civil Rights Act of 1960.**

Under Section 301 of the CRA, every "officer of election" must "retain and preserve … all records and papers which come into his possession relating to any … act requisite to voting in [a Federal] election" for a period of twenty-two months from that election. 52 U.S.C. § 20701. Section 303 of the CRA provides, "Any record or paper required by section 301 to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney

General or [her] representative….” 52 U.S.C. § 20703. The written demand "shall contain a statement of the basis and the purpose therefor." *Id.*

If an officer of election refuses to comply with the CRA's command, the Act requires "a special statutory proceeding in which the courts play a limited, albeit vital, role" in assisting the Attorney General's investigative powers. *Lynd*, 306 F.2d at 225. The Attorney General or her representative may request a federal court to issue an order directing the officer of election to produce the demanded records, akin to "a traditional order to show cause, or to produce in aid of an order of an administrative agency." *Id.*

The special proceeding is "summary" in "nature" and neither "plenary [n]or adversary." *In re Gordon*, 218 F. Supp. 826, 826-27 (S.D. Miss. 1963); *see Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962) (noting that this procedure "does not amount to the filing of a suit of any kind"). "All that is required is a simple statement by the Attorney General that after a … written demand" for federal election records covered by Section 301 of the CRA (52 U.S.C. § 20701), "the person against whom an order for production is sought … has failed or refused to make such papers 'available for inspection, reproduction, and copying ….'" *Lynd*, 306 F.2d at 226 (quoting 52 U.S.C. § 20703). The court does not entertain "any other procedural device or maneuver—either before or during any hearing of the application—to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Id.* (quoting 52 U.S.C. § 20703). Rather, "[t]he Court, with expedition, should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination." *Id.*

Those matters, though, are "severely limited." *Id.* The court may adjudicate only: (1) "whether the written demand has been made"; and (2) "whether the custodians against whom

orders are sought have been given reasonable notice of the pendency of the proceeding." *Id.* Neither "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand" nor "the scope of the order to produce" is open for review. *Id.*; *see Coleman*, 313 F.2d at 868. As the Fifth Circuit has explained, "No showing even of a prima facie case of a violation of federal law need be made." *Id.* (citation omitted). Instead, "[i]f, after issuance of an order to produce, a genuine dispute subsequently arises as to whether or not any specified particular paper or record comes within [52 U.S.C. § 20701's] broad statutory classification," that issue may be decided by the court. *Lynd*, 306 F.2d at 226.

      **B.**    **The Attorney General is demanding federal election records under the CRA to assess District of Columbia's NVRA and HAVA compliance.**

On July 11, 2025, the Attorney General, acting through her representatives at the Department of Justice ("Department"), sent a letter to Defendants regarding District of Columbia's compliance with federal list maintenance requirements. Ex. 1, Dep't Ltr. to Defendants dated July 11, 2025 ("July 11 Letter"). The NVRA and HAVA have list maintenance requirements "to protect the integrity of the electoral process." 52 U.S.C. § 20501(b)(3). The statutes impose certain recordkeeping duties and require reasonable efforts to maintain lists of eligible voters for federal elections. *See* 52 U.S.C. §§ 20507(a)(4), 20507(i)(1), 21083(a)(1)(A).

The July 11 Letter requested a copy of District of Columbia's districtwide voter registration list ("VRL") within fourteen days of the date of the letter. On August 14, 2025, the Attorney General sent another letter clarifying the July 11 Letter and requested that District of Columbia provide a current electronic copy of its computerized districtwide voter registration list, containing "all fields" ("SVRL"), required under Section 303 of HAVA. Ex. 2, Dep't Ltr. to Defendants dated August 14, 2025 ("August 14 Letter").

The Attorney General's August 14 Letter asked Defendants to produce the requested information and records by encrypted email or via the Department's secure file-sharing system, Justice Enterprise File Sharing (JEFS).

The August 14 Letter explained to Defendants that "HAVA specifies that the 'last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974.'" *See* 5 U.S.C. § 552a note; 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Department is now doing.

To alleviate any privacy concerns, the Department made clear in the August 14 Letter that the Attorney General and her representatives would comply with federal privacy laws applicable to the demanded federal election records. For example, the Department pointed out that in addition to the Privacy Act, the CRA provides:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

*See* August 14 Letter (quoting 52 U.S.C. § 20704).

In response, on September 4, 2025, Defendants refused to comply, stating:

> "We write in response to your letter dated August 14, 2025, requesting that the District of Columbia Board of Elections ("BOE" or "Board") provide an electronic copy of the District's complete voter registration list ("VRL"), including registrants' dates of birth, driver's license numbers, and Social Security numbers.
>
> After careful review, and in consultation with the Office of the Attorney General for the District of Columbia ("OAG") and the District of Columbia Office of Open Government

("OOG"), we must respectfully decline to provide unredacted personally identifiable information ("PII") as we are not legally authorized to do so."

"Under D.C. FOIA Exemption 2 (D.C. Code § 2–534(a)(2)), agencies may withhold "[i]nformation of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy." Voter PII—such as dates of birth, driver's license numbers, and Social Security numbers—falls squarely within this exemption."

*See* Ex. 3, September 4 Letter.

## ARGUMENT

**A.     The United States is entitled to an Order to Compel Production under the CRA.**

An order to compel production of documents under the CRA is appropriate when the United States files a "simple statement" describing its written demand for inspection, reproduction, and copying, and explaining that the officer of election to whom it was directed has "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Lynd*, 306 F.2d at 226 (citation omitted). The written demand must include "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

The Department's August 14 Letter satisfies these requirements by: (1) making a written demand for inspection, reproduction, and copying of federal election records, including the SVRL and records of voter registration application within twenty-two months of a federal election; (2) directing that demand to Defendants, an officer of election as defined by Section 306 of the CRA;[2] and (3) stating that the purpose of the demand is to "ascertain District of Columbia's

---

[2] Section 306 provides:

> As used in this chapter, the term ''officer of election'' means any person who, under color of any Federal, State, Commonwealth, or local law, statute, ordinance, regulation, authority, custom, or usage, performs or is authorized to perform any function, duty, or task in connection with any application, registration, payment of poll tax, or other act requisite to voting in any general, special, or primary election at which votes are cast for candidates for the office of President, Vice

compliance with the list maintenance requirements of the NVRA and HAVA " Ex. 2, August 14 Letter.

Defendants rely on district law, D.C. FOIA Exemption 2 (D.C. Code § 2–534(a)(2)), as a basis for their refusal to comply with federal law. Defendants reliance on district law to deny the Attorney General's demand for a copy of the District of Columbia's VRL is without merit and insufficient. Officers of election have no discretion to refuse or otherwise limit the federal election records or papers or the content of those records made available to the Attorney General. *See* 52 U.S.C. § 20703; *see also* 52 U.S.C. § 20701 (referring to "all records and papers").

The Attorney General cannot assess compliance with HAVA and the NVRA without the full, unredacted VRL and other requested federal election records pertaining to District of Columbia's list maintenance efforts. HAVA prohibits a state from processing a voter registration application without the applicant's driver's license number, where an applicant has a current and valid driver's license, or, for other applicants, the last four digits of the applicant's social security number; for those lacking both identification numbers, the state must assign a unique HAVA identifier. *See* 52 U.S.C. § 21083(a)(5)(A)(i)-(ii). Without the data including those identification numbers, the United States cannot evaluate the state's compliance with HAVA.

Similarly, HAVA requires list maintenance to "be conducted in a manner that ensures" the elimination of duplicate names from the statewide list. 52 U.S.C. § 21083(a)(2)(B)(iii). Unredacted voter files, including the three identification numbers described above, are needed to determine if the state has a reasonable program of identifying and removing duplicate voter registrations. That

---

President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico.

52 U.S.C. § 20706.

is why District of Columbia joined twenty-five other states in sharing the identical information sought by the Attorney General here with a private organization known as the Electronic Registration Information Center ("ERIC"). District of Columbia provides unredacted voter registration information to ERIC on a routine basis.

The same unredacted federal election records, including the VRL, are needed to assess District of Columbia's compliance with the NVRA. The use of unredacted voter data ensures that matches to identify deceased and duplicate voters are more accurate and complete.

Defendants have rejected the United States's written demand pursuant to the CRA to produce District of Columbia's districtwide VRL, a federal election record. Consequently, the United States respectfully requests that this Court issue an Order compelling Defendants to immediately produce those records through a secure method. *See Lynd*, 306 F.2d at 226; *Coleman*, 313 F.2d at 868.

> **B.     The CRA does not permit Defendants to withhold federal elections because of privacy concerns.**

Defendants have refused to produce the federal election records demanded by the Attorney General under the CRA because they contend that District of Columbia's election law and the Federal Privacy Act prohibit cooperation without an appropriate purpose stated by the Attorney General. First, the July 11 and August 14 Letters provided Defendants with the Attorney General's purpose for the demand. Second, the Supremacy Clause of the Constitution says otherwise. It is a basic tenet of our federal system that when federal and state law conflict, the federal law governs. *See* U.S. Const. art. VI. As the United States Supreme Court has explained, the Elections Clause "…functions as a default provision; it invests the States with responsibility for the mechanics of

congressional elections, but only so far as Congress declines to preempt state legislative choices." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 14 (2013).

A South Carolina court recently confronted the same argument from an individual voter seeking to enjoin state officials from cooperating with the Department. Addressing federal preemption over state statutes governing privacy, the court explained, "Federal law likely requires the Election Commission to provide the requested information to DOJ, and while DOJ has also pointed to the National Voter Registration Act and the Help America Vote Act, Title III [of the Civil Rights Act] alone is sufficient to reach that conclusion." *Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025), attached to the Declaration of Eric Neff as Ex. 4, at 10. The court noted, "Title III requires that, for 22 months after a federal election, a state election official 'retain and preserve' 'all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election.' 52 U.S.C. § 20701." *Id.* at 10-11. The court reasoned:

> Title III has long been understood to "encompass[], among other things, voting registration records," *McIntyre v. Morgan*, 624 F. Supp. 658, 664 (S.D. Ind. 1985), which is not surprising given the scope of the statutory text. And since HAVA's enactment two decades ago, registration records must include either "the applicant's driver's license number" or "the last four digits of the applicant's social security number." 52 U.S.C. § 21083(a)(5)(A). The Attorney General (or his representative) may demand in writing "[a]ny record or paper" that a state election official must keep under § 20701. *Id.* § 20703. That demand must simply "contain a statement of the basis and the purpose therefor." *Id*.

*Id.* at 11. As a result, the court found, "DOJ's request for South Carolina's voter registration list fits comfortably within this legal framework" and denied the voter's request to enjoin the state's production of its list to the Department. *Id.* at 11-12. For those reasons, *id.*, any state-law privacy right to the contrary is preempted by the CRA's broad grant of access to the Attorney General. *See* 52 U.S.C. § 20703; *Summers*, 769 F. Supp. 3d at 461 Consequently, the Attorney General is entitled

to the federal election records she has demanded from Defendants under the CRA, notwithstanding any conflicting district privacy laws.

### C. The Attorney General is entitled to relief under the CRA's summary proceeding for obtaining federal election records.

The CRA displaces the Federal Rules of Civil Procedure and creates a "special statutory proceeding" under which Defendants, as officers of elections for the District of Columbia, must produce the voter-registration lists and other federal election records demanded by the Attorney General.[3] *Lynd*, 306 F.2d at 225. The court in *Lynd* reasoned that a special proceeding was necessary to obtain federal election records because no other procedural device or maneuver was available:

> There is no place for a motion for a bill of particulars or for a more definite statement under F.R.Civ.P. 12(e), 28 U.S.C.A. There is no place for any other procedural device or maneuver— either before or during any hearing of the application— to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand. [52 U.S.C. § 20703]. Thus with respect to the reasons why the Attorney General considers the records essential, there is no place, either as a part of pleadings, discovery, or trial, for interrogatories under F.R.Civ.P. 33, oral depositions of a party under F.R.Civ.P. 26(a), 30, production of documents under F.R.Civ.P. 34, or request for admissions as to facts or genuineness of documents or other things under F.R.Civ.P. 36, 37.

*Id.* at 226.

The "special statutory proceeding" of these statutes is "a summary proceeding." *Id.* at 225-26. To institute this proceeding, the United States need only file a "simple statement" describing its written demand for the federal election records and explaining that Defendants, acting as

---

[3] Although this Motion for an Order to Compel Production is made under the CRA, the United States notes that the NVRA includes a similar requirement for production of federal election records. *See* 52 U.S.C. § 20507, 20510(a). "[W]hen Congress uses the same language in two statutes having similar purposes … it is appropriate to presume that Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion).

officers of elections for District of Columbia , "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Id.* at 226 (citation omitted). Accordingly, the Court "should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination." *Id.* The Attorney General's right to reproduction and copying of Federal election records is not dependent upon any other showing. *Id.* Therefore, the United States respectfully requests that this Court issue an Order directing Defendants to produce the Federal election records described in the Attorney General's written demand.

## CONCLUSION

For the foregoing reasons, the United States requests that this Court enter an Order directing Defendants to comply with the Attorney General's Demand pursuant to the CRA an electronic copy of the district's VRL including the name, date of birth, and Driver's license number or last four digits of the social security number or the HAVA unique identifier. Those records should be provided electronically to the United States within five days.

Dated: December 18, 2025				Respectfully submitted,

											HARMEET K. DHILLON
											Assistant Attorney General
											Civil Rights Division


											 /s/    *Brittany E. Bennett*
											BRITTANY E. BENNETT
											MEGAN FREDEERICK
											Trial Attorney, Voting Section
											Civil Rights Division
											4 Constitution Square
											150 M Street, Room 8.137
											Washington, D.C. 20002
											Megan.Frederick@usdoj.gov
											Tel. (202) 704-5430
											Attorneys for the United States

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ *Brittany E. Bennett*
Brittany E. Bennett
Megan Frederick
Trial Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.137
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: brittany.bennett@usdoj.gov