IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>DISTRICT OF COLUMBIA BOARD OF ELECTIONS; MONICA H. EVANS, in her Official Capacity as Executive Director for the District of Columbia Board of Elections; GARY THOMPSON, in his official capacity for the District of Columbia Board of Elections as Chair and Member; and KARYN GREENFIELD, in her official capacity for the District of Columbia Board of Elections as Member,<br><br>        Defendants. | Civil Action No. 25-cv-4403 (RDM) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MARYLAND/DC ALLIANCE FOR RETIRED AMERICANS' MOTION TO INTERVENE AS DEFENDANT**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 2

I.     Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers........................................................................ 2

II.    The Department of Justice has embarked on an unprecedented nationwide campaign to collect personal voter registration data held by the states.................................................. 4

III.   The Department of Justice sues D.C. to obtain its complete registration list. ................... 5

IV.   The Alliance's members' sensitive personal information is placed in jeopardy by DOJ's demands. ......................................................................................................................... 6

LEGAL STANDARD.................................................................................................... 7

ARGUMENT ................................................................................................................. 8

I.     The Alliance is entitled to intervene as of right. .............................................................. 8

    A.    The motion to intervene is timely and will not prejudice the parties..................... 8

    B.    As other courts have recognized in parallel litigation, the Alliance has substantial interests in protecting its members' sensitive and personal information from improper disclosure to DOJ. ................................................................................. 8

    C.    As other courts have recognized in parallel litigation, the existing parties do not adequately represent the Alliance's interests. ....................................................... 12

II.    Alternatively, the Alliance should be granted permissive intervention. ........................... 15

CONCLUSION.............................................................................................................. 16

CERTIFICATE OF SERVICE ................................................................................... 17

# TABLE OF AUTHORITIES

**CASES**                                                               **Page(s)**

*Ala. ex rel. Gallion v. Rogers*,
   187 F. Supp. 848 (M.D. Ala. 1960) ................................................................. 5

*All. for Retired Ams v. Bessent*,
   770 F. Supp. 3d 79 (D.D.C. 2025) ................................................................. 10

*Am. Farm Bureau Fed'n v. U.S. Fish & Wildlife Serv.*,
   2025 WL 2576313 (D.D.C. Sept. 5, 2025) ...................................................... 8

*Am. Fed'n of Gov't Emps. v. U.S. Off. of Pers. Mgmt.*,
   777 F. Supp. 3d 253 (S.D.N.Y. 2025) ........................................................... 10

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
   570 U.S. 1 (2013) ........................................................................................... 2

*Ass'n of Conn. Lobbyists LLC v. Garfield*,
   241 F.R.D. 100 (D. Conn. 2007) ................................................................... 15

*Bellitto v. Snipes*,
   935 F.3d 1192 (11th Cir. 2019) ..................................................................... 14

*Bellitto v. Snipes*,
   No. 16-cv-61474, 2016 WL 5118568 (S.D. Fla. Sep. 21, 2016) ...................... 13

*\*Berger v. N.C. State Conf. of the NAACP*,
   597 U.S. 179 (2022) ................................................................................... 2, 13

*Brennan v. N.Y.C. Bd. of Educ.*,
   260 F.3d 123 (2d Cir. 2001) .......................................................................... 14

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*,
   No. 1:18-cv-11657-ER, 2020 WL 1432213 (S.D.N.Y. Mar. 24, 2020) ........... 15

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
   647 F.3d 893 (9th Cir. 2011) ......................................................................... 13

*City of Chicago v. Fed. Emergency Mgmt. Agency*,
   660 F.3d 980 (7th Cir. 2011) ......................................................................... 14

*Crossroads Grassroots Pol'y Strategies v. FEC*,
   788 F.3d 312 (D.C. Cir. 2015) .................................................................. 7, 12

*Deutsche Bank Nat'l Tr. Co. v. FDIC*,
    717 F.3d 189 (D.C. Cir. 2013) ........................................................................ 7

*Donaldson v. United States*,
    400 U.S. 517 (1971) ........................................................................................ 8

*Feller v. Brock*,
    802 F.2d 722 (4th Cir. 1986) ........................................................................ 16

*Foster v. Love*,
    522 U.S. 67 (1997) .......................................................................................... 2

*Fund for Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003) ................................................................... 9, 12

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ...................................................................................... 10

*Husted v. A. Philip Randolph Inst.*,
    584 U.S. 756 (2018) ........................................................................................ 3

*Institutional S'holder Servs., Inc. v. Sec. & Exch. Comm'n*,
    142 F.4th 757 (D.C. Cir. 2025) ....................................................................... 9

*Issa v. Newsom*,
    No. 2:20-CV-01044-MCE-CKD, 2020 WL 3074351 (E.D. Cal. June 10,
    2020) ............................................................................................................ 11

*Jud. Watch, Inc. v. Ill. State Bd. of Elections*,
    No. 1:24-cv-01867, 2024 WL 3454706 (N.D. Ill. July 18, 2024) .................... 11

*Kalbers v. U.S. Dep't of Just.*,
    22 F.4th 816 (9th Cir. 2021) ...................................................................... 9, 12

*Kennedy v. Lynd*,
    306 F.2d 222 (5th Cir. 1962) .......................................................................... 5

*Kleissler v. U.S. Forest Serv.*,
    157 F.3d 964 (3d Cir. 1998) ..................................................................... 13, 14

*La Union del Pueblo Entero v. Abbott*,
    29 F.4th 299 (5th Cir. 2022) ......................................................................... 11

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*,
    659 F.3d 421 (5th Cir. 2011) ......................................................................... 11

*League of Women Voters of N.C. v. North Carolina*,
   No. 1:13-CV-660, 2014 WL 12770081 (M.D.N.C. Jan 27, 2014) ................................. 16

*Moore v. Circosta*,
   No. 1:20-CV-911, 2020 WL 6597291 (M.D.N.C. Oct. 8, 2020)................................... 16

*Nat. Res. Def. Council v. Costle*,
   561 F.2d 904 (D.C. Cir. 1977) ...................................................................................... 8

*Newport News Shipbuilding & Drydock Co.*,
   646 F.2d 117 (4th Cir. 1981) ...................................................................................... 11

*Paher v. Cegavske*,
   No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365 (D. Nev. Apr. 28, 2020) .............. 11

*Pub. Int. Legal Found., Inc. v. Bellows*,
   92 F.4th 36 (1st Cir. 2024)............................................................................................ 6

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
   120 F.4th 390 (4th Cir. 2024) ....................................................................................... 3

*Safari Club Int'l v. Salazar*,
   281 F.R.D. 32 (D.D.C. 2012) ........................................................................................ 8

*In re Sealed Case*,
   237 F.3d 664 ........................................................................................................... 9, 11

*United States v. Am. Tel. & Tel. Co.*,
   642 F.2d 1285 (D.C. Cir. 1980) .................................................................................... 8

*United States v. Benson*,
   No. 1:25-cv-01148-HYJ-PJG, 2025 WL 3520406 (W.D. Mich. Dec. 9, 2025) . 1, 9, 10, 14

Order, *United States v. Oliver*,
   2025 1:25-cv-01193-LF-JFR (D.N.M. Dec. 15, 2025)..................................................... 1

*United States v. Oregon*,
   No. 6:25-cv-01666, 2025 WL 3496571 (D. Or. Dec. 5, 2025).......................... 1, 9, 10, 14

Mins. Mot. Hr'g, *United States v. Weber*,
   No. 2:25-cv-09149 (C.D. Cal. Nov. 24, 2025) ......................................................... 1, 16

## US CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 4, cl. 1.............................................................................................. 2

## FEDERAL STATUTES

52 U.S.C. § 20501 ............................................................................................... 3

52 U.S.C. § 20507 ............................................................................................... 3

52 U.S.C. § 21083 ............................................................................................... 3

## OTHER AUTHORITIES

7C *Wright & Miller's Federal Practice & Procedure* § 1909 (3d ed. 2024) .............................. 12

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build
  National Voter Roll*, N.Y. Times (Sept. 9, 2025),
  https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-
  data.html .................................................................................................. 4

Fed. R. Civ. P. 24 ............................................................................... 1, 7, 15

H.R. Rep. No. 86-956 (1959) .................................................................. 5

H.R. Rep. No. 107-329 (2001) ................................................................ 3

Jonathan Shorman, *Some Republican states resist DOJ demand for private voter data*,
  Stateline (Sep. 18, 2025),  https://stateline.org/2025/09/18/some-republican-
  states-resist-doj-demand-for-private-voter-data/ ................................... 4

Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice
  Department Requests for Voter Information*, Brennan Ctr. for Just. (Dec. 19,
  2025), https://perma.cc/39K2-W7H4 .................................................... 4

Nicholas Nehamas, *DOGE Put Critical Social Security Data at Risk, Whistle- Blower
  Says*, N.Y. Times (Aug. 26, 2025), https://www.nytimes.com/2025/08/26/us
  /politics/doge-social-security-data.html ................................................. 9

Nick Corasaniti, *Election Officials Press Trump Administration Over Election Data*,
  N.Y. Times (Nov. 18, 2025),
  https://www.nytimes.com/2025/11/18/us/politics/election-officials-trump-
  voter-data.html .............................................................................. 9

## INTRODUCTION

The U.S. Department of Justice ("DOJ") recently embarked on an unprecedented nationwide campaign to compile sensitive personal information on voters in a centralized federal database. As part of this effort, DOJ sued Washington, D.C., last week, seeking to compel the District to turn over its complete and unredacted voter registration list, which contains sensitive and private information about every voter in D.C. This legal assault intrudes not only upon D.C.'s constitutional prerogative to maintain and protect its own voter registration list—it directly intrudes upon the privacy rights of individual Washingtonians who have good reason to fear their personal information being handed over to the federal government.

Accordingly, Proposed Intervenor the Maryland/DC Alliance for Retired Americans (the "Alliance") moves to intervene in this suit to oppose the federal government's overreach, defend the privacy rights of its members, and prevent the improper disclosure of sensitive personal information to DOJ. The Alliance readily satisfies the standard for intervention as of right. *See* Fed. R. Civ. P. 24(a). In fact, multiple federal courts have allowed organizations similarly situated to the Alliance—including Michigan and New Mexico's chapters of the Alliance for Retired Americans—to intervene in parallel suits DOJ has brought seeking other states' voter lists. *See* Order, *United States v. Oliver,* 1:25-cv-01193-LF-JFR (D.N.M. Dec. 15, 2025), ECF No. 9 (granting unopposed motion to intervene to New Mexico Alliance for Retired Americans); *United States v. Benson*, No. 1:25-cv-01148-HYJ-PJG, 2025 WL 3520406 (W.D. Mich. Dec. 9, 2025), (granting intervention as of right to Michigan Alliance for Retired Americans and registered voters); *United States v. Oregon*, No. 6:25-cv-01666, 2025 WL 3496571 (D. Or. Dec. 5, 2025) (granting intervention as of right to civic group and registered voters); Mins. Mot. Hr'g, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 24, 2025), ECF No. 70 (granting two separate motions to intervene by civic groups). Like those organizations, the

Alliance has a clear interest in ensuring the continued privacy of its members' personal information, and that interest stands to be directly impaired by this suit. And while Defendant District of Columbia Board of Elections and its members (collectively, the "Board") has thus far resisted disclosure, it does not adequately represent the Alliance; as a governmental defendant, it must consider the "broader public-policy implications" of the issues presented in this suit, while the Alliance is solely concerned with protecting its members' privacy, "full stop." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538–39 (1972)).

Alternatively, the Alliance should be granted permissive intervention under Rule 24(b), the requirements of which are easily satisfied. Doing so will ensure that D.C. voters have a voice in this litigation, which ultimately threatens the disclosure of *their* sensitive and personal information.

## BACKGROUND

### I.  Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.

The U.S. Constitution "invests the States with responsibility for the mechanics" of federal elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns states the responsibility of determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. In 1993, Congress enacted the National Voter Registration Act ("NVRA") to serve "two main objectives: increasing voter registration and removing ineligible persons from

the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). The law charges *states*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including as to maintaining voter lists (subject to strict procedural safeguards), *id.* § 20507(c)–(g). It similarly makes *states* the custodians of voter lists. *See Husted*, 584 U.S. at 761.

In the wake of the 2000 elections, Congress enacted the Help America Vote Act ("HAVA") "to improve voting systems and voter access." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Like the NVRA, HAVA regulates how *states* maintain voter registration lists, requiring them to create a "computerized statewide voter registration list." 52 U.S.C. § 21083(a)(1)(A). It also requires states to "perform list maintenance" consistent with the NVRA. *Id.* § 21083(a)(2)(A). HAVA is abundantly clear that this list is to be "defined, maintained, and administered at the *State* level." *Id.* § 21083(a)(1)(A) (emphasis added). Indeed, HAVA's legislative history stressed the importance of maintaining our decentralized electoral system to preserving liberty:

> Historically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved. The dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome. This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

*See* H.R. Rep. No. 107-329, at 31–32 (2001).

Consistent with that principle, neither the NVRA nor HAVA tasks the *federal government* with compiling a federal national voter registration list or micromanaging the states in their maintenance of such lists. Congress has traditionally "left it up to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761, subject only to the

*specific* requirements of the NVRA and HAVA, which purposefully operate through the states themselves—not DOJ and the federal government.

## II. The Department of Justice has embarked on an unprecedented nationwide campaign to collect personal voter registration data held by the states.

This spring, DOJ launched a campaign to demand broad and unprecedented access to state voter files, including personal information about each registered voter. To date, in addition to D.C., DOJ has sent demands to over thirty-five states, with plans to make similar demands on all fifty states.[1] It seeks to use the data to create a national voter database that will, in turn, be used to substantiate President Trump's unfounded accusations that millions of non-citizens have voted illegally in recent elections. *See* Barrett & Corasaniti, *supra* note 1. The vast majority of states that have received such demands—including those led by Republican officeholders—have refused to turn over sensitive personal information that is typically protected by state law.[2]

DOJ sent the Board a letter on July 11, 2025, demanding, among other things, D.C.'s "statewide voter registration list," as well as a description of D.C.'s list maintenance activities. Dkt. 2-3 at 2; Dkt. 5-1 at 6 (Compl. ¶ 23). The Board responded on August 6 with an in-depth description of the city's procedures for list maintenance and a copy of the city's publicly available voter registration list. Dkt. 2-4 at 2–6; Dkt. 5-1 at 6 (Compl. ¶ 24). On August 14, DOJ demanded

---

[1] *See* Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html; Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Dec. 19, 2025), https://perma.cc/39K2-W7H4.

[2] *See* Jonathan Shorman, *Some Republican states resist DOJ demand for private voter data*, Stateline (Sep. 18, 2025), https://stateline.org/2025/09/18/some-republican-states-resist-doj-demand-for-private-voter-data/ (reporting only one state—Indiana—has so far given DOJ everything it sought).

that the Board produce its entire voter registration list with "*all fields*, including the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number." *See* Dkt. 2-5 at 2; Dkt. 5-1 at 6 (Compl. ¶ 27). The Board responded to DOJ on September 4, "respectfully declin[ing] to provide unredacted personally identifiable information ('PII') as we are not legally authorized to do so." Dkt. 2-6 at 2.

### III.    The Department of Justice sues D.C. to obtain its complete registration list.

DOJ filed this suit on December 18, seeking to compel D.C. to provide its full voter registration list. Dkt. 5-1 at 7–8 (Compl. at 7–8). DOJ brings one claim under Section 303 of the Civil Rights Act of 1960 ("CRA") to justify its request, *id.* (Compl. ¶¶ 30–32), but that Civil Rights-era law does not support DOJ's sweeping demand. The provision permits DOJ to review certain voting records to investigate "question[s] concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). But Congress enacted the law to preserve "the right of all qualified citizens to vote without discrimination on account of race," and specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of 1957, which recalcitrant local officials had frustrated through the destruction of records. H.R. Rep. No. 86-956, at 7 (1959). This history "leaves no doubt but that [Section 303] is designed to secure a more effective protection of the right to vote." *Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). DOJ admits that is not its purpose here; instead, it claims to be evaluating D.C.'s list

maintenance efforts under NVRA and HAVA—statutes with their own separate disclosure rules and enforcement mechanisms. The Civil Rights Act is thus inapplicable.[3]

### IV. The Alliance's members' sensitive personal information is placed in jeopardy by DOJ's demands.

The Alliance, a chartered state affiliate of the national Alliance for Retired Americans, represents over 6,400 voter-members in the District of Columbia. Ex. A at 2, Decl. of Carol Rosenblatt ("Rosenblatt Decl.") ¶ 5. The Alliance's mission is to ensure retirees enjoy the social and economic justice and full civil rights that they have earned after a lifetime of work. *Id.* (Rosenblatt Decl. ¶ 6). Its membership includes retirees, mostly over the age of 65, from public and private sector unions and community organizations, as well as individual activists. *Id.* (Rosenblatt Decl. ¶ 5). Many of these members are civically engaged, registered voters in D.C. whose confidential personal information—including partial Social Security numbers and full dates of birth—will be disclosed to DOJ if it prevails in its suit. *Id.* (Rosenblatt Decl. ¶ 8). These members are deeply concerned about the potential consequences if the Board discloses their sensitive information to DOJ, both because of the potential risk of data breaches that would expose them to identify-theft or financial scams, and because of the potential for their personal information to be used in unpredictable or nefarious ways by the government, such as to undermine the electoral process in D.C. *Id.* at 3–4 (Rosenblatt Decl. ¶¶ 11–12, 14).

These concerns are especially acute given that identity theft and fraud scams are frequently targeted at retirees, including those who comprise the Alliance's membership. *Id.* at 3 (Rosenblatt

---

[3] Even if Section 303 did apply, it does not prohibit states from redacting confidential and sensitive voter information that has nothing to do with investigating the denial of the right to vote, just as they may under the NVRA. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024).

Decl. ¶¶ 10–11). Because the Alliance is invested in mitigating the risks of harm befalling any of its other members, it has strong interests in preventing any unauthorized disclosure of personal information, which includes defeating DOJ's efforts to access D.C.'s full, unredacted voter file.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require courts to grant intervention to any movant who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Consequently, a movant is entitled to intervention as of right when it demonstrates "(1) timeliness of the application to intervene; 2) a legally protected interest; 3) that the action, as a practical matter, impairs or impedes that interest; and 4) that no party to the action can adequately represent the potential intervenor's interest." *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015) (citing *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 192 (D.C. Cir. 2013)).

Courts also retain discretion to grant permissive intervention when a proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).[4]

---

[4] The Alliance submits a Proposed Answer as required by Rule 24, *see* Ex. B, but reserves the right to file a Rule 12 motion by the deadline set by the Court or the Federal Rules of Civil Procedure.

**ARGUMENT**

**I.    The Alliance is entitled to intervene as of right.**

**A.    The motion to intervene is timely and will not prejudice the parties.**

The Alliance's motion—filed mere days after DOJ brought suit and before any case schedule has been set—is indisputably timely. *See, e.g.*, *Am. Farm Bureau Fed'n v. U.S. Fish & Wildlife Serv.*, No. 1:25-CV-00947-SLS, 2025 WL 2576313, at *3 (D.D.C. Sept. 5, 2025) ("Here, the Motion to Intervene was brought two weeks after the Complaint was filed, which is well within the time period that courts in this District consider timely under Rule 24(a)."); *Safari Club Int'l v. Salazar*, 281 F.R.D. 32, 42–43 (D.D.C. 2012) (granting motion to intervene filed more than 90 days after the complaint).

**B.    As other courts have recognized in parallel litigation, the Alliance has substantial interests in protecting its members' sensitive and personal information from improper disclosure to DOJ.**

The Alliance satisfies the closely related second and third requirements for intervention because it has significant protectable interests in this lawsuit, and the relief DOJ seeks threatens to impair those interests. *See Donaldson v. United States,* 400 U.S. 517, 531 (1971). A party has a legally protectable interest if it stands to "either gain or lose by the direct legal operation and effect of the judgment." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1292 (D.C. Cir. 1980). Courts "look[] to the practical consequences of denying intervention." *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977) (citation modified).

The Alliance has a strong interest in protecting the privacy of its thousands of members. Ex. A at 2–4 (Rosenblatt Decl. ¶¶ 9–14). The organization's members are predominantly senior citizens, the target demographic for many identity-theft scams. *Id.* at 2–3 (Rosenblatt Decl. ¶¶ 5, 10). Given the federal government's poor track record of safeguarding personal information, the Alliance has justifiable fears that its members' sensitive data will be exposed or misused if

8

accessed by DOJ. *Id.* at 4 (Rosenblatt Decl. ¶¶ 13–15).[5] This is precisely the type of "legally cognizable interest in maintaining the confidentiality" of records that warrants intervention as of right. *In re Sealed Case*, 237 F.3d 657, 663–64 (D.C. Cir. 2001) (granting intervention); *see also Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 827 (9th Cir. 2021) (recognizing "straightforward" protectable interest in confidentiality of non-public documents). It is no surprise that in DOJ's parallel cases in Oregon and Michigan, courts already recognized a protectable privacy interest in the information that DOJ seeks to disclose. *See Oregon*, 2025 WL 3496571 at *1 (finding proposed intervenors have protectable privacy interests where DOJ seeks Oregon's full statewide voter registration file); *Benson*, 2025 WL 3520406, at *3–5 (granting intervention to the Michigan Alliance for Retired Americans).

Plus, to the extent the Alliance must show standing, it easily satisfies that requirement, and a finding of "constitutional standing is alone sufficient" to demonstrate a protectable interest. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003).[6] The Alliance has standing because "(1) at least one of its members [will] suffer[] an injury-in-fact that is concrete and

---

[5] For example, public reports have indicated that the Department of Government Efficiency (DOGE) placed the security of millions of Social Security numbers at risk through improper maintenance. *See* Nicholas Nehamas, *DOGE Put Critical Social Security Data at Risk, Whistle-Blower Says*, N.Y. Times (Aug. 26, 2025), https://www.nytimes.com/2025/08/26/us/politics/doge-social-security-data.html. Election officials from multiple states have publicly questioned whether the Trump Administration misled them regarding the purpose of its requests for voter information, citing reports that DOJ had shared voter information with the Department of Homeland Security. *See* Nick Corasaniti, *Election Officials Press Trump Administration Over Election Data*, N.Y. Times (Nov. 18, 2025), https://www.nytimes.com/2025/11/18/us/politics/election-officials-trump-voter-data.html.

[6] The D.C. Circuit has recognized that "intervenors that seek the same relief sought by at least one existing party" are exempt from the standing inquiry. *Institutional S'holder Servs., Inc. v. Sec. & Exch. Comm'n*, 142 F.4th 757, 764 n.3 (D.C. Cir. 2025) (citing *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020)).

particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *All. for Retired Ams v. Bessent*, 770 F. Supp. 3d 79, 99 (D.D.C. 2025); *see also id.* at 102 (finding standing to intervene where the Alliance's "members have a reasonable expectation that the records at issue will be private"). As for the first prong, the Alliance's President, Carol Rosenblatt, is a registered D.C. voter whose private personal data will be disclosed to DOJ against her will—a concrete and particularized injury shared by thousands of the Alliance's other D.C. members. *See* Ex. A at 2 (Rosenblatt Decl. ¶ 5). And as for the second and third prongs, because that injury would be entirely traceable to DOJ's efforts in this action, it can be avoided—that is, redressed—by a favorable ruling. *See, e.g.*, *Am. Fed'n of Gov't Emps. v. U.S. Off. of Pers. Mgmt.*, 777 F. Supp. 3d 253, 269 (S.D.N.Y. 2025) ("Several courts have . . . found standing to exist when an unauthorized third party was granted access to a plaintiff's legally protected data, due to the resulting harm's resemblance to intrusion upon seclusion."). Indeed, a federal court recently held that the Michigan Alliance for Retired Americans possessed the necessary interest to intervene in DOJ's suit demanding Michigan's unredacted voter file because the Michigan Alliance's "inherent privacy interest" on behalf of its members "is implicated by the disclosures at issue." *Benson*, 2025 WL 3520406, at *3; *see also Oregon*, 2025 WL 3496571 at *1 (concluding, in DOJ's parallel lawsuit in Oregon, that a social welfare organization had "significant protectable interests" in the privacy of its members' personal information).

The Alliance also has organizational standing "to sue on [its] own behalf for injuries [it will] sustain[]" if DOJ succeeds in this lawsuit. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982). A major goal of the Alliance's civic engagement work is to encourage its

members to exercise their rights as American citizens, including by participating in the electoral process. Ex. A at 2–3 (Rosenblatt Decl. ¶¶ 7, 9). That work will become significantly more difficult if members believe their personal information could be turned over to the federal government simply for being a registered voter. *Id.* (Rosenblatt Decl. ¶ 9). Members may opt out of participating in the political process altogether, thus undermining the Alliance's core mission. *Id.* at 3 (Rosenblatt Decl. ¶ 11). Courts across the country have long recognized that organizations have a significant protectable interest in preserving and pursuing their own mission-critical organizational activities, particularly when it comes to ensuring their constituents' ability to vote. *See, e.g., Jud. Watch, Inc. v. Ill. State Bd. of Elections*, 1:24-cv-01867, 2024 WL 3454706, at *3 (N.D. Ill. July 18, 2024) (granting intervention to civic organizations in challenge to state's voter list maintenance efforts); *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020); *Issa v. Newsom*, No. 2:20-CV-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020); *cf. La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022) (recognizing that a political party had a "legally protectable interest" because it "expend[s] significant resources in the recruiting and training of volunteers and poll watchers who participate in the election process"); *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 435 (5th Cir. 2011) (reversing denial of intervention and concluding voting right interest was "a sufficient interest to satisfy Rule 24(a)(2)").

The disclosure of the Alliance's members' confidential information as a result of this litigation would plainly impair their interests. Once members' and voters' information is disclosed to DOJ, "the cat is out of the bag." *In re Sealed Case*, 237 F.3d at 664 (finding impairment when intervenor's confidential information was at risk of disclosure); *Newport News Shipbuilding & Drydock Co.*, 646 F.2d 117, 121 (4th Cir. 1981) (noting that the question of impairment includes

whether the proposed intervenors would suffer a "practical disadvantage or impediment"); *Kalbers*, 22 F.4th at 828 (holding intervenor's "interest in keeping its documents confidential would obviously be impaired by an order to disclose" those documents). DOJ's demand for D.C. voters' confidential information is thus antithetical to the Alliance's interest in maintaining the confidentiality of that information.

### C.    As other courts have recognized in parallel litigation, the existing parties do not adequately represent the Alliance's interests.

The Alliance cannot be assured adequate representation in this matter if it is denied intervention. A prospective intervenor need only "show[] that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Fund For Animals*, 322 F.3d at 735 (quoting *Trbovich*, 404 U.S. at 538 n.10). Indeed, a movant "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation," *Crossroads Grassroots Pol'y Strategies*, 788 F.3d at 321 (quoting *Am. Tel. & Tel. Co.,* 642 F.2d at 1293). Courts are thus "liberal in finding" this requirement satisfied because "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C *Wright & Miller's Federal Practice & Procedure* § 1909 (3d ed. 2024).

The existing parties—all government actors—do not adequately represent the Alliance's interests. DOJ naturally does not represent the Alliance's interests, as it seeks to forcibly compel production of D.C.'s unredacted voter registration list. While the Board has, to date, resisted that demand, it too does not adequately represent the Alliance's specific interests. The D.C. Circuit has "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc.*, 322 F.3d at 736; *Crossroads Grassroots Pol'y Strategies*, 788 F.3d at 321 (stating the D.C. Circuit "look[s] skeptically on government entities serving as

adequate advocates for private parties"); *see also Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (explaining that government defendants are "necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it," and the burden under such circumstances is "comparatively light"). Simply put, "the government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)).

The Supreme Court recently emphasized this point, explaining that public officials must "bear in mind broader public-policy implications," whereas private litigants—like the Alliance— seek to vindicate their own rights, "full stop." *Berger*, 597 U.S. at 196 (citing *Trbovich*, 404 U.S. at 538–39). Thus, the Supreme Court cautioned that courts should not conduct the adequacy of representation analysis at too "high [a] level of abstraction," and reaffirmed that, even where the parties' interests "seem[] closely aligned," the burden to demonstrate inadequate representation remains "minimal" unless those interests are "identical." *Id.* at 196 (citation omitted). In other words, even if the Board continues to oppose the relief that DOJ seeks at a high level of abstraction, it does not follow that the Board shares "identical" interests to civic membership organizations committed to voter engagement and turnout. *See id.*

Here, the Board and the Alliance do not share "identical" interests. For one, the Board must enforce the requirements of the NVRA and HAVA, in addition to various state laws governing maintenance of the voter registration list. Thus, by definition, the Board has an obligation to weigh and carry out public duties that the Alliance does not share. *See, e.g., Bellitto v. Snipes*, No. 16-cv-61474, 2016 WL 5118568, at *2 (S.D. Fla. Sep. 21, 2016) (concluding adequate representation

was not guaranteed where existing defendant was "an elected official" whose interpretation of the NVRA might not be aligned with intervenors' interests). Indeed, the NVRA specifically requires state election officials to "balance competing objectives"— maintaining accurate and current voter rolls while promoting access to the ballot box—that do not pertain to the Alliance or its interests. *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019).

On top of that, the Board must balance the competing views of its various members, and D.C.'s reliance on federal dollars to administer elections supports a potential "interest in bringing [this] litigation to an end by settlement[]" with DOJ. *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 133 (2d Cir. 2001) (granting intervention). In view of those circumstances, adequate representation of the Alliance's interests is hardly "assured." *Id.*; *see also City of Chicago v. Fed. Emergency Mgmt. Agency*, 660 F.3d 980, 986 (7th Cir. 2011) (recognizing a potential conflict in future settlement negotiations was enough to show inadequate representation).

The Alliance does not share these competing interests—it is focused entirely on maintaining the privacy of its members' sensitive personal information. *See Kleissler*, 157 F.3d at 973 (finding inadequate representation when government had "numerous complex and conflicting interests"). Again, just recently a federal court held that Michigan's Secretary of State would not adequately represent the interests of the Alliance's sister chapter in DOJ's parallel suit in that state because election officials possess "other countervailing incentives—for example, to maintain an election system, comply with federal law, and preserve comity with the federal government—that may ultimately induce it to stop defending the lawsuit or give up the information at issue." *Benson*, 2025 WL 3520406, at *6; *see also Oregon*, 2025 WL 3496571 at *2 (concluding that civic organization was not adequately represented by state election officials in parallel suit because governmental entities "have obligations under the NVRA and HAVA that Proposed Intervenors

do not share and have broader public policy obligations and considerations that may incentivize them to make compromises that Proposed Intervenors would not make"). Ultimately, the government entities and officials on both sides of the case do not stand in the same shoes as the Alliance and thus do not sufficiently represent its interests.

## II.    Alternatively, the Alliance should be granted permissive intervention.

This Court should alternatively exercise its discretion to grant permissive intervention. Rule 24(b) is readily satisfied: the Alliance asserts a "defense that shares with the main action a common question of law or fact," and granting intervention would not "unduly delay or prejudice the adjudication" of the matter. Fed. R. Civ. P. 24(b)(1)(B), (b)(3). The Alliance has moved promptly, *see supra* Section I.A, and agrees to abide by any schedule set by the Court or agreed to by the original parties, meaning there will be no delay or prejudice. And the Alliance's defenses require resolution of the same factual and legal issues raised in the underlying lawsuit. *See* Ex. B (Proposed Answer).

Given that this action threatens to compel disclosure of personal data of millions of D.C. voters to federal officials, the letter and spirit of Rule 24 counsel strongly in favor of allowing an organization that specifically represents the interests of *those voters* to participate. *See Ass'n of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 103 (D. Conn. 2007) (granting intervention to movant that "offer[ed] a unique, personal and highly relevant factual perspective to the law, its development, and its impact"); *see also Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, No. 1:18-cv-11657-ER, 2020 WL 1432213, at *8 n.9 (S.D.N.Y. Mar. 24, 2020) (explaining the "unique perspective" of people and organizations serving people "directly impacted" by challenged action would "greatly contribute to the Court's understanding of th[e] case" (citation omitted)).

It is for these reasons that courts routinely grant permissive intervention to civic organizations to ensure their voices and the voices of their members are heard when litigation implicates the rights and privacy of all voters, notwithstanding the presence of governmental defendants ostensibly charged with upholding broader conceptions of the public interest. *See, e.g.*, Mins. Mot. Hr'g, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 24, 2025) (permitting civic organizations to intervene in DOJ suit seeking California's unredacted voter file); *League of Women Voters of N.C. v. North Carolina*, No. 1:13-CV-660, 2014 WL 12770081, at *3 (M.D.N.C. Jan 27, 2014) (permitting individual voters to intervene in voting rights litigation); *Moore v. Circosta*, No. 1:20-CV-911, 2020 WL 6597291, at *2 (M.D.N.C. Oct. 8, 2020) (permitting civic organization to intervene in voting rights litigation).

Thus, in keeping with the "liberal" standard in favor of intervention, *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986), and because the Alliance's participation will assist rather than prejudice the efficient development and resolution of this matter, the Court should grant permissive intervention if it does not find that the Alliance may intervene as of right.

## CONCLUSION

The Court should grant the Alliance's motion to intervene.

Dated: December 21, 2025                           Respectfully submitted,

*/s/ Lalitha D. Madduri*
Lalitha D. Madduri (DC 1659412)
Jacob D. Shelly (DC 90010127)
Kevin Kowalewski* (NY 5946645)
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4652
lmadduri@elias.law
jshelly@elias.law
kkowalewski@elias.law

*Pro hac vice* application forthcoming

*Counsel for Proposed Intervenor-Defendant the Maryland/DC Alliance for Retired Americans*

## CERTIFICATE OF SERVICE

I hereby certify that this document will be served on the Defendant in accordance with Federal Rule of Civil Procedure 5(a).

*/s/ Lalitha D. Madduri*
Lalitha D. Madduri