**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>              *Plaintiff*,<br>  v.<br><br>DISTRICT OF COLUMBIA BOARD OF ELECTIONS; MONICA H. EVANS, in her official capacity as Executive Director for the District of Columbia Board of Elections; GARY THOMPSON, in his official capacity for the District of Columbia Board of Elections as Chair and Member; and KARYN GREENFIELD, in her official capacity for the District of Columbia Board of Elections as Member,<br><br>              *Defendants*. | Civil Action No. 25-4403 (RDM) |

**MEMORANDUM IN SUPPORT OF MOTION OF COMMON CAUSE, RUTH GOLDMAN, AND CHRIS MELODY FIELDS TO INTERVENE AS DEFENDANTS**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 1

    I.   DOJ's Efforts To Obtain Private Voter Information ............................................... 1

    II.  Proposed Intervenors ............................................................................................... 4

ARGUMENT .......................................................................................................................... 6

    I.   Movants Are Entitled To Intervene as a Matter of Right. ...................................... 6

        A.   The Motion To Intervene Is Timely. ............................................................... 7

        B.   Proposed Intervenors Have Concrete Interests in the Litigation. .................... 7

        C.   Disposition of This Case May Impair Proposed Intervenors' Interests. ......... 9

        D.   The Board of Elections' Interests Differ from Those of Proposed Intervenors. ............ 10

    II.  In the Alternative, This Court Should Grant Permissive Intervention. ............................. 11

CONCLUSION ..................................................................................................................... 12

ii

## TABLE OF AUTHORITIES

**Cases**

*American Civil Liberties Union of Minnesota v. Tarek ibn Ziyad Academy*,
   643 F.3d 1088 (8th Cir. 2011) ............................................................................................... 7

*American Farm Bureau Federation v. Environmental Protection Agency*,
   278 F.R.D. 98 (M.D. Pa. 2011) ............................................................................................ 11

*Berger v. North Carolina State Conference of the NAACP*,
   597 U.S. 179 (2022) ............................................................................................................. 11

*Crossroads Grassroots Policy Strategies v. Federal Election Commission*,
   788 F.3d 312 (D.C. Cir. 2015) ...................................................................................... 6, 9, 10

*Deutsche Bank National Trust Co. v. Federal Deposit Insurance Corp.*,
   717 F.3d 189 (D.C. Cir. 2013) ............................................................................................... 6

*Donaldson v. United States*,
   400 U.S. 517 (1971) ............................................................................................................... 7

*Friends of Earth v. Haaland*,
   No. 21-cv-2317, 2021 WL 8323607 (D.D.C. Sept. 22, 2021) ............................................... 7

*Fund for Animals, Inc. v. Norton*,
   322 F.3d 728 (D.C. Cir. 2003) ......................................................................................... 9, 10

*Institutional Shareholder Services, Inc. v. Securities and Exchange Commission*,
   142 F.4th 757 (D.C. Cir. 2025) .............................................................................................. 6

*Judicial Watch, Inc. v. Illinois State Board of Elections*,
   No. 24-cv-1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024) ............................................. 11

*Karsner v. Lothian*,
   532 F.3d 876 (D.C. Cir. 2008) ............................................................................................... 7

*Kobach v United States Election Assistance Commission*,
   No. 13-cv-04095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013) ............................................. 9

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   591 U.S. 657 (2020) ............................................................................................................... 6

*Massachusetts v. Microsoft Corp.*,
   373 F.3d 1199 (D.C. Cir. 2004) ........................................................................................... 12

*Mova Pharmaceutical Corp. v. Shalala*,
   140 F.3d 1060 (D.C. Cir. 1998) ............................................................................................. 7

*National Resources Defense Council v. Costle*,
   561 F.2d 904 (D.C. Cir. 1977) ............................................................................................... 9

*PA Fair Elections v. Pennsylvania Department of State*,
   337 A.3d 598 (Pa. Commw. Ct. 2025) .................................................................................. 4

*Republican National Committee v. Aguilar*,
   2024 WL 3409860 (D. Nev. July 12, 2024) ........................................................................ 12

*Texas v. United States*,
    798 F. 3d 1108 (D.C. Cir. 2015) ........................................................................................ 9

*T-Mobile Northeast LLC v. Town of Barnstable*,
    969 F.3d 33 (1st Cir. 2020) ............................................................................................... 10

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ....................................................................................................... 6, 8

*United States v. American Telephone & Telegraph Co.*,
    642 F.2d 1285 (D.C. Cir.1980) ........................................................................................ 10

**Statutes**

5 U.S.C. § 552a(e)(7) ............................................................................................................. 8, 11

52 U.S.C. § 20703 ........................................................................................................................ 9

D.C. Code § 2534(a)(2) ............................................................................................................... 8

**Other Authorities**

Alexandra Berzon & Nick Corasaniti, *Trump Empowers Election Deniers, Still Fixated on 2020 Grievances*, N.Y. TIMES, Oct. 22, 2025,
    https://www.nytimes.com/2025/10/22/us/politics/trump-election-deniers-voting-security.html ........................................................................................................................ 4

Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, SPOTLIGHT PA, Nov. 8, 2024,
    https://www.spotlightpa.org/news/2024/11/mail-ballot-application-challenges-pennsylvania-fair-elections/ ................................................................................................. 4

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES, Sept. 9, 2025,
    https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html ............ 3

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAG., Nov. 16, 2025,
    https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html .................................................................................. 3

Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NPR, June 29, 2025,
    https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database ........................................................................................................................... 4

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, Tracker of Justice Department Requests for Voter Information, Brennan Center for Justice (updated Dec. 19, 2025),
    https://perma.cc/A4A4-737Z ............................................................................................. 2

Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, DEMOCRACY DOCKET (June 12, 2025),
    https://www.democracydocket.com/news-alerts/dhs-said-to-brief-cleta-mitchells-anti-voting-group-on-checking-citizenship-for-voters/ ............................................................. 4

Press Release, United States Department of Justice, *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections*

*Laws* (Dec. 12, 2025),
     https://perma.cc/TQ5T-FB2A .................................................................................. 3

Press Release, United States Department of Justice, *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025),
     https://perma.cc/HHJ7-JWQQ .................................................................................. 3

Press Release, United States Department of Justice, *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025),
     https://perma.cc/M69P-YCVC .................................................................................. 3

Press Release, United States Department of Justice, *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025),
     https://perma.cc/F5MD-NWHD ................................................................................ 3

Press Release, United States Department of Justice, *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025),
     https://perma.cc/7J99-WGBA .................................................................................. 3

**Rules**

Federal Rule of Civil Procedure 24 ......................................................................... 1, 11, 12

# INTRODUCTION

The United States seeks to force the District of Columbia ("D.C.") to turn over voters' sensitive personal information and data. It has been widely reported that the United States intends to use this data to build an unauthorized national voter database and to target voters for potential challenges and disenfranchisement.

Proposed Intervenors are Common Cause, a non-partisan organization dedicated to grassroots voter engagement in D.C. whose members and whose own work are at risk by the relief the federal government seeks in this case, and D.C. voters who are directly threatened. Proposed Intervenors have a strong interest in preventing the disclosure of D.C.'s most sensitive non-public voter data. Common Cause has an interest in protecting the voting and privacy rights of its members and all D.C. voters. The relief the federal government seeks risks discouraging D.C. residents from registering to vote, undermining its work. And the privacy and voting-rights interests of Common Cause's members and of the individual voter Proposed Intervenors are also directly at stake. Proposed Intervenors include a naturalized citizen—a type of voter under particular threat from the United States' requested relief.

Proposed Intervenors are entitled to intervene as of right under Rule 24 as this motion is timely, their rights and interests are at stake, and those rights and interests are not adequately represented by Defendants, who unlike Proposed Intervenors, are state actors, subject to broader considerations external to the legal issues presented in this case. Proposed Intervenors' unique interests, perspective, and motivation to interrogate the purpose of the sweeping request for non-public voter data will ensure full development of the record and aid the Court in its resolution of this case. Intervention as of right pursuant to Rule 24(a), or in the alternative permissive intervention pursuant to Rule 24(b), should be granted.

# BACKGROUND

## I. DOJ's Efforts To Obtain Private Voter Information

Beginning in May 2025, Plaintiff United States, through its Department of Justice ("DOJ"), began sending letters to election officials in at least forty states, making escalating demands for

the production of voter registration databases, with plans to gather data from all fifty states and the District of Columbia. *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, Tracker of Justice Department Requests for Voter Information, Brennan Ctr. for Just. (updated Dec. 19, 2025), https://perma.cc/A4A4-737Z.

On July 11, 2025, DOJ sent a letter to the Executive Director of the District of Columbia Board of Elections, Monica H. Evans ("Director Evans"), demanding an electronic copy of D.C.'s entire statewide voter registration list, including "all fields." Compl. ¶ 23; Pl.'s Mot. for Order to Compel, Ex. 1, Ltr. from Michael E. Gates to Monica Evans dated July 11, 2025 ("July 11 Letter"), Dkt. No. 2-3 at 2. The July 11 Letter propounded several questions regarding D.C.'s voter registration and list maintenance procedures and requested that D.C. provide information about purported "registered voters identified as ineligible to vote" due to being non-citizens or due to a felony conviction. *Id.* at 2–3. DOJ asked D.C. to respond within 14 days. *Id.* at 4.

On August 6, Director Evans provided DOJ a redacted version of the registration list. Compl. ¶ 24; Pl.'s Mot. for Order to Compel, Ex. 2, Ltr. from Monica Evans to Michael E. Gates dated August 6, 2025 ("August 6 Letter"), Dkt. No. 2-4 at 3. Director Evans also confirmed that "no voters were identified or removed due to non-citizenship, felony conviction, or adjudicated mental incompetence." August 6 Ltr. at 6.

On August 14, DOJ sent another letter, reiterating its demand for the full electronic voter file. Compl. ¶ 25; Pl.'s Mot. for Order to Compel, Ex. 3, Ltr. from Harmeet K. Dhillon to Monica Evans dated August 14, 2025 ("August 14 Letter"), Dkt. No. 2-5 at 2. DOJ again stated that the production "must contain *all fields*, including the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number." August 14 Ltr. at 2. This time, DOJ also cited the Civil Rights Act of 1960 ("CRA") as authority for its request, and it noted that the "purpose of the request is to ascertain District of Columbia's compliance with the list maintenance requirements of the [National Voter Registration Act ("NVRA")] and [Help America Vote Act ("HAVA")]." *Id.* at 3.

On September 4, 2025, Director Evans sent a letter to DOJ refusing to provide an

2

unredacted voter registration list. Compl. ¶ 29; Pl.'s Mot. for Order to Compel, Ex. 4, Ltr. from Monica Evans to Harmeet K. Dhillon dated September 4, 2025 ("September 4 Letter"), Dkt. No. 2-6 at 2. The United States responded by filing this lawsuit, which is one of at least twenty-two similar suits seeking disclosure of sensitive voter data.[1]

DOJ's requests for private, sensitive voter data appears to be in connection with never-before-seen efforts by the United States to construct a national voter database, and to otherwise use untested forms of database matching to scrutinize voter rolls. According to reporting, DOJ employees "have been clear that they are interested in a central, federal database of voter information." Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html. DOJ is coordinating in these unprecedented efforts with the federal Department of Homeland Security ("DHS"), according to reported statements from both agencies. *Id.* A recent article extensively quoted a lawyer who recently left DOJ's Civil Rights Division, describing the government's aims in this case and others like it:

> We were tasked with obtaining states' voter rolls, by suing them if necessary. Leadership said they had a DOGE person who could go through all the data and compare it to the Department of Homeland Security data and Social Security data. . . . I had never before told an opposing party, Hey, I want this information and I'm saying I want it for this reason, but I actually know it's going to be used for these other reasons. That was dishonest. It felt like a perversion of the role of the Civil Rights Division.

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAG., Nov. 16, 2025, https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

---

[1] *See* Press Release, U.S. Dep't of Just., *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025), https://perma.cc/HHJ7-JWQQ; Press Release, U.S. Dep't of Just., *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://perma.cc/TQ5T-FB2A; Press Release, U.S. Dep't of Just., *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025), https://perma.cc/F5MD-NWHD; Press Release, U.S. Dep't of Just., *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/7J99-WGBA; Press Release, U.S. Dep't of Just., *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://perma.cc/M69P-YCVC.

According to additional reporting, these efforts are being conducted with the involvement of self-proclaimed "election integrity" advocates within and outside government who have previously sought to disenfranchise voters and overturn elections.[2] Such actors have previously sought to compel states to engage in aggressive purges of registered voters and have abused voter data to mass challenge voters in other states. *See, e.g.*, *PA Fair Elections v. Pa. Dep't of State*, 337 A.3d 598, 600 n.1 (Pa. Commw. Ct. 2025) (determining that complaint brought by group affiliated with current DHS official Heather Honey, challenging Pennsylvania's list maintenance practices, was meritless).[3]

DOJ's actions also indicate that it may target specific groups of voters in its use of the requested data. In its letters to the Board and other states, DOJ requested information focusing on vote by mail, history of felony convictions, and citizenship status.[4] The Administration has also confirmed that it was sharing the requested information with DHS. Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, STATELINE (Sept. 12, 2025), https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security.

## II. Proposed Intervenors

Proposed Intervenor Common Cause is a nonpartisan organization committed to, *inter alia*,

---

[2] *See* Alexandra Berzon & Nick Corasaniti, *Trump Empowers Election Deniers, Still Fixated on 2020 Grievances*, N.Y. TIMES, Oct. 22, 2025, https://www.nytimes.com/2025/10/22/us/politics/trump-election-deniers-voting-security.html (documenting "ascent" of election denier Honey); Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, DEMOCRACY DOCKET (June 12, 2025), https://www.democracydocket.com/news-alerts/dhs-said-to-brief-cleta-mitchells-anti-voting-group-on-checking-citizenship-for-voters/; Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NPR, June 29, 2025, https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database (reporting that Mitchell had received a "full briefing" from federal officials).

[3] *See* Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, SPOTLIGHT PA, Nov. 8, 2024, https://www.spotlightpa.org/news/2024/11/mail-ballot-application-challenges-pennsylvania-fair-elections/ (describing mass-challenges and noting connection to Honey and her organization "PA Fair Elections").

[4] *See, e.g.*, Br. in Supp. of Mot. to Intervene as Defs., Ex. 1, Ltr. from Maureen Riordan to Sec'y of State Al Schmidt (June 23, 2025), *United States v. Pennsylvania*, No. 25-cv-01481 (W.D. Pa. Oct. 9, 2025), Dkt. No. 37-1 (Pennsylvania); Mot. for Leave to File Mot. to Dismiss, Ex. A, Ltr. from Michael E. Gates to Sec'y of State Jocelyn Benson (July 21, 2025), *United States v. Benson*, No. 25-cv-01148 (W.D. Mich. Nov. 25, 2025), Dkt. No. 34-3 (Michigan).

ensuring that all eligible D.C. voters register to vote and exercise their right to vote at each election. *See* Ex. 2, Decl. of Suzanne Almeida ("Almeida Decl.") ¶¶ 8–9. Common Cause expends significant resources conducting voter engagement and assistance efforts, including registering qualified people to vote, encouraging participation, and providing on-the-ground voter engagement. *See id.* ¶ 13. The success of these efforts, especially with respect to voter registration, depend on voters' trust that, when they provide personal information to the State as part of the registration process, that information will not be abused, their privacy will be respected, and their right to participate will be honored. *See id.* ¶¶ 9, 13.

Common Cause has over 3,000 members in D.C. *See id.* ¶ 5. Those members include D.C. voters, whose personal data will be provided to DOJ if the United States prevails in this lawsuit. *See id.* ¶¶ 7, 9. Even as compared to voters in other states, these members face particularly heightened risks from the disclosure of their data because D.C. voters do not have full representation in Congress and are uniquely subject to federal oversight. *Id.* ¶ 12.

Proposed Intervenor Ruth Goldman has been a D.C. resident and D.C. registered voter since 1968. *See* Ex. 3, Decl. of Ruth Goldman ("Goldman Decl.") ¶ 5. Ms. Goldman was born in Palestine in 1936 to German Jewish parents, and the family emigrated to the United States by ship two years later. *Id.* ¶¶ 2–3. When they initially settled in the United States, because her parents were German-born, Ms. Goldman and her family were deemed enemy aliens and denied certain civil rights and liberties—despite the fact that they were Jewish. *Id.* ¶ 3. Ms. Goldman became a naturalized citizen around 1948, at the age of 12. *Id.* ¶ 4. The right to vote is extremely important to Ms. Goldman, who regularly votes in elections. *Id.* ¶ 5. Ms. Goldman is alarmed and outraged that her sensitive voter data might be turned over to DOJ, particularly when she does not know what DOJ intends to do with it. *Id.* ¶ 6. Ms. Goldman is especially concerned because naturalized citizens like her are extremely vulnerable at this moment in time; as such, she remains concerned not just about the privacy of her own personal data, but that of other naturalized citizens in D.C. *Id.* ¶ 7.

Proposed Intervenor Chris Melody Fields is a registered D.C. voter, executive director of

the Ballot Initiative Strategy Center ("BISC"), and Common Cause National Governing Board member. *See* Ex. 4, Decl. of Chris Melody Fields ("Fields Decl.") ¶¶ 2–3. Ms. Fields has been involved with civic engagement issues in D.C. for nearly two full decades, and she believes that the right to vote is preservative of all other rights. *Id.* ¶¶ 2, 5. DOJ's demand for D.C.'s unredacted voter file has made Ms. Fields concerned both about the privacy of her own personal data and also the security of D.C.'s voting system. *Id.* ¶ 8. Ms. Fields believes that DOJ's demand for unredacted voter information will chill political participation in D.C. and be used to disenfranchise otherwise eligible voters, who already lack full political representation. *Id.* ¶¶ 7, 9.

## ARGUMENT

### I. Movants Are Entitled To Intervene as a Matter of Right.

In the D.C. Circuit, a party is entitled to intervene as of right under Fed. R. Civ. P. 24(a) upon establishing: "1) timeliness of the application to intervene; 2) a legally protected interest; 3) that the action, as a practical matter, impairs or impedes that interest; and 4) that no party to the action can adequately represent the potential intervenor's interest." *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 320 (D.C. Cir. 2015) (quotation marks and citation omitted).[5]

---

[5] The D.C. Circuit previously "require[ed] an intervenor to demonstrate Article III standing even if pursuing the same relief as an existing party," but it more recently recognized that "intervenors that seek the same relief sought by at least one existing party need not" establish standing. *Inst'l Shareholder Servs. v. SEC*, 142 F.4th 757, 764 n.3 (D.C. Cir. 2025) (citing *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020)). Nevertheless, to the extent Proposed Intervenors need to establish standing, they easily demonstrate the requisite "injury in fact, causation, and redressability." *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 316 (D.C. Cir. 2015) (citing *Deutsche Bank Nat'l. Trust Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013)). If the United States succeeds in this action, the personal identifying information of individual Proposed Defendant-Intervenors and members of Common Cause will be disclosed in a way contrary to law, and to privacy and voting rights. Disclosure of such protected information is a straightforward Article III injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). In addition, Proposed Intervenors have standing because the United States' requested voter data is likely to be used to challenge the registration of D.C. voters—including naturalized citizens like Ms. Goldman—subjecting them to concrete risk of disenfranchisement, and because granting the requested relief would harm Common Cause by chilling voter participation and forcing the organization to divert resources away from its core civic-engagement mission to counter federally enabled mass voter challenges. *See infra* pp. 12–13. And because the Plaintiff prevailing in this action will force Defendants "to cause the alleged

6

### A. The Motion To Intervene Is Timely.

Timeliness is determined in light "of all the circumstances." *Karsner v. Lothian*, 532 F.3d 876, 886 (D.C. Cir. 2008). Relevant factors include the "time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Id.*

This motion is timely. The suit was filed on December 18, 2025, and, upon learning of it, Proposed Intervenors promptly prepared this motion. *Cf. id.* (timeliness satisfied when "less than one month elapsed between [plaintiff's] filing of his petition in the district court and the . . . motion to intervene," in part because the motion was filed "before the district court took any action . . . and thus did not act so late as to prejudice proceedings"); *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) (holding intervention motion timely when movant "sought to intervene a few weeks after [plaintiff] initiated its action, and before the district court ruled on the preliminary injunction"); *Friends of Earth v. Haaland*, No. 21-cv-2317, 2021 WL 8323607, at *2 (D.D.C. Sept. 22, 2021) (intervention motion "filed only two weeks after Plaintiffs brought suit . . . is unquestionably timely"). Defendants have not yet filed their response, meaning that the case is at its earliest stages and the existing partes would not be prejudiced. In contrast, Proposed Intervenors will be substantially prejudiced absent intervention, given the serious threats that the relief sought poses to Proposed Intervenors' fundamental rights.

### B. Proposed Intervenors Have Concrete Interests in the Litigation.

Proposed Intervenors have a "sufficient"—*i.e.*, a "significantly protectable"—interest in the litigation. *Donaldson v. United States*, 400 U.S. 517, 531 (1971). Indeed, Proposed Intervenors offer multiple, independently sufficient interests.

*First*, Proposed Intervenors have a right to privacy in the sensitive data sought, *i.e.*, the

---

injury to the intervenor," Proposed Defendant-Intervenors here "satisf[y] the traceability requirement even though the defendant and the intervenor seek the same outcome in the case." *ACLU of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1093 (8th Cir. 2011).

7

entire unredacted voter file, "with all fields, including . . . state driver's license number, the last four digits of their Social Security number, or HAVA unique identifier." Compl. ¶ 32(B). Sensitive information like driver's license numbers and Social Security numbers are protected from disclosure by D.C. law. D.C. Code § 2534(a)(2). The data sought is also protected by federal law, which prohibits the creation of a national voter database of the type that the United States is reportedly assembling. *See* 5 U.S.C. § 552a(e)(7) (prohibiting the creation of any database "describing how any individual exercises rights guaranteed by the First Amendment," which includes exercising the right to vote). These privacy interests are significant—indeed, the Supreme Court has made clear that "disclosure of private information" is an injury "traditionally recognized as providing a basis for lawsuits in American courts" and sufficient to establish Article III standing, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021)—and they inure to each of the individual voter Proposed Intervenors and to Common Cause's members who are D.C. voters. *See* Goldman Decl. ¶¶ 5–6; Fields Decl. ¶¶ 5–9; Almeida Decl. ¶¶ 5, 7, 9, 12.

*Second*, and based on the United States' similar requests to other States, the data sought is likely to be used to challenge the registration of certain D.C. voters, including voters like Ms. Goldman who are naturalized citizens (who may have indicated they were not a citizen on a government form prior to naturalization). *See supra* pp. 6–8 & n.2; *see also* Goldman Decl. ¶¶ 4, 7; Almeida Decl. ¶¶ 13–14. This is particularly true given that Proposed Intervenors are D.C. residents, because D.C. voters lack full representation in Congress, are uniquely subject to federal oversight, and have faced considerable scrutiny from the federal government in recent months. *See* Almeida Decl. ¶ 12; Fields Decl. ¶ 7.

*Third*, Common Cause as an organization has a protectable interest at stake as their core mission will be harmed if the relief that the federal government seeks is granted. *See* Almeida Decl. ¶¶ 7, 9, 12–15. Common Cause's core civic participation and engagement activities will be harmed as voters will be chilled from registering if they believe their sensitive personal data will be provided to the federal government and potentially misused as part of a national database. *Id.* ¶¶ 7, 9, 13–14. Mass challenges by election integrity activists now wielding the power of the

8

federal government will force Common Cause to redirect resources to mitigating the attempted disenfranchisement of existing voters, away from core civic engagement. *Id.* ¶¶ 13–14. Courts routinely find that non-partisan organizations, like Common Cause, should be granted intervention in election-related cases, due to their significantly protectable interests related to voting. *See, e.g., Texas v. United States*, 798 F. 3d 1108, 1111–12 (D.C. Cir. 2015); *Kobach v U.S. Election Assistance Comm'n*, No. 13-cv-04095, 2013 WL 6511874, at *1–2, *4 (D. Kan. Dec. 12, 2013). This case is no exception. Indeed, in similar cases brought over California's and New Mexico's refusal to turn over sensitive voter information, such organizations were granted intervention. *See* Minute Order, *United States v. Weber*, No. 25-cv-09149, (C.D. Cal. Nov. 19, 2025), Dkt. No. 70; Minute Order, *United States v. Oliver*, No. 25-cv-01193 (D.N.M. Dec. 19, 2025), Dkt. No. 25.

### C. Disposition of This Case May Impair Proposed Intervenors' Interests.

Proposed Intervenors' interests would be impaired if Plaintiff succeeds in obtaining its requested relief. This third element looks to the "'practical consequences' of denying intervention," including whether it would be "difficult and burdensome" for the movant. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (quoting *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 907, 909–10 (D.C. Cir. 1977)).

Here, the threat of impairment is significant. Plaintiff proposes to summarily dispose of voters' interests by obtaining an immediate order compelling the disclosure of private voter data, bypassing the normal civil litigation process and any discovery into "the basis and the purpose" of their request, 52 U.S.C. § 20703. *See* Pl.'s Mot. for Order to Compel Prod. of Recs., Dkt. No. 2. This attempt to secure the irrevocable disclosure of private voter data at the very beginning of the case militates strongly in favor of allowing Proposed Intervenors into the case to represent voters' interests.

Finally, the D.C. Circuit has recognized that the *stare decisis* effect of a district court's judgment is sufficient impairment for intervention under Rule 24(a)(2) because "the district court's ruling would have persuasive weight with a new court." *Crossroads*, 788 F.3d at 320 (citation omitted). Common Cause maintains an active and ongoing interest in protecting the privacy of

voters' sensitive personal data. *See* Almeida Decl. ¶¶ 7, 9. Accordingly, a judgment in favor of Plaintiff—endorsing its legal theories and granting the requested relief—would have a *stare decisis* effect that could harm Common Cause's ability to oppose future efforts that undermine voters' privacy interests.

### D. The Board of Elections' Interests Differ from Those of Proposed Intervenors.

Proposed Intervenors' burden to show that existing parties may not adequately represent its interest is "not onerous"—indeed, it is "minimal." *Crossroads*, 788 F.3d at 321 (quoting *Fund For Animals*, 322 F.3d at 735, 736 n.7). A movant "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation." *Id.* (quoting *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980)).

They meet this minimal burden here. Notably, the D.C. Circuit "look[s] skeptically on government entities serving as adequate advocates for private parties." *Id.* "[E]ven when the interest of a federal agency and potential intervenor can be expected to coincide, that does not necessarily mean adequacy of representation is ensured for purpose of Rule 24(a)(2)." *Id.* (citation modified). That is because the government's "obligation is to represent the interests of the American people," whereas an intervenor's concern may be more limited, and the government may not give the intervenor's arguments "the kind of primacy that the [intervenor] would give them. *Fund for Animals*, 322 F.3d at 736.

This litigation fits precisely these circumstances. As state actors, Defendants have a generalized interest in carrying their legal obligations and in minimizing burdens on governmental employees and resources. They also must consider broader public policy concerns, including the need to maintain working relationships with federal officials. In contrast, Proposed Intervenors bring a distinct, particular interest to this litigation, making the existing representation inadequate: the perspective of civil rights groups whose sole commitment is to ensuring access to the ballot and individual voters whose own rights are at risk. *See T-Mobile Northeast LLC v. Town of Barnstable*, 969 F.3d 33, 40 (1st Cir. 2020). There may be arguments and issues that Defendant may not raise that are critical to organizations like Common Cause and individual voters like Ms.

Goldman and Ms. Fields. For example, individual voters have a more direct injury than states under the Privacy Act for misuse of their personal data, especially given that the Privacy Act grants individuals an express right to bring suit. See 5 U.S.C. § 552a(g)(1)(D) ("Whenever an agency fails to comply with any other provision of this section . . . in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency"). As another example, courts have found a risk that considerations external to the issues presented by a case like this can motivate officials to pursue a settlement that could jeopardize the private information of Proposed Intervenors or of their members. *See Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 24-cv-1867, 2024 WL 3454706, at *5 (N.D. Ill. July 18, 2024) (allowing intervention in NVRA case and observing that "potential intervenors can cite potential conflicts of interests in future settlement negotiations to establish that their interests are not identical with those of a named party"); *cf. Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 198 (2022) (reversing denial of motion to intervene where North Carolina Board of Elections was "represented by an attorney general who, though no doubt a vigorous advocate for his clients' interests, is also an elected official who may feel allegiance to the voting public or share the Board's administrative concerns").

These diverging perspectives—between the government's general need to balance various considerations and Proposed Intervenors' personal and particular interest in the privacy of their own data—present a classic scenario supporting intervention. *See, e.g.*, *Am. Farm Bureau Fed'n v. EPA*, 278 F.R.D. 98, 110–11 (M.D. Pa. 2011) (allowing public interest groups to intervene, "[b]ecause the EPA represents the broad public interest . . . not only the interests of the public interest groups").

## II.    In the Alternative, This Court Should Grant Permissive Intervention.

Should the Court decline to grant intervention as of right, the Court should use its broad discretion to grant permissive intervention. "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see Massachusetts v. Microsoft Corp.*, 373 F.3d 1199,

11

1234 (D.C. Cir. 2004). In exercising its discretion, the district court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

As discussed above, this motion is timely, there will be no delay or prejudice to the adjudication of the existing parties' rights, and their interests are not adequately represented by any of the existing parties. And Proposed Intervenors' defense goes directly to the matters at issue, such as (1) whether federal law permits Plaintiff to force D.C. to give it the personal information sought; (2) whether federal and state legal privacy protections prohibit disclosure of that information; and (3) whether the United States' motivations for the data sought are permissible. Proposed Intervenors' distinct perspective on the issues will complement or amplify Defendant's arguments and sharpen the issues and the quality of the record, aiding the Court in resolving the issues before it.

Because of this unique perspective, district courts routinely grant permissive intervention to advocacy organizations, even when a government party defends a challenged action. *See, e.g.*, *Republican Nat'l Comm. v. Aguilar*, 2024 WL 3409860, at *1–3 (D. Nev. July 12, 2024) (permitting intervention by voter advocacy group as defendant in litigation seeking purge of voter rolls). The Court should do the same here.

## CONCLUSION

For all these reasons, the Motion should be granted.

Dated: December 26, 2025

Sophia Lin Lakin*
Theresa Lee*
Jonathan Topaz*
Ethan Herenstein*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
slakin@aclu.org

Respectfully submitted,

*/s/ Megan C. Keenan*
Megan C. Keenan (D.C. Bar No. 1672508)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th St. NW
Washington, DC 20001
(347) 714-1530
mkeenan@aclu.org

12

tlee@aclu.org
jtopaz@aclu.org
eherenstein@aclu.org


\* *Pro hac vice* application forthcoming

13