## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>     *Plaintiff*,<br><br> v.<br><br>DISTRICT OF COLUMBIA BOARD OF ELECTIONS; MONICA H. EVANS, in her official capacity as Executive Director for the District of Columbia Board of Elections; GARY THOMPSON, in his official capacity for the District of Columbia Board of Elections as Chair and Member; and KARYN GREENFIELD, in her official capacity for the District of Columbia Board of Elections as Member,<br><br>     *Defendants*. | Civil Action No. 25-4403 (RDM) |

### [PROPOSED] MOTION TO DISMISS OF COMMON CAUSE, RUTH GOLDMAN, AND CHRIS MELODY FIELDS

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 1

LEGAL STANDARD..................................................................................................... 4

ARGUMENT ................................................................................................................. 4

   I.   The United States' Demands Exceed the Statutory Authority of the CRA and Are Contrary to Law. ....................................................................................................... 4

     A.   The United States' Demand Fails to Meet the CRA's Requirements. ............................ 5

     B.   Any Records Disclosed Under the CRA Should Be Redacted to Protect the Constitutional Rights of the Voter, so the Requested Relief Must Fail. ........................ 10

   II.   The United States Is Not Entitled to Summary Disposition and Its Motion To Compel Should Be Denied. ................................................................................................. 12

CONCLUSION............................................................................................................... 15

CERTIFICATE OF SERVICE ...................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Alabama ex rel. Gallion v. Rogers*,
    187 F. Supp. 848 (M.D. Ala. 1960) .................................................................................... 1

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................ 4

*Becker v. United States*,
    451 U.S. 1306 (1981) ............................................................................................................ 14

*Coleman v. Kennedy*,
    313 F.2d 867 (5th Cir. 1963) ................................................................................................ 6

*Corner Post, Inc. v. Board of Governors of the Federal Reserve System*,
    603 U.S. 799 (2024) ................................................................................................................ 9

*Federal Deposit Insurance Corp. v. Wentz*,
    55 F.3d 905 (3d Cir. 1995) .................................................................................................... 6

*In re Coleman*,
    208 F. Supp. 199 (S.D. Miss. 1962) ........................................................................... 5, 11, 13

*Judicial Watch, Inc. v. United States Secret Service*,
    726 F.3d 208 (D.C. Cir. 2013) ............................................................................................ 10

*Kaempe v. Myers*,
    367 F.3d 958 (D.C. Cir. 2004) .............................................................................................. 8

*Kennedy v. Lynd*,
    306 F.2d 222 (5th Cir. 1962) ............................................................ 5, 6, 12, 13, 14, 15

*Niz-Chavez v. Garland*,
    593 U.S. 155 (2021) ................................................................................................................ 9

*Project Vote/Voting for America, Inc. v. Long*,
    682 F.3d 331 (4th Cir. 2012) .............................................................................................. 11

*Public Interest Legal Foundation v. Benson*,
    136 F.4th 613 (6th Cir. 2025) .............................................................................................. 7

*Public Interest Legal Foundation, Inc. v. Bellows*,
    92 F.4th 36 (1st Cir. 2024) .................................................................................................. 11

*Public Interest Legal Foundation, Inc. v. Dahlstrom*,
    673 F. Supp. 3d 1004 (D. Alaska 2023) ........................................................................... 11

*Public Interest Legal Foundation, Inc. v. Matthews*,
    589 F. Supp. 3d 932 (C.D. Ill. 2022) ............................................................................... 11

*Public Interest Legal Foundation, Inc. v. North Carolina State Board of Elections*,
    996 F.3d 257 (4th Cir. 2021) .............................................................................................. 11

*Sheetz v. County of El Dorado*,
    601 U.S. 267 (2024) .............................................................................................................. 12

*United States v. Judicial Watch, Inc.*,
   371 F.3d 824 (D.C. Cir. 2004) .......................................................................... 6

*United States v. Powell*,
   379 U.S. 48 (1964)................................................................................... 6, 14

*Youkelsone v. Federal Deposit Insurance Corp.*,
   910 F. Supp. 2d 213 (D.D.C. 2012) ................................................................. 4

**Statutes**

18 U.S.C. § 2721 ............................................................................................ 15

26 U.S.C. § 7604 ............................................................................................ 14

44 U.S.C. § 3351 ............................................................................................ 15

52 U.S.C. § 20501 ............................................................................................ 9

52 U.S.C. § 20502 ............................................................................................ 7

52 U.S.C. § 20507 ................................................................................ 3, 7, 8, 9, 10

52 U.S.C. § 20701 ............................................................................................ 5

52 U.S.C. § 20703 ......................................................................... 1, 4, 5, 10, 14

52 U.S.C. § 20705 ........................................................................................... 14

52 U.S.C. § 21083 ......................................................................................... 7, 9

52 U.S.C. § 21085 ......................................................................................... 7, 9

D.C. Code § 2534 ........................................................................................... 11

E-Government Act of 2002,
   Public Law No. 107-347, 116 Stat. 2899 (2002) ................................................ 15

Privacy Act of 1974,
   Public Law No. 93-579, 88 Stat. 1896 (1974) ................................................... 15

**Other Authorities**

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National
   Voter Roll*, N.Y. Times, Sept. 9, 2025,
   https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html ...... 3, 13

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*,
   N.Y. Times Mag., Nov. 16, 2025,
   https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-
   department-staff-attorneys.html ...................................................................... 3, 13

"Federal Judicial Circuits: Fifth Circuit," FEDERAL JUDICIAL CENTER,
   https://perma.cc/9MSD-EFRB (last visited Dec. 9, 2025) ....................................... 13

Jonathan Shorman, *Trump's DOJ offers states 'confidential' deal to wipe voters flagged
   by feds as ineligible*, STATELINE, Dec. 18, 2025,
   https://stateline.org/2025/12/18/trumps-doj-offers-states-confidential-deal-to-wipe-
   voters-flagged-by-feds-as-ineligible/ ................................................................. 9

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, Tracker of Justice
Department Requests for Voter Information, Brennan Center for Justice (updated
Dec. 12, 2025),
https://perma.cc/MC3M-VS33 .................................................................................... 1

Press Release, United States Department of Justice, *Justice Department Sues Four
Additional States and One Locality for Failure to Comply with Federal Elections
Laws* (Dec. 12, 2025),
https://perma.cc/TQ5T-FB2A .................................................................................... 3

Press Release, United States Department of Justice, *Justice Department Sues Four States
for Failure to Produce Voter Rolls* (Dec. 18, 2025),
https://perma.cc/HHJ7-JWQQ .................................................................................. 3

Press Release, United States Department of Justice, *Justice Department Sues Oregon and
Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025),
https://perma.cc/M69P-YCVC ................................................................................... 3

Press Release, United States Department of Justice, *Justice Department Sues Six
Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025),
https://perma.cc/F5MD-NWHD .................................................................................. 3

Press Release, United States Department of Justice, *Justice Department Sues Six States
for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025),
https://perma.cc/7J99-WGBA ..................................................................................... 3

Press Release, United States Department of Justice, *United States Announces Settlement
with Kentucky Ensuring Compliance with Voter Registration List Maintenance
Requirements* (July 5, 2018),
https://perma.cc/G2EZUUA5 ..................................................................................... 8

Steven F. Lawson, *Black Ballots: Voting Rights in the South, 1944-1969* (1976) ..................... 13

United States Department of Justice, Civil Rights Division, Federal Law Constraints on
Post-Election "Audits" (Jul. 28, 2021),
https://perma.cc/74CP-58EH ...................................................................................... 1

**Rules**

Federal Rule of Civil Procedure 1 ................................................................................. 14

Federal Rule of Civil Procedure 12(b)(6) ....................................................................... 4

Federal Rule of Civil Procedure 81 ............................................................................... 14

**Reports**

H.R. Rep. No. 86-956 (1959) .................................................................................. 1, 5

## INTRODUCTION

The United States seeks to compel the disclosure of sensitive personal voter data to which it is not entitled, using the civil rights laws as a pretext. Because the United States failed to disclose the basis and purpose of its request for the data, dismissal should be granted, and the United States' attempt to summarily dispose of this case via an improper motion to compel should be rejected.

Congress has repeatedly legislated to ensure that all eligible Americans can participate in free, fair, and secure elections. As the U.S. Department of Justice ("DOJ") has explained, Title III of the Civil Rights Act of 1960 ("Title III" or "CRA"), the provision invoked here, was designed to "secure a more effective protection of the right to vote." U.S. Dep't of Just., Civ. Rts. Div., Federal Law Constraints on Post-Election "Audits" (Jul. 28, 2021), https://perma.cc/74CP-58EH (citing *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) and H.R. Rep. No. 86-956, at 7 (1959)).

The federal government's demand for the District of Columbia ("D.C.")'s unredacted voter file—which contains sensitive personal information including driver's license numbers and/or Social Security numbers from millions of D.C. residents—undermines the CRA's core purposes and is contrary to law. Releasing voter records without redaction and for purposes far afield from protecting voter access would only deter voter participation and undermine the right to vote. That is especially so here, where the United States has not fully and accurately set forth "the basis and the purpose" for its data request, as required by the very statute that it invokes. 52 U.S.C. § 20703. The Court should dismiss.

## BACKGROUND

Beginning in May 2025, Plaintiff United States, through its Department of Justice ("DOJ"), began sending letters to election officials in at least forty states, making escalating demands for the production of voter registration databases, with plans to gather data from all fifty states and the District of Columbia. *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, Tracker of Justice Department Requests for Voter Information, Brennan Ctr. for Just. (updated Dec. 19, 2025), https://perma.cc/A4A4-737Z.

1

On July 11, 2025, DOJ sent a letter to the Executive Director of the District of Columbia Board of Elections, Monica H. Evans ("Director Evans"), demanding an electronic copy of D.C.'s entire statewide voter registration list, including "all fields." Compl. ¶ 23; Pl.'s Mot. for Order to Compel, Ex. 1, Ltr. from Michael E. Gates to Monica Evans dated July 11, 2025 ("July 11 Letter"), Dkt. No. 2-3 at 2. The July 11 Letter also propounded several questions regarding D.C.'s voter registration and list maintenance procedures, and it requested that D.C. provide information about purported "registered voters identified as ineligible to vote" due to being non-citizens or due to a felony conviction. *Id.* at 2–3. DOJ asked D.C. to respond within 14 days. *Id.* at 4.

On August 6, Director Evans provided DOJ a redacted version of the registration list. Compl. ¶ 24; Pl.'s Mot. for Order to Compel, Ex. 2, Ltr. from Monica Evans to Michael E. Gates dated August 6, 2025 ("August 6 Letter"), Dkt. No. 2-4 at 3. Director Evans also confirmed that "no voters were identified or removed due to non-citizenship, felony conviction, or adjudicated mental incompetence." August 6 Ltr. at 6.

On August 14, DOJ sent another letter, reiterating its demand for the full electronic voter file. Compl. ¶ 25; Pl.'s Mot. for Order to Compel, Ex. 3, Ltr. from Harmeet K. Dhillon to Monica Evans dated August 14, 2025 ("August 14 Letter"), Dkt. No. 2-5 at 2. DOJ again stated that the production "must contain *all fields*, including the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number." August 14 Ltr. at 2. This time, DOJ also cited the Civil Rights Act of 1960 ("CRA") as authority for its request, and it noted that the "purpose of the request is to ascertain District of Columbia's compliance with the list maintenance requirements of the [National Voter Registration Act ("NVRA")] and [Help America Vote Act ("HAVA")]." *Id.* at 3.

On September 4, 2025, Director Evans sent a letter to DOJ refusing to provide an unredacted voter registration list. Compl. ¶ 29; Pl.'s Mot. for Order to Compel, Ex. 4, Ltr. from Monica Evans to Harmeet K. Dhillon dated September 4, 2025 ("September 4 Letter"), Dkt. No. 2-6 at 2. The United States responded by filing this lawsuit, which is one of at least twenty-two

similar suits seeking disclosure of sensitive voter data.[1]

Notably, according to public reporting, DOJ's request does not appear to relate to voter roll list maintenance under the NVRA, 52 U.S.C. § 20507, the statute invoked in the July 11 Letter. Instead, federal employees "have been clear that they are interested in a central, federal database of voter information." Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html. One recent article extensively quoted a lawyer who recently left DOJ's Civil Rights Division, describing the Administration's aims in these cases:

> We were tasked with obtaining states' voter rolls, by suing them if necessary. Leadership said they had a DOGE person who could go through all the data and compare it to the Department of Homeland Security data and Social Security data. . . . I had never before told an opposing party, Hey, I want this information and I'm saying I want it for this reason, but I actually know it's going to be used for these other reasons. That was dishonest. It felt like a perversion of the role of the Civil Rights Division.

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Mag., Nov. 16, 2025, https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html. Additional reporting reveals self-proclaimed "election integrity" advocates who have previously sought to disenfranchise voters and overturn elections are involved in these efforts. *See* Mem. in Support of Mot. to Intervene as Defs. at 4 & nn.2–3. In its July 11 Letter, and its letters to other states, DOJ also requested information focusing on vote by mail, history of felony convictions, and citizenship status.[2] Because DOJ has not provided a statutorily

---

[1] *See* Press Release, U.S. Dep't of Just., *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025), https://perma.cc/HHJ7-JWQQ; Press Release, U.S. Dep't of Just., *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://perma.cc/TQ5T-FB2A; Press Release, U.S. Dep't of Just., *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025), https://perma.cc/F5MD-NWHD; Press Release, U.S. Dep't of Just., *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/7J99-WGBA; Press Release, U.S. Dep't of Just., *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://perma.cc/M69P-YCVC.

[2] *See, e.g.*, Br. in Supp. of Mot. to Intervene as Defs., Ex. 1, Ltr. from Maureen Riordan to Sec'y of State Al Schmidt (June 23, 2025), *United States v. Pennsylvania*, No. 25-cv-01481 (W.D. Pa.

sufficient basis and purpose to support its request for D.C.'s unredacted voter file, the relief should be denied and the Complaint dismissed.

## LEGAL STANDARD

A court must dismiss a complaint if, accepting all well-pleaded factual allegations as true, it does not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court need not accept a complaint's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor can "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," survive a motion to dismiss. *Id*. at 678–79. In assessing a complaint, courts can "take judicial notice of public records from other proceedings." *Youkelsone v. FDIC*, 910 F. Supp. 2d 213, 221 (D.D.C. 2012).

## ARGUMENT

### I.    The United States' Demands Exceed the Statutory Authority of the CRA and Are Contrary to Law.

The United States' demand for D.C.'s full, unredacted voter file exceeds its statutory authority under the CRA. Against the backdrop of the turmoil of the Jim Crow era, Congress enacted the CRA, including the public records provisions in Title III, to facilitate investigations of civil rights violations preventing eligible citizens from voting due to discrimination. H.R. Rep. No. 86-956 at 7 (1959) (indicating the purpose of Title III "is to provide a more effective protection of the right of all qualified citizens to vote without discrimination on account of race"). But the Attorney General's access to these records is not unbounded. If the Attorney General makes a demand for records, she must provide "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

---

Oct. 9, 2025), Dkt. No. 37-1 (Pennsylvania); Mot. for Leave to File Mot. to Dismiss, Ex. A, Ltr. from Michael E. Gates to Sec'y of State Jocelyn Benson (July 21, 2025), *United States v. Benson*, No. 25-cv-01148 (W.D. Mich. Nov. 25, 2025), Dkt. No. 34-3 (Michigan); Decl. of Thomas H. Castelli in Supp. of State Defs.' Mot. to Dismiss, Ex. 1, Ltr. from Michael E. Gates to Sec'y of State Tobias Read (July 16, 2025), *United States v. Oregon*, No. 25-cv-01666 (D. Or. Nov. 17, 2025), Dkt. No. 33-1 (Oregon); Decl. of Malcolm A. Brudigam in Supp. of Defs.' Mot. to Dismiss, Ex. 1, Ltr. from Michael E. Gates to Sec'y of State Shirley Weber (July 10, 2025), *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Nov. 7, 2025), Dkt. No. 37-2 (California).

The records request here is contrary to the CRA for at least two distinct reasons. *First*, in making this sweeping demand for D.C.'s full and unredacted state voter registration list, the United States fails to offer a statutorily sufficient statement of "the basis and the purpose" in support of its records requests. *Second*, any records should be redacted to vindicate the privacy and constitutional rights of D.C. voters. Nothing in the CRA prevents the appropriate redaction of the sensitive personal information of voters. So the United States is not entitled to its requested relief.

### A.  The United States' Demand Fails to Meet the CRA's Requirements.

Title III of the CRA sets out requirements regarding federal election records, including a requirement in Section 301 for officers of elections to "retain and preserve, for a period of twenty-two months from the date of any" federal election, "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," with certain exceptions regarding delivery and designation of custodians. 52 U.S.C. § 20701. Section 303 requires that "[a]ny record or paper" retained and preserved under Section 301 "shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or [her] representative." *Id*. § 20703. "This demand shall contain a statement of *the basis and the purpose therefor*." *Id*. (emphasis added). Here, DOJ failed to provide "a statement of the basis and the purpose" for the D.C. requests sufficient to support disclosure of the unredacted voter file. *Id*.; *see* Compl. ¶¶ 23–29.[3]

Consistent with the statutory text, contemporaneous case law immediately following the enactment of Title III of the CRA consistently treated "the basis" and "the purpose" as two related, but distinct, concepts. *See Kennedy v. Lynd*, 306 F.2d 222, 229 n.6 (5th Cir. 1962); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom.*, *Coleman v. Kennedy*, 313 F.2d 867

---

[3] Intervenors assume for purposes of this Motion that the statewide electronic voter file may constitute a "record" or "paper" "relating to any application, registration, payment of poll tax, or other act requisite to voting" that has "come into [the Board's] possession. 52 U.S.C. § 20701. However, no court has ever addressed the question.

(5th Cir. 1963). The "basis" is the statement of *why* the Attorney General believes there may be a violation of federal civil rights law in the first place, whereas the "purpose" explains *how* the requested records would help the Attorney General ultimately determine if there is, in fact, a violation of the law. *Kennedy*, 306 F.2d at 229 n.6.

The basis and purpose requirements under the CRA are critical safeguards. They prevent the statute from being used for a fishing expedition to obtain records for reasons that are speculative, unrelated to the CRA's aims, or otherwise impermissible or contrary to law. The statutory basis and purpose requirements therefore are not perfunctory but require a specific statement as to the reason for requesting the information and how that information will aid in the investigatory analysis. That is consistent with other federal statutes allowing federal agencies to obtain records in service of investigations, where courts have found that the test of whether federal demands for records are enforceable includes an evaluation of whether the underlying investigation is "conducted pursuant to a legitimate purpose." *United States v. Judicial Watch, Inc.*, 371 F.3d 824, 829 (D.C. Cir. 2004) (quoting *United States v. Powell*, 379 U.S. 48, 57 (1964); *see also, e.g.*, *FDIC v. Wentz*, 55 F.3d 905, 908 (3d Cir. 1995) (information sought pursuant to an administrative subpoena must be relevant to the inquiry and not unduly burdensome).

As set forth below, the United States failed to articulate in its demand and in the Complaint "the basis and the purpose" for its request for D.C. voters' sensitive voter information. The United States' demand fails to meet this requirement of the CRA for at least four distinct reasons. These failures warrant dismissal of the case.

*First*, the United States simply has not stated a "basis" for its demand. The United States alleges that the "purpose" of its request seeking "an electronic copy of District of Columbia's complete and current [voter registration list]" is "to ascertain District of Columbia's compliance with the list maintenance requirements of the NVRA and HAVA." August 14 Ltr. at 3; *see also* Compl. ¶ 23. But neither the Complaint nor the August 14 Letter that invoked the CRA supply a "basis" for why the United States believes D.C.'s list maintenance procedures might violate the NVRA or HAVA in the first place. Indeed, the Complaint does not contain any allegations

6

whatsoever regarding D.C.'s compliance with federal law. Nor does the August 14 Letter making DOJ's formal CRA demand and purporting to state the "purpose" of the demand. August 14 Ltr. at 2–4. And while DOJ's July 11 Letter did reference statistics reported by D.C. in the 2024 EAVS Report, *see* July 11 Ltr. at 3, neither that letter nor the Complaint alleges adequate evidence of anomalies or anything inconsistent with reasonable list maintenance efforts in that reported data. The failure to set forth *any* "basis" for the demand is sufficient grounds for dismissal of this action.

*Second*, even if the United States had identified some proper "basis" for its demand—and it did not—it also did not and has not explained any connection between its purported "purpose" and the vast scope of its records request here. The Complaint does not even attempt to explain why unredacted voter files are necessary to determine whether D.C. has "conduct[ed] a general program that makes a reasonable effort to remove the names of ineligible voters" by virtue of "death" or "a change in the residence of the registrant," 52 U.S.C. § 20507; Compl. ¶ 16. Nor could it, because such unredacted files would not assist the Attorney General to examine this question: A single snapshot of a state's voter list does not and could not provide enough information to determine if the state has made a "reasonable effort" to remove ineligible voters under Section 8 of the NVRA. Compl. ¶ 16; 52 U.S.C. § 20507 (a)(4)(A)–(B).

The NVRA and HAVA both leave the mechanisms for conducting list maintenance to the discretion of the States. *See* 52 U.S.C. § 20507(a)(4), (c)(1); *id.* § 21083(a)(2)(A); *id.* § 21085.[4] Even if the United States used voter file data to identify voters who had moved or died on D.C.'s voter list at a single point in time, that still would not amount to D.C. failing to comply with the "reasonable effort" required by the NVRA or HAVA. *See, e.g.*, *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 624–27 (6th Cir. 2025) (describing a "reasonable effort" as "a serious attempt that is rational and sensible" and rejecting any "quantifiable, objective standard" in this context).[5]

---

[4] The term "State" is defined to include the District of Columbia. *See* 52 U.S.C. § 20502(4).

[5] What is more, the inclusion at any particular point in time on D.C.'s voter registration list of some voters who may have potentially moved out of state is not unusual, since Section 8(d) of the NVRA explicitly sets out a specific set of rules and requirements for removals from the voter rolls

Instead, it is the *procedures* carried out by a state or locality that establish its compliance; the unredacted voter file does not.

Moreover, even if some portion of the voter file were necessary to ascertain D.C.'s "compliance with federal election law," Compl. ¶ 23, the United States has not pleaded or otherwise pointed to any justification for why the full unredacted voter file is necessary to carry out this purported purpose. It is telling that, for decades, DOJ has neither sought nor required a full and unredacted voter file in its investigations regarding compliance with the NVRA. *See, e.g.*, Press Release, U.S. Dep't of Just., *United States Announces Settlement with Kentucky Ensuring Compliance with Voter Registration List Maintenance Requirements* (July 5, 2018) https://perma.cc/G2EZUUA5 (describing letters to all 44 states covered by the NVRA with requests for list maintenance information, but without demanding voter files). For this reason, too, the Complaint does not plausibly plead that DOJ has met the basis and purpose requirements of the CRA.

*Third*, the Complaint's purported NVRA-and-HAVA-compliance purposes are fatally undermined by the United States' own more recent statements to States in connection with its data requests. The United States has recently sought for a number of States to sign a now-public memorandum of understanding ("MOU") in connection with its requests for statewide voter files. *See* Ex. 5, U.S. Dep't of Just., Civ. Rts. Div., Confidential Mem. of Understanding ("MOU"); *see also* Ex. 6, Dec. 4 Hr'g Tr. from *United States v. Weber*, No. 25-cv-09149, at 72–74, 91 (DOJ attorney discussing MOU). Far from indicating a purpose of ensuring compliance with the NVRA and HAVA, this MOU runs directly afoul of those statutes.[6]

---

based on changes of residence, whereby states "shall not remove" voters on these grounds unless these voters directly confirm their change of residence in writing, or unless states first provide notice and then abide by a statutory waiting period until the second general federal election after providing notice. 52 U.S.C. § 20507(d).

[6] This Court can take judicial notice of the MOU as a government document produced by DOJ. *See Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

As noted, the NVRA and HAVA require a state to conduct a "reasonable effort" to remove ineligible voters from the rolls. 52 U.S.C. §§ 20507(a)(4), 21083(a)(4)(A). However, the NVRA itself is structured so that potentially ineligible voters *must* necessarily stay on the rolls for two election cycles so as to limit the likelihood of a state removing eligible voters by mistake. *Id.* § 20507(d)(1)(B). That is consistent with Congress's core goals in the NVRA of protecting and expanding the right to register to vote and participate in democracy. *E.g.*, *id.* § 20501. But the MOU indicates multiple contemplated violations of those statutes' requirements. For example, the MOU seeks to place authority to identify supposed ineligible voters in the hands of the federal government, directly contrary to the statute's requirement that procedures for complying with HAVA be "left to the discretion of the State." *Compare id.* § 21085, *with* MOU at 2, 5. In addition, the MOU's substantive terms seek to compel states to remove supposedly ineligible voters "within forty-five (45) days," MOU at 5, in a manner that would violate multiple protections of the NVRA, *e.g.*, 52 U.S.C. § 20507.[7] The MOU demonstrates that DOJ's claimed purpose of ensuring compliance with NVRA and HAVA, as stated in the Complaint, is not accurate or plausible—and that its actual purpose involves defying those statutes by aggrandizing election administration powers to DOJ.

*Fourth*, DOJ's failure to fully and accurately provide the actual basis and purpose for its D.C. request is independently fatal to its Complaint. Section 303 of the CRA requires a statement of "*the* basis and *the* purpose" of a records request. By twice using the definite article, the statute requires not just *a* basis or purpose among many, but *the* complete basis and purpose underlying the request. *See Niz-Chavez v. Garland*, 593 U.S. 155, 165–66 (2021); *see also, e.g.*, *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 817 (2024) (emphasizing distinction between the definite and the indefinite article). Yet here, public reporting and public, judicially noticeable documents demonstrate that DOJ apparently did not disclose the main basis and purpose

---

[7] *See also* Jonathan Shorman, *Trump's DOJ offers states 'confidential' deal to wipe voters flagged by feds as ineligible*, STATELINE, Dec. 18, 2025, https://stateline.org/2025/12/18/trumps-doj-offers-states-confidential-deal-to-wipe-voters-flagged-by-feds-as-ineligible/.

for its demand for D.C.'s full and unredacted voter file, which was and is to build an unprecedented national voter file for its own use, to be shared with other agencies like DHS for unlawful purposes. *See supra* 4–7 & nn.1–2 (describing reporting in detail). The creation of such a database has never been authorized by Congress, and indeed likely violates the federal Privacy Act. *See* 5 U.S.C. § 552a(e)(7) (provision of the federal Privacy Act prohibiting the creation or maintenance of any database "describing how any individual exercises rights guaranteed by the First Amendment," which necessarily includes exercising the right to vote). This is yet another ground for dismissal.

### B. Any Records Disclosed Under the CRA Should Be Redacted to Protect the Constitutional Rights of the Voter, so the Requested Relief Must Fail.

Even if disclosure were appropriate, sensitive personal voter information would still be subject to redaction, which is not barred under Title III. Indeed, courts have found that redaction may be required to prevent the disclosure of sensitive personal information that would create an intolerable burden on the constitutional right to vote. The cases interpreting Section 8(i) of the NVRA are instructive, as courts have consistently permitted—and sometimes required—redaction of voters' sensitive personal data before disclosure to protect voter privacy and ensure compliance with federal and state law and the Constitution.

Like the CRA, the NVRA is silent as to how sensitive personal information should be treated during disclosure. *See* 52 U.S.C. § 20703; *see also id.* § 20507(i)(1). Courts must interpret the disclosure provisions in a manner that does not unconstitutionally burden the right to vote. *See Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 226 (D.C. Cir. 2013) (noting that the constitutional avoidance canon "emphasize[s] the importance of interpreting statutes to avoid deciding difficult constitutional questions…") (quotation marks omitted).

Federal courts have consistently struck this balance, interpreting the "all records concerning" language in Section 8(i) to permit—and sometimes require—redaction and the protection of confidential materials. As the First Circuit has noted, "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File," and such redaction "can further assuage the potential privacy risks implicated by

the public release of the Voter File." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024); *see also Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 266–68 (4th Cir. 2021) (holding that the potential connection to ongoing criminal investigations and the possibility of erroneously labeling a voter as a noncitizen and subjecting them to public harassment warrants maintaining confidentiality). Other courts have consistently recognized that the NVRA does not compel the release of sensitive information otherwise protected by federal or state laws. *See, e.g.*, *N.C. State Bd. of Elections*, 996 F.3d at 264; *Pub. Int. Legal Found., Inc. v. Dahlstrom*, 673 F. Supp. 3d 1004, 1015–16 (D. Alaska 2023); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022), *clarified on denial of reconsideration*, No. 20-cv-3190, 2022 WL 1174099 (C.D. Ill. Apr. 20, 2022). D.C. provides express protections from disclosure for social security numbers, driver's license numbers, and contact information of participants in the confidential address programs. D.C. Code § 2534(a)(2).

Redaction also may be affirmatively required if the disclosure would "create[] an intolerable burden on [the constitutional right to vote] as protected by the First and Fourteenth Amendments." *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (quotation marks and citation omitted). The Fourth Circuit, even while granting access to voter registration applications, affirmed the importance of redacting Social Security numbers, which are "uniquely sensitive and vulnerable to abuse." *Id.* The court emphasized that the NVRA reflected Congress's view that the right to vote was "fundamental," and that the unredacted release of records risked deterring citizens from registering to vote and thus created an "intolerable burden" on this fundamental right. *Id.* at 334, 339; *cf. In re Coleman*, 208 F. Supp. at 200 (noting, in the context of a Title III records request, multiple considerations which could be "[s]ignificant," including whether "official records are privileged, or exempt from discovery for any sound reason of public policy," or "that an inspection of these records would be oppressive, or any unlawful invasion of any personal constitutional right"). As such, public disclosure provisions such as those in the NVRA and Title III must be interpreted to avoid this unconstitutional burden. See *Long*, 682 F.3d at 339; *Bellows*, 92 F.4th at 56. The danger of imposing those burdens on D.C. voters and

11

civic groups is present here. *See* Mot. to Intervene, Ex. 3, Decl. of Ruth Goldman ¶¶ 5–7; Ex. 4, Decl. of Chris Melody Fields ¶¶ 6–9; Ex. 2, Decl. of Suzanne Almeida ¶¶ 7, 9, 13.

The same privacy and constitutional concerns warranting redactions under the NVRA apply equally to requests under the CRA. *Cf. Sheetz v. Cnty. of El Dorado*, 601 U.S. 267, 281–82 (2024) (Gorsuch, J., concurring) ("[O]ur Constitution deals in substance, not form. However the government chooses to act, . . . it must follow the same constitutional rules."). And the limited case law considering CRA records requests acknowledge that courts retain the "power and duty to issue protective orders," *Lynd*, 306 F.2d at 230, such as the redaction of sensitive fields that courts have consistently determined are entitled to protection from disclosure.

## II.    The United States Is Not Entitled to Summary Disposition and Its Motion To Compel Should Be Denied.

The Federal Rules of Civil Procedure, with limited exception, "govern the procedure in *all* civil actions and proceedings in the United States district courts." Fed. R. Civ. P. 1 (emphasis added). The Rules contain limited and narrow carveouts to their own application, none of which include the claim under Title III here. *See* Fed. R. Civ. P. 81. Ignoring these standards, the United States makes expansive claims that Title III universally "displaces the Federal Rules of Civil Procedure," instead "creating a 'special statutory proceeding'" where "'[a]ll that is required is a simple statement by the Attorney General'" that "a written demand for Federal election records and papers covered by the statute [was made], explaining that the person against whom an order is sought has failed or refused to make the requested records" available. Pl.'s Mem. in Supp. of Pl.'s Mot. for Order to Compel Prod. of Recs. ("Mot. to Compel Br."), Dkt. No. 2-1 at 5; *see also* Compl. ¶¶ 1–4. This is contrary to the Federal Rules, not contemplated by statute, and rests on misreading a single set of non-binding cases decided sixty plus years ago, in a different circuit and a drastically different context, including primarily *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962). *See generally* Mot. to Compel Br.; *see also* Compl. ¶¶ 1–4.

The United States briefly acknowledges that "[c]aselaw addressing the CRA in any depth is confined to courts within the Fifth Circuit in the early years following the CRA's enactment.

Since then, courts have not had occasion to revisit the issue." Mot. to Compel Br. at 4 n.1. But the United States studiously ignores why that is the case. *Lynd* arose in a specific historical context: the Jim Crow-era Fifth Circuit—which then included Alabama, Florida, Georgia, Louisiana, Mississippi, and Texas.[8] In these states, election officials and others, including judges, notoriously used every possible means to block Black Americans from registering to vote.[9] It was against this backdrop that the Fifth Circuit noted that "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand is not open to judicial review or ascertainment." *Lynd*, 306 F.2d at 226. In that context, "the factual foundation for" the basis and the purpose of the Attorney General's request was self-evident, and plenary consideration thus not required. *See id.* That court's treatment of the CRA more than sixty years cannot be divorced from its context.[10]

By contrast, here, more than sixty years later, the context of *this* request could not be more different. The United States has invoked the CRA for unprecedented purposes, to make sweeping demands for extensive voter data with no showing or claim of legal deficiencies or violations of rights, while making unprecedented demands for sensitive personal information—amid both the United States' own MOU and extensive reporting suggesting that the stated basis and purpose are pretextual, and that the data at issue is in fact being sought for unlawful ends.[11]

---

[8] "Federal Judicial Circuits: Fifth Circuit," FEDERAL JUDICIAL CENTER, https://perma.cc/9MSD-EFRB (last visited Dec. 9, 2025).

[9] *See generally*, *e.g.*, Steven F. Lawson, *Black Ballots: Voting Rights in the South, 1944-1969* (1976).

[10] *See also In re Coleman*, 208 F. Supp. 199, 201 (S.D. Miss. 1962) (acknowledging that while "[t]he right of free examination of official records is the rule" under Title III there could be "exception[s]" where "the purpose is speculative, or from idle curiosity").

[11] *See, e.g.*, Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html; Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAG. (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

Nothing in Title III insulates the sufficiency of the requirement for a "statement of the basis and the purpose" from standard judicial review. *See* 52 U.S.C. § 20703. Since *Lynd*, the Supreme Court has reaffirmed that "the Federal Rules apply to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings." *Becker v. United States*, 451 U.S. 1306, 1307–08 (1981) (citation and quotation marks omitted); *see also Powell*, 379 U.S. at 57–58 (holding that IRS Commissioner bears the burden to establish statutory requirements before enforcement of a tax subpoena). Just two years after *Lynd*, the Court held that proceedings to enforce a statute providing the United States with the power to request records in terms materially identical to the CRA were governed by the Federal Rules. *Powell*, 379 U.S. at 57–58 & n.18 (citing 26 U.S.C. § 7604(a)); *compare* 26 U.S.C. § 7604(a) ("[T]he United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data[.]"), *with* 52 U.S.C. § 20705 ("The United States district court for the district in which a demand is made . . . or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper.").

Even in *Lynd*, the court, in explaining its findings, noted that "we are not discussing confidential, private papers and effects. We are, rather dealing with public records which ought ordinarily to be open to legitimate reasonable inspection." 306 F.2d at 231. The court also noted that the CRA authorizes jurisdiction by "appropriate process" to compel production, which the court had "no doubt" would "include the power and duty to issue protective orders"—such as orders protecting and redacting sensitive information. 52 U.S.C. § 20705; *Lynd*, 306 F.2d at 230. Thus, even in the 1960s, before sensitive personal information such as Social Security Numbers or driver's license numbers were widely collected as part of the voter registration record, and

14

before any federal laws had been passed to protect and constrain access to personal information,[12] the court recognized the distinction between the disclosure of "confidential, private" information and "public records" that would already "ordinarily [] be open to legitimate reasonable inspection," *Lynd*, 306 F.2d at 231, and anticipated that the "duty to issue protective orders" would arise for certain CRA records requests, *id.* at 230.

The unredacted voter file contains "confidential, private" personal identifying information of D.C. voters that would *not* ordinarily be open to reasonable inspection. *Id.* at 231. To argue that the United States is entitled to summary relief and the forced provision of an unprecedented trove of "confidential, private" information, without *any* review of its statutorily required stated basis and purpose, would go even further than *Lynd* did—in a context where, very much unlike there, the basis and purpose are not inarguably clear but appear pretextual. The court presiding over the federal government's similar action in California has already recognized that the United States' motion to compel seeks "to reach the ultimate question in this case regarding the production of records," and "thousands of voters' lives will be impacted by this case." Hr'g Tr. at 5:3–9, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Dec. 4, 2025), Dkt. No. 100. It denied the United States' first motion to compel, *id.*, and vacated briefing on one filed the following day, ordering that the motion deadlines would be reset "at a later date following a scheduling conference held pursuant to Federal Rule of Civil Procedure 16." Order, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Dec. 15, 2025), Dkt. No. 114.

## CONCLUSION

The United States' Motion to Compel should be denied and the Complaint dismissed.

Dated: December 26, 2025                    Respectfully submitted,

                                                          */s/ Megan C. Keenan*

---

[12] *E.g.*, Privacy Act of 1974, Pub. L. No. 93-579, 88 Stat. 1896 (1974); Driver's Privacy Protection Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796 (1994), codified at 18 U.S.C. § 2721 *et seq.*; E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899 (2002); Federal Information Security Modernization Act of 2014, Pub. L. No. 113-283, 128 Stat. 3073 (2014), codified at 44 U.S.C. §§ 3351 *et seq.* (2014).

Sophia Lin Lakin*
Theresa Lee*
Jonathan Topaz*
Ethan Herenstein*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
slakin@aclu.org
tlee@aclu.org
jtopaz@aclu.org
eherenstein@aclu.org

Megan C. Keenan (D.C. Bar No. 1672508)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St. NW
Washington, DC 20001
(347) 714-1530
mkeenan@aclu.org

\* *Pro hac vice* application forthcoming

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via the Court's ECF system on all counsel of record on December 26, 2025, and will be served on Defendants in accordance with Federal Rule of Civil Procedure 5(a).

*/s/ Megan C. Keenan*
Megan C. Keenan
