**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:25-cv-04403-RDM** |
| **MONICA H. EVANS,** *et al.*, | |
| **Defendants.** | |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
AND CROSS-MOTION TO DISMISS PLAINTIFF'S COMPLAINT**</u>

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................ ii

TABLE OF AUTHORITIES ................................................................................................... iv

INTRODUCTION ................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

    I.      Legal Background ........................................................................................... 2

        A.      Title III of the Civil Rights Act of 1960 ...................................... 2

        B.      Later Federal Election Statutes: The National Voter Registration Act and Help America Vote Act ................................................. 3

        C.      The District's Voter List Maintenance Procedure ..................................... 5

    II.     Factual Background ....................................................................................... 6

    III.   Procedural Background .................................................................................. 8

LEGAL STANDARD ............................................................................................................... 8

ARGUMENT ........................................................................................................................... 9

    I.      Plaintiff's Motion to Compel Should Be Denied ........................................ 9

        A.      Title III of the Civil Rights Act Does Not Authorize a "Special Statutory Proceeding" Such That the Federal Rules of Civil Procedure Do Not Apply ............................................................. 9

        B.      Even If Title III Authorized a "Special Statutory Proceeding," the Court Is Empowered To Prevent the Abuse of Its Process ..................... 13

    II.     The Complaint Should Be Dismissed ......................................................... 15

        A.      Plaintiff Failed To Comply with the Requirements of the Civil Rights Act ................................................................................. 16

            1.     Plaintiff Has Not Provided a Statement of "the Basis" for Its Demand ...................................................................... 16

            2.     Plaintiff's Stated Purpose Does Not Require the Unredacted VRL ................................................................. 18

3.    The District's Electronic VRL Is Not a Record Covered by
Title III .................................................................................... 19

B.    Federal Law Precludes Plaintiff's Request ................................................ 21

1.    Plaintiff's Demand for the Unredacted VRL Violates the
Privacy Act..................................................................................... 21

2.    Plaintiff's Demand for the Unredacted VRL Violates the E-
Government Act............................................................................. 22

C.    The District's Privacy Laws Prevent Production of the Unredacted
VRL and Are Not Preempted.................................................................... 23

D.    Plaintiff's Stated Purpose May Be Pretextual, and Defendants Are
Entitled to an Adversarial Hearing to Assess Plaintiff's Motivation........ 26

CONCLUSION................................................................................................................ 27

# TABLE OF AUTHORITIES

**Cases**

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala 1960) ................................... 3, 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................. 8, 17

*Becker v. United States*, 451 U.S. 1306 (1981) ........................................................................... 11

*Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019) ........................................................................ 4

*Brusseau v. Dep't of Homeland Sec.*, 1:20-cv-1364 (LMB/IDD),

    2021 WL 3174248 (E.D. Va. July 27, 2021) .................................................................... 22

*Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182 (1999) ....................................................... 21

*Dep't of Com. v. New York*, 588 U.S. 752 (2019) .................................................................. 13, 27

*Donaldson v. United States*, 400 U.S. 517 (1971) ....................................................................... 11

*EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621 (D.C. Cir. 1997) ................................. 8

*Elec. Priv. Info. Ctr. v. Presidential Comm'n on Election Integrity*,

    266 F. Supp. 3d 297 (D.D.C. 2017) ................................................................................ 23

*Epic Sys. Corp. v. Lewis*, 584 U.S. 497 (2018) ........................................................................... 13

*FEC v. Comm. to Elect Lyndon La Rouche*, 613 F.2d 849 (D.C. Cir. 1979) ......................... 13, 14

*Geier v .Am. Honda Motor Co., Inc.*, 166 F.3d 1236 (D.C. Cir. 1999) ....................................... 23

*Guam Indus. Services, Inc. v. Rumsfeld*, 383 F. Supp. 2d 112 (D.D.C. 2005) ............................ 16

*Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453 (D.C. Cir. 1996) ............................................. 21

*Husted v. A. Philip Randolph Inst.*, 583 U.S. 756 (2018) ........................................................ 4, 19

*In re OPM Data Sec. Breach Litig.*, 928 F.3d 42 (D.C. Cir. 2019) ............................................. 21

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ................................................................... passim

*Laughlin v. Holder*, 923 F. Supp. 2d 204 (D.D.C. 2013) .............................................................. 8

*League of United Latin Am. Citizens v. Exec. Off. of the President*,

No. 25-0946 (CKK), 2025 WL 3042704 (D.D.C. Oct. 31, 2025) .................................. 4, 6

*Marek v. Chesny*, 473 U.S. 1 (1985)................................................................................. 12

*Maydak v. United States*, 363 F.3d 512 (D.C. Cir. 2004).................................................. 22

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016)....................................... 18, 24

*Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) ..................................... 24

*Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697 (E.D. Va. 2010) ....................... 18

*Pub. Int. Legal Found. v. Benson*, 136 F.4th 613 (6th Cir. 2025) ............................................. 4, 19

*Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024)............................................ 18

*Pulsifer v. United States*, 601 U.S. 124 (2024)................................................................. 16

*Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338 (D.C. Cir. 2018)........................ 23, 24

*Smith v. City of Jackson*, 544 U.S. 228 (2005) ............................................................ 11

*Solar Energy Indus. Ass'n v. Fed. Energy Regul. Comm'n*, 154 F.4th 863 (D.C. Cir. 2025) ...... 16

*True the Vote v. Hosemann*, 43 F. Supp. 3d 693 (S.D. Miss. 2014)............................................ 24

*United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419 (2023) ......................... 12

*United States v. Benson*, 1:25-cv-1148, 2026 WL 362789

(W.D. Mich. Feb. 10, 2026).................................................................................. 14, 19, 20

*United States v. Clarke*, 573 U.S. 248 (2014)................................................................... 11, 13, 27

*United States v. Oregon*, 6:25-cv-01666-MTK, 2026 WL 318402

(D. Or. Feb. 5, 2026)................................................................................ 6, 25, 26, 27

*United States v. Powell*, 379 U.S. 48 (1964) ................................................................. 10, 11, 14

*United States v. Weber*, 2:25-cv-09149-DOC-ADS, 2026 WL 118807

(C.D. Cal. Jan 15, 2026) ......................................................................... 2, 11, 25, 26

**Statutes**

5 U.S.C. § 552a ................................................................................................ 21, 22

8 U.S.C. § 1534 .................................................................................................... 12

15 U.S.C. § 78aa .................................................................................................. 12

26 U.S.C. § 7604 .................................................................................................. 10

28 U.S.C. § 3015 .................................................................................................. 12

52 U.S.C. § 20501 .................................................................................................. 4

52 U.S.C. § 20502 .................................................................................................. 3

52 U.S.C. § 20507 .............................................................................................. 4, 18

52 U.S.C. § 20701 .............................................................................................. 3, 20

52 U.S.C. § 20703 ........................................................................................... passim

52 U.S.C. § 20705 .............................................................................................. 9, 10

52 U.S.C. § 20901 .................................................................................................. 4

52 U.S.C. § 21083 .................................................................................................. 5

52 U.S.C. § 21141 .................................................................................................. 3

E-Government Act, Pub. L. No. 107–347, 116 Stat. 2899 (2002) ....................... 22, 23

**Other Authorities**

Brennan Ctr. for Just., "Tracker of Justice Department Requests for Voter Information,"

https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-

requests-voter-information ................................................................................ 6, 26

Caroline Vakil, *Trump Suggests GOP Should "Take Over" Voting Process In Multiple States*
    *Ahead of Midterms*, The Hill (Feb. 2, 2026, at 18:15 ET),
    https://thehill.com/homenews/campaign/5719458-trump-suggests-republican-voting-
    takeover/.................................................................................................................. 6

Emily Bazelon & Rachel Posner, *The Unraveling of the Justice Department*, N.Y. Times Mag.
    (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-
    justice-department-staff-attorneys.html ............................................................... 6

*Technology & Security Overview*, Electronic Registration Information Center,
    https://ericstates.org/security/ ............................................................................. 26

*Webster's New World Dictionary* (1960) .................................................................. 16, 20

**Rules**

Fed. R. Civ. P. 1 ....................................................................................................... 12

Fed. R. Civ. P. 81 ..................................................................................................... 12

**INTRODUCTION**

In May 2025, the United States Department of Justice ("DOJ" or "Plaintiff") began sending letters to election officials nationwide, asking questions about their voter list maintenance practices and demanding they produce electronic copies of their full, unredacted voter registration lists (VRLs). Although Plaintiff initially sought the records under the National Voter Registration Act, Plaintiff ultimately latched onto Title III of the Civil Rights Act of 1960 ("Title III" or "CRA") as the purported legal authorization for its requests. Passed during the height of the Jim Crow era, the CRA sought to equip the federal government with tools to investigate and prosecute discrete allegations of voting discrimination by local registrars. Sixty years later, Plaintiff is apparently repurposing the CRA to collect and centralize an unprecedented (and unauthorized) trove of unredacted state voter registration information within the federal executive branch.

Like election officials in dozens of states, Defendants District of Columbia Board of Elections (BOE) and its constituent members responded to Plaintiff's request by providing, among other things, a copy of the District's VRL with highly sensitive voter information—in particular, driver's license numbers and partial social security numbers—redacted. Unsatisfied, Plaintiff doubled down on its demand for the unredacted VRL, in electronic format, claiming it was necessary to audit the District's compliance with federal election law. When Defendants again refused, Plaintiff filed the Complaint in this action—with one count, under the CRA—and concurrently moved for an order to compel production of the unredacted VRL.

The CRA, however, does not entitle Plaintiff to the District's unredacted VRL. As explained in argument below, the CRA contains clear minimum requirements for Plaintiff to justify a request for records, and Plaintiff's demand falls short. Most relevant here, by its terms, the CRA requires Plaintiff to state "the basis and the purpose" supporting any such demand. Yet

Plaintiff proffered no "basis" at all in its correspondence to the District.  And Plaintiff's stated "purpose" is at least irrelevant and possibly pretextual, given that Plaintiff has no colorable argument that it needs sensitive, personal voter information in order to assess compliance with the National Voter Registration Act or the Help America Vote Act.  And the documents Plaintiff seeks are not even "records" subject to the CRA's collection provision.  Further, Plaintiff's request violates multiple federal statutes, including the Privacy Act and the E-Government Act, as well as the District's own privacy laws.  Finally, Plaintiff's shifting justifications and public statements outside of this litigation suggest that its true purpose in seeking the District and other states' unredacted VRLs is entirely unrelated to election law.  The Court should not accept Plaintiff's attempt to manipulate the CRA in this manner.  Ultimately, because Plaintiff is not entitled to the documents it seeks, the Court should deny Plaintiff's motion to compel and dismiss the Complaint with prejudice.

## BACKGROUND

### I.      Legal Background

In the United States, the administration of federal elections is generally left to state and local officials.  Congress retains the power, however, "to make or alter" the states' election regulations "at any time."  U.S. Const., art. I, sec. 4, cl. 1.  As access to the franchise has broadened, Congress has used its authority to enact various laws intended to safeguard the people's right to vote, creating specific requirements for states and local jurisdictions in administering elections and maintaining their voter rolls.

### A.      Title III of the Civil Rights Act of 1960

Title III of the Civil Rights Act of 1960 was enacted during the Jim Crow era, when persistent voter suppression prevented Black Americans from voting.  *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS, 2026 WL 118807, at *1 (C.D. Cal. Jan. 15, 2026).  Against a

backdrop of literacy tests and poll taxes, Title III was "designed to secure a more effective protection of the right to vote." *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). To that end, *e.g.*, *id.* at 853 n.4, and as immediately relevant here, Congress included in Title III a records retention requirement, which provides, in pertinent part:

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election . . . all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election[.]

52 U.S.C. § 20701. Title III further authorizes the United States Attorney General to "demand in writing" that such records "be made available for inspection, reproduction, and copying at the principal office" of the relevant election official. *Id.* § 20703. Such written demand must "contain a statement of the basis and the purpose" for the request. *Id.* The purpose of this access provision is to enable the collection of voter data when "there is a question concerning infringement or denial of" the right to vote. *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962).

 **B.** **Later Federal Election Statutes: The National Voter Registration Act and Help America Vote Act**

Although Plaintiff's sole claim arises under Title III of the Civil Rights Act, two later federal election statutes—the National Voter Registration Act (NVRA) and the Help America Vote Act (HAVA)—are relevant to Plaintiff's demand for District voter information.[1] July 11, 2025 Letter [2-3].

---

[1] Both the NVRA and HAVA apply to the District of Columbia. 52 U.S.C. § 20502(4) (NVRA) ("[T]he term 'State' means a State of the United States and the District of Columbia[.]"); *Id.* § 21141 (HAVA) ("In this chapter, the term 'State' includes the District of Columbia, [ . . . ]").

3

The NVRA, 52 U.S.C. § 20501, *et seq.*, "requires States to conduct a general program that makes a reasonable effort to remove the names of voters who are ineligible by reason of death or change in residence."  *Husted v. A. Philip Randolph Inst.*, 583 U.S. 756, 761 (2018) (quoting 52 U.S.C. § 20507(a)(4)) (internal quotation marks omitted).  To minimize the possibility of erroneously removing a voter from the rolls, the NVRA "prescribes requirements that a State must meet in order to remove a name" based on a change in address.  *Id.* at 761–62 (citing 52 U.S.C. § 20507(b), (c), (d)).  The state must first send a notice to the voter's address requesting they confirm or update their address and informing them that if they do not respond to the notice and do not vote in the following two general elections, their voter registration will be canceled.  52 U.S.C. § 20507(d)(2)(A).  States "are permitted to employ more robust procedures" for list maintenance, but following the process outlined in the NVRA, "at a minimum, constitutes a reasonable effort at identifying voters who have changed their addresses."  *Bellitto v. Snipes*, 935 F.3d 1192, 1205 (11th Cir. 2019); *see also Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 625 (6th Cir. 2025) ("[A] state must establish a program that makes a rational and sensible effort to remove [ineligible voters]; a state need not, however, go to 'extravagant or excessive' lengths in creating and maintaining such a program.").  The NVRA also requires each state to maintain certain documents "for at least 2 years" and make them available for inspection and photocopying "for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]"  52 U.S.C. § 20507(i)(1).

HAVA, *id.* § 20901, *et seq.*, sought to modernize and standardize election administration following challenges during the 2000 Presidential election.  *See League of United Latin Am. Citizens v. Exec. Off. of the President* (*LULAC*), No. 25-0946 (CKK), 2025 WL 3042704, at *46 (D.D.C. Oct. 31, 2025).  As relevant here, HAVA required each state to create "a single,

uniform, official, centralized, interactive computerized statewide voter registration list[.]" 52 U.S.C. § 21083(a)(1)(A). Such computerized list is to be maintained "in accordance with" the list maintenance provisions of the NVRA. *Id.* § (a)(2)(A)(i). HAVA also required voter registration applications to include the voter's valid driver's license number or last four digits of their social security number. *Id.* § (a)(5)(A)(i)(I–II). If a prospective voter does not have a valid driver's license or social security number, the state must "assign the applicant a number which will serve to identify the applicant for voter registration purposes." *Id.* § (a)(5)(A)(ii). Unlike the NVRA, HAVA contains no disclosure or public inspection requirement.

### C. The District's Voter List Maintenance Procedure

In the District, BOE has implemented a comprehensive system of VRL maintenance consistent with the requirements of the NVRA and HAVA. *See* Aug. 6, 2025 Letter [2-4] at 3–5. Specifically, in odd-numbered years, BOE sends "first class non-forwardable canvass postcard[s]" to "confirm the residence address of each registered voter who did not confirm his or her address through the voting process or file a change of address at the polls in the preceding general election." 3 DCMR § 518.1. If the canvass postcard is returned and the postal service provides a new address in the District for the registered voter, "the Board shall change the address on its records accordingly." *Id.* § 518.2. If the new address is outside the District, the Board mails "a forwardable notice to both the old and new address, informing the registrant how to register to vote in their new jurisdiction or correct the address information obtained from the Postal Service." *Id.* § 518.3. If no new address is available, the Board mails a second, forwardable notice to the voter's last known address. *Id.* § 518.4. If the voter fails to respond to the notice, they are placed on inactive status. Aug. 6, 2025 Letter at 4. A voter who remains in inactive status through two subsequent federal general elections is removed from the VRL. *Id.* at 4.

II.        **Factual Background**

Although election administration is generally the province of state and local governments, the current federal administration is on an unprecedented mission to exert direct control over the nation's elections.  *See, e.g.*, *LULAC*, 2025 WL 3042704, at *75 (striking down attempt to require "documentary proof of United States citizenship" on voter registration forms); *United States v. Oregon*, No. 6:25-cv-01666-MTK, 2026 WL 318402, at *11 (D. Or. Feb. 5, 2026) (noting that Attorney General Pamela Bondi's demand for access to Minnesota's state voter list in "a letter about immigration enforcement casts serious doubt as to the true purpose for which [DOJ] is seeking voter registration lists . . . and what it intends to do with that data"); *see also* Emily Bazelon & Rachel Posner, *The Unraveling of the Justice Department*, N.Y. Times Mag. (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/ magazine/trump-justice-department-staff-attorneys.html (quoting a former DOJ attorney indicating DOJ sought to use state voter rolls "to identify undocumented immigrants that have registered to vote" despite "no pre-existing evidence"); Caroline Vakil, *Trump Suggests GOP Should "Take Over" Voting Process In Multiple States Ahead of Midterms*, The Hill (Feb. 2, 2026, at 18:15 ET), https://thehill.com/homenews/campaign/5719458-trump-suggests- republican-voting-takeover/.  In furtherance of this goal, DOJ has requested information and voter lists from at least 48 states, and brought suit against 29, trying to force the production of the states' unredacted VRLs.  *See* Brennan Ctr. for Just., "Tracker of Justice Department Requests for Voter Information" (last updated Mar. 10, 2026), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests- voter-information (Brennan Center Tracker).

On July 11, 2025, Plaintiff sent BOE a letter seeking "information regarding [BOE's] procedures for complying with the statewide voter registration list maintenance provisions" of the NVRA. July 11, 2025 Letter [2-3] at 2; Compl. [3-1] ¶ 23. Plaintiff also sought "[t]he current electronic copy of the District of Columbia's computerized statewide voter registration list . . . as required by" HAVA, and answers to several questions concerning BOE's responses to the Election Assistance Commission's Electronic Administration and Voting Survey (EAVS) following the November 2024 general election. July 11, 2025 Letter at 2–3.

BOE responded on August 6, 2025, answering all of Plaintiff's questions about its response to the EAVS, explaining its NVRA list maintenance procedures in detail, and providing a copy of the District's public VRL. Compl. ¶ 24; Aug. 6, 2025 Letter. Unsatisfied, Plaintiff sent a second letter to BOE on August 14, 2025. Compl. ¶ 25. This time invoking the CRA, Plaintiff "demand[ed] an electronic copy of [the] District of Columbia's complete and current" VRL containing "*all fields*, which includes the registrant's full name, date of birth, residential address, [and] his or her state driver's license number or the last four digits of the registrant's social security number[.]" Aug. 14, 2025 Letter [2-5] at 3 (emphasis original). Plaintiff stated that "[t]he purpose of the request is to ascertain [the] District of Columbia's compliance with the list maintenance requirements of the NVRA and HAVA." *Id.* at 3. On September 4, 2025, BOE declined to provide this information, noting that "[u]pon review, none of [Plaintiff's cited] statutory provisions authorize the Board to provide an unredacted" VRL. Sep. 4, 2025 Letter [2-6] at 2; Compl. ¶ 29 (determining that providing the information sought "would constitute a clearly unwarranted invasion of personal privacy").

III.        **Procedural Background**

Plaintiff filed this action on December 18, 2025, eventually serving Defendants on February 2, 2026.  The sole count in the Complaint alleges that Defendants violated the CRA by refusing Plaintiff's demand for the District's full, unredacted VRL and seeks an injunction requiring Defendants to produce the same.  Compl. ¶ 30.  Plaintiff simultaneously filed a motion to compel, seeking the same ultimate relief.  *Compare id.* at 7–8 (asking the court to "[o]rder Defendants to provide to the Attorney General the current electronic copy of D.C.'s computerized voter registration list, with all fields . . . within 5 days"), *with* Pl.'s Mem. in Supp. Mot. Compel [3-3] (Pl.'s Mot. Compel) at 3 (same).  Following a hearing and status conference on February 5, 2026, the Court entered a scheduling order directing Defendants to file their opposition to Plaintiff's motion to compel and cross-motion to dismiss by March 13, 2026.  Feb. 6, 2026 Minute Ord.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id*. at 679.  In evaluating a motion under Rule 12(b)(6), the Court "may consider . . . the facts alleged in the complaint, any documents either attached to or incorporated in the complaint, and matters of which [the Court] may take judicial notice."  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013).

**ARGUMENT**

**I.    Plaintiff's Motion to Compel Should Be Denied.**

Plaintiff's motion to compel is an improper attempt to circumvent the Court's

determination of the merits, in the ordinary course and through established means.  Based almost

entirely on one Fifth Circuit case from over half a century ago, Plaintiff's motion asks this Court

to dispense with the Federal Rules of Civil Procedure—and the Court's own judgment—and

grant Plaintiff unfettered access to the highly sensitive information in the District's unredacted

VRL.  The Court should reject Plaintiff's invitation.  As demonstrated below, neither the CRA

itself nor any binding authority authorizes the sort of summary proceeding Plaintiff's motion

demands, and even if it did, this Court would still have authority to prevent the abuse of judicial

process.  For these reasons, Plaintiff's motion proceeds from a false procedural premise, and the

Court should deny the motion accordingly.

> **A.    Title III of the Civil Rights Act Does Not Authorize a "Special Statutory Proceeding" Such That the Federal Rules of Civil Procedure Do Not Apply.**

Plaintiff insists that its motion to compel is proper because "[t]he CRA displaces the

Federal Rules of Civil Procedure and creates a 'special statutory proceeding[.]'"  Pl.'s Mot.

Compel at 13 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962)).  As explained

above, Title III of the CRA states, in relevant part, that "[a]ny record or paper" required by the

statute to be retained "shall, upon demand in writing by the Attorney General . . . , be made

available for inspection, reproduction, and copying at the principal office" of the state election

official.  52 U.S.C. § 20703.  The statute then announces how this records access provision may

be enforced: "The United States district court for the district in which a demand is made . . . shall

have jurisdiction *by appropriate process* to compel the production of such record or paper."  *Id.*

9

§ 20705 (emphasis added).  The CRA itself, therefore, calls for "appropriate process," not a "special," summary proceeding, as Plaintiff contends.  Pl.'s Mot. Compel at 13.

To support its argument, Plaintiff leans heavily on language from *Kennedy v. Lynd*, a set of consolidated cases arising out of investigations into discriminatory election practices in Jim Crow-era Mississippi and Louisiana.  306 F.2d 222 (5th Cir. 1962).  There, faced with local election officials flouting the document retention requirements of the CRA to stymie investigation efforts, the Fifth Circuit opined that judicial enforcement of a demand under Title III "is a special statutory proceeding in which the courts play a limited, albeit vital, role."  *Id.* at 225.  According to Plaintiff's reading of *Lynd*, this language means that the Attorney General's "right to reproduction and copying of Federal election records is not dependent upon any other showing" beyond a simple statement of the basis and purpose for the request.  Pl.'s Mot. Compel at 14.  In other words, Plaintiff argues, the Court has no discretion and no choice but to allow DOJ access to whatever documents it asks for, at any time, and over any objections, no matter how well-founded.

Plaintiff's theory is untenable, not least because it ignores relevant Supreme Court precedent.  After the Fifth Circuit's non-binding decision in *Lynd*, the Supreme Court considered analogous language to that in Title III and found that the Federal Rules *do* apply in circumstances like these.  *See United States v. Powell*, 379 U.S. 48, 58 n.18 (1964).  In *Powell*, the Court considered a provision of the Internal Revenue Code that, like Title III, allows a federal agency to compel the production of records "by appropriate process."  *Compare* 26 U.S.C. § 7604(a) ("[T]he United States district court . . . shall have jurisdiction by appropriate process to compel [attendance, testimony, or production of records.]"), *with* 52 U.S.C. § 20705 ("The United States district court . . . shall have jurisdiction by appropriate process to compel

10

[production of records.]").  There, the Court held that because the statute referenced "appropriate process" but "contain[ed] no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply[.]"  *Powell*, 379 U.S. at 58 n.18. In later cases, the Court reaffirmed that, although "the Civil Rules are not inflexible in application," courts must always ensure that "the rights of the party summoned are protected and an adversary hearing, if requested, is made available."  *Donaldson v. United States*, 400 U.S. 517, 528–29 (1971); *see Becker v. United States*, 451 U.S. 1306, 1308 (1981) (similar).  The Court has emphasized, moreover, that "the requisite judicial proceeding is not *ex parte* but adversarial," and "[t]he summoned party . . . may present argument and evidence on all matters bearing on the summons's validity."  *United States v. Clarke*, 573 U.S. 248, 253 (2014).

Plaintiff cannot credibly argue that the same language—that courts "shall have jurisdiction by appropriate process"—has a different meaning in the Internal Revenue Code than it does in the Civil Rights Act.  As Plaintiff itself notes, "when Congress uses the same language in two statutes having similar purposes . . . it is appropriate to presume that Congress intended that text to have the same meaning in both statutes."  *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion); Pl.'s Mot. Compel at 13 n.3 (quoting *Smith*, 544 U.S. at 233).  Here, both § 7604(a) of the Internal Revenue Code and Title III of the CRA allow a federal agency to compel the production of documents and information "by appropriate process."  If the Federal Rules apply to one, they should naturally apply to the other.  *See Weber*, 2026 WL 118807, at *8 & n.15 (rejecting a similar request for "abbreviated procedures" under the CRA because "[t]he Supreme Court found that courts should apply standard civil procedures in ensuring statutory prerequisites are satisfied under a similarly worded statute" (citing *Powell*, 379 U.S. at 57–58 & n.18)).

11

Importantly, the CRA and the Internal Revenue Code are not the only reference points. The Federal Rules of Civil Procedure themselves state that they "govern the procedure in *all* civil actions and proceedings in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1; *see id.* R. 81 (listing exceptions). In light of that directive, the Supreme Court has repeatedly held that "[t]he Federal Rules set the default rules in civil litigation," *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 436 (2023), and that a "clear expression of congressional intent" is necessary to "exempt . . . [a] statute from the operation of" those rules, *Marek v. Chesny*, 473 U.S. 1, 12 (1985) (quoting *California v. Yamasaki*, 442 U.S. 682, 700 (1979)). The general reference to "appropriate process" in the CRA does not satisfy that demanding requirement.

Further, Congress often prescribes federal court jurisdiction to enforce federal law while dictating which normal court rules do or do not apply. The Securities Exchange Act, for example, explicitly exempts the Federal Rules of Civil Procedure from applying to certain procedures under the Act. *See* 15 U.S.C. § 78aa(a) ("Rule 45(c)(3)(A)(ii) of the Federal Rules of Civil Procedure shall not apply to a subpoena issued [to compel witnesses or production of documents at a hearing]."). Other federal statutes specify that the Federal Rules of Evidence do not apply to certain proceedings. *See, e.g.*, 8 U.S.C. § 1534(h) (in deportation proceeding, "[t]he Federal Rules of Evidence shall not apply"). And still others dictate which procedural rules *do* apply—and under what circumstances. *See, e.g.*, 28 U.S.C. § 3015(a) (in federal debt collection action, "the United States may have discovery regarding the financial condition of the debtor in the manner in which discovery is authorized by the Federal Rules of Civil Procedure"). In short: Congress knows how to create a "special statutory proceeding" when it chooses, and in enacting Title III of the CRA, it plainly chose not to do so. *Cf. Epic Sys. Corp. v. Lewis*, 584 U.S. 497,

12

514 (2018) ("[W]hen Congress wants to mandate particular dispute resolution procedures it knows exactly how to do so.").  The Court should give effect to that congressional choice—and to the Supreme Court's analysis in *Powell*—and deny Plaintiff's motion accordingly.

### B.    Even If Title III Authorized a "Special Statutory Proceeding," the Court Is Empowered To Prevent the Abuse of Its Process.

Even if the Court accepts Plaintiff's theory that Title III creates a "special statutory proceeding" where the Court's power is limited, Plaintiff is still not entitled to an order summarily granting its motion to compel.  Rather, even in the most summary of proceedings falling within this Court's jurisdiction, the Court is still empowered to ensure its process is not being abused.

For example, Plaintiff may argue, as it has elsewhere, that its records demand should be treated as something akin to an administrative subpoena, which Plaintiff is entitled to issue in certain circumstances to investigate potential wrongdoing.  But even when entertaining applications to enforce administrative subpoenas, federal district courts are empowered to ensure the federal government's demands are not made in bad faith or for an improper purpose.  *See Clarke*, 573 U.S. at 254 (holding that "[a]s part of the adversarial process concerning a summons's validity," the party summoned "is entitled to examine [the agency] when [it] can point to specific facts or circumstances plausibly raising an inference of bad faith"); *FEC v. Comm. to Elect Lyndon La Rouche*, 613 F.2d 849, 862 (D.C. Cir. 1979) ("It is well settled that an agency may not use its subpoena power 'for an improper purpose[.]" (quoting *Powell*, 379 U.S. at 58)).  In other words, this Court is not required to close its eyes and ears to everything but one sentence in Plaintiff's second letter to Defendants; it can and should consider the context in which Plaintiff has undertaken its "investigation."  *See Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019) ("[a]ccepting contrived reasons" for federal agency action "would defeat the purpose

13

of" judicial review).  After all, as the Supreme Court has underscored, "[i]t is the [C]ourt's process which is invoked . . . and a court may not permit its process to be abused."  *Powell*, 379 U.S. at 58.  Plaintiff must still "show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within [its] possession, and that the administrative steps required by the [statute] have been followed."  *Id.* at 57–58; *Comm. to Elect Lyndon La Rouche*, 613 F.2d at 862.

As discussed below, there is substantial basis to question whether Plaintiff issued this request in bad faith.  For one, Plaintiff has not even complied with the statutory requirement to identify both "the basis" and "the purpose" of its demand.  52 U.S.C. § 20703.  Plaintiff's motion should be denied—and its Complaint dismissed—for this reason alone.  *See infra* II.A.  And this failure also provides the Court ample reason to inquire whether Plaintiff's demand has been made in "bad faith," or if Plaintiff is "abusing the [C]ourt's process," as the Court is empowered and obliged to do.  *United States v. Benson*, 1:25-cv-1148, 2026 WL 362789, at *7 (W.D. Mich. Feb. 10, 2026) (internal quotation marks omitted).

Even *Lynd* cannot save Plaintiff on this point, as that case itself cautions that a Title III proceeding is no "less judicial."  306 F.2d at 225.  As *Lynd* makes plain: "[I]n passing upon the application (to issue or not issue an order to produce) the court exercises judicial judgment.  It does not confer or withhold a favor."  *Id.* (quoting *Tutun v. United States*, 270 U.S. 568, 578 (1926)) (internal quotation marks omitted).  And *Lynd* specifically leaves for judicial determination "whether or not any specified particular paper or record comes within" the remit of the CRA.  *Id.* at 226; *Benson*, 2026 WL 362789, at *9 (holding Michigan's VRL was not a covered record under the Civil Rights Act); *see also infra* II.A.3.  Put simply, even under Plaintiffs best authority, the Court is not required to summarily grant Plaintiff's motion to

14

compel, as Plaintiff urges. Pl.'s Mot. Compel at 14. At the very least, as Plaintiff itself suggests, "the matter should be set down without delay for suitable hearing," *id.* (quoting *Lynd*, 306 F.2d at 226), after suitable time for fact-finding, as to the propriety of Plaintiff's demand.

\* \* \*

Because nothing in the CRA exempts proceedings like this one from the application of the Federal Rules of Civil Procedure, *see supra* I.A., or from the exercise of ordinary judicial judgment, Plaintiff's attempt to circumvent both should be rejected, and its motion to compel should be denied as procedurally improper. Further, for the reasons explained below, Plaintiff's motion—and its Complaint—fails on the merits. Accordingly, the Court should deny the motion for that reason too and dismiss the Complaint for failure to state a claim.

## II.        The Complaint Should Be Dismissed.

Plaintiff's Complaint should be dismissed because the facts alleged do not entitle Plaintiff to relief under the CRA. Plaintiff's failure to provide "the basis" for its demand, as the CRA requires, is independently fatal to its claim. Beyond that, Plaintiff's proffered "purpose" for its demand is unrelated to protecting voting rights, and in any case, Plaintiff has not alleged sufficient facts to show that the District's unredacted VRL is necessary for it to achieve its stated purpose. And in any event, the District's VRL is not a "record" covered by the Civil Rights Act. The Complaint should also be dismissed because Plaintiff's demand for the District's unredacted VRL runs headlong into multiple federal privacy laws, and Defendants have a strong state law interest in protecting the highly sensitive information of District voters. Further, as other courts have noted, Plaintiff's stated "purpose" for its demand appears to be pretextual. For all these reasons, the Complaint should be dismissed with prejudice.

15

A.      **Plaintiff Failed To Comply with the Requirements of the Civil Rights Act.**

When the Attorney General seeks records under the CRA, she must accompany the demand with "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. Because Plaintiff, in its letters and Complaint, failed to comply with the requirements of the law, the Complaint should be dismissed.

1.      **Plaintiff Has Not Provided a Statement of "the Basis" for Its Demand.**

Ordinary principles of statutory interpretation make plain that Plaintiff must make two separate representations when seeking documents under the CRA: one of the *basis* for its demand "and" one of the *purpose* for which it seeks the requested documents. *Id.*; *see Solar Energy Indus. Ass'n v. Fed. Energy Regul. Comm'n*, 154 F.4th 863, 868 (D.C. Cir. 2025) ("[Courts] presume that Congress did not include words that have no effect, and so [they] generally avoid a reading that renders some words altogether redundant.") (quoting *Mercy Hosp. Inc. v. Azar*, 891 F.3d 1062, 1068 (D.C. Cir. 2018)) (citation modified). Generally, the use of "and" in a statute "directs that the item preceding it and that succeeding it be different." *Guam Indus. Services, Inc. v. Rumsfeld*, 383 F. Supp. 2d 112, 119 n.5 (D.D.C. 2005). This is particularly true where the terms separated by "and" are not synonymous, as here. *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute, the same term usually has the same meaning and different terms usually have different meanings."). A "basis" is "the base, foundation, or chief supporting factor of anything." *Webster's New World Dictionary* (1960). A "purpose," meanwhile, is "something one intends to get or do." *Id.* The CRA's reference to a statement of "the basis and the purpose" thus requires Plaintiff to accompany its demand with a statement containing two distinct pieces of information: the "chief supporting factor" for its demand and what it "intends to . . . do" with the documents and information it receives.

16

Plaintiff's own historical practice confirms that "the basis" and "the purpose" refer to two separate factual proffers.  In *Lynd*, for example, the Attorney General's demand stated:

> This demand is *based upon* information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction.
>
> The *purpose of* this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred.

*Lynd*, 306 F.2d at 229 n.6 (emphasis added).  Contrast here, where Plaintiff stated only: "[t]he purpose of the request is to ascertain [the] District of Columbia's compliance with the list maintenance requirements of the NVRA and HAVA."  Aug. 14, 2025 Letter [2-5] at 3.[2]  No mention is made of any "basis" for the demand, despite Plaintiff's bald assertion that its letter "contain[ed] a statement of the basis and the purpose therefor."  Compl. ¶ 31; *Iqbal*, 556 U.S. at 678 (holding a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" (alterations original) (quoting *Twombly*, 550 U.S. 557)).  Even in moving to compel the records it seeks, Plaintiff tacitly acknowledges the fact that it failed to state the "basis" for its request in either letter to BOE, trying to sweep this noncompliance under the rug.  *See* Pl.'s Mot. Compel at 9–10 (arguing that Plaintiff satisfied the requirements of the CRA by "(1) making a written demand . . . (2) directing that demand to Defendants . . . and (3) stating that the *purpose* of the demand is to 'ascertain [the] District of Columbia's compliance with the

---

[2]    Notably, Plaintiff did not invoke the CRA *at all* in its initial letter dated July 11, 2025. *See generally* July 11, 2025 Letter (citing only the NVRA's enforcement provision, 52 U.S.C. § 20510).  And Plaintiff's second letter only invoked it as an alternative basis for the demand. Aug. 14, 2025 Letter at 3 (citing Title III "[*i*]*n addition to* [the NVRA and HAVA] . . . ." (emphasis added)).

list maintenance requirements of the NVRA and HAVA" (emphasis added)).  Because Plaintiff

has failed to comply with the requirements of the CRA, the Complaint should be dismissed.

### 2.    Plaintiff's Stated Purpose Does Not Require the Unredacted VRL.

Not only has Plaintiff failed to provide the basis for its request, but its stated purpose

does not justify the production of the requested records.  Plaintiff asserts that it needs access to

the unredacted VRL because it "cannot assess compliance with HAVA and the NVRA" without

it.  Pl.'s Mot. Compel at 10.  Because HAVA requires a state to ensure each registered voter in

its voter list has "a unique HAVA identifier"—often the voter's driver's license or last four digits

of their social security number—Plaintiff suggests that it is impossible to "evaluate the state's

compliance with HAVA" without the unredacted list.  *Id.*  Further, Plaintiff argues that it needs

this information to assess compliance with HAVA and the NVRA's list maintenance procedures.

*Id.* at 10–11.  Left unexplained is why Plaintiff needs a full, unredacted VRL to do this work.

It is especially hard to understand why the CRA would authorize—and Plaintiff would

need—access to the District's unredacted VRL when Plaintiff would not be entitled to such a

record under either the NVRA or HAVA.  The NVRA requires each state to maintain "for at

least 2 years" and make available for inspection and photocopying "all records concerning the

implementation of programs and activities conducted for the purpose of ensuring the accuracy

and currency of official lists of eligible voters[.]"  52 U.S.C. § 20507(i)(1); *see also* July 11,

2025 Letter at 2.  But "nothing in the text of the NVRA prohibits the appropriate redaction of

uniquely or highly sensitive personal information in the [voter list]."  *Pub. Int. Legal Found.,*

*Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (collecting cases); *Project Vote, Inc. v. Kemp*, 208

F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) (holding the NVRA "does not require the disclosure of

sensitive information that implicates special privacy concerns"); *Project Vote/Voting for Am.,*

*Inc. v. Long*, 752 F. Supp. 2d 697, 711 (E.D. Va. 2010) (concluding "that a person's [social

security number] is precluded from disclosure").  HAVA, meanwhile, contains no provision requiring disclosure of the VRL at all, let alone one that would require production of the unredacted VRL, which Plaintiff seeks here.  However "sweeping" Plaintiff claims the CRA is, it cannot be extended so far as to make other statutes meaningless.

Further, Plaintiff cannot seriously argue that it needs this information to assess whether BOE conducts "a general program that makes a reasonable effort to remove the names of voters who are ineligible by reason of death or change in residence." *Husted*, 583 U.S. at 761 (quoting 52 U.S.C. § 20507(a)(4)) (internal quotation marks omitted); Pl.'s Mot. Compel at 10.  "[T]he language of the NVRA does not require a perfect effort, nor does it require the most optimal effort, nor does it even require a very good effort"—only a *reasonable* effort.  *Pub. Int. L. Found.*, 136 F.4th at 628 (6th Cir. 2025) (rejecting statistical argument that list maintenance program was insufficient).  Defendants provided detailed information about the District's list maintenance processes in responding to Plaintiff's inquiry.  *See* Aug. 6, 2026 Letter at 2–4. Plaintiff has not argued why this is not sufficient.[3]  Because Plaintiff's demand for the District's unredacted VRL finds no support in law or logic, the Court should reject it and dismiss the Complaint.

**3.    The District's Electronic VRL Is Not a Record Covered by Title III.**

Lastly, Plaintiff is not entitled to the District's unredacted VRL under the CRA because it is not a "record" covered by Title III.  *See Benson*, 2026 WL 362789, at *9–10.  The CRA "requir[es] states to preserve records that voters submit to them—not records that states create."

---

[3]    It is also unclear how a point-in-time snapshot of the District's voter list is within the scope of Plaintiff's investigation of compliance "with the statewide voter registration list maintenance provisions of the [NVRA]," July 11, 2025 Letter at 2, or how such a document could assist with such an investigation.

*Id.* at *9. Section 20703 authorizes the Attorney General to view "[a]ny record or paper required by section 20701 of this title to be retained and preserved," and section 20701 in turn provides that an election officer must retain and preserve "all records and papers which *come into his possession*." 52 U.S.C. §§ 20701, 20703 (emphasis added). "The phrase 'come into [their] possession' naturally refers to a process by which someone *acquires* an item from an external source." *Benson*, 2026 WL 362789, at *9 (citing *Honeycutt v. United States*, 581 U.S. 443, 449 (2017)) (alterations and emphasis original); *see also Webster's New World Dictionary* (1960) ("obtain" means "to get possession of, especially by trying; procure"). BOE did not "come into possession" of the District's VRL; the list is a record created by BOE based on applications that came into its possession—which *are* the documents the CRA sought to be preserved. *Rogers*, 187 F. Supp. at 853 n.4 (noting Title III was passed to address "[s]tate action such as taken by the Alabama legislature authorizing registrars to destroy their records").

Context makes it even clearer: the CRA requires the retention of documents "relating to any application, registration, payment of poll tax, or other act requisite to voting[.]" 52 U.S.C. § 20701. "Each of these terms refers to something that the voter submits or does as part of the registration process . . . . which indicates the sorts of records covered by the statute: namely, records that election officials *receive*, rather than *create*." *Benson*, 2026 WL 362789, at *9 (emphasis original). And while some information in the voter list may also appear in the documents covered by the CRA, that does not mean it is a record covered by the law. Simply, the CRA "requires the disclosure of *documents*, such as voter applications that a state might be improperly discarding." *Id.* at *10 (emphasis original). As the voter list is not a document within the scope of Title III, Plaintiff is not entitled to it under the law. The Complaint should therefore be dismissed.

20

### B.      Federal Law Precludes Plaintiff's Request.

Even if Plaintiff had met the requirements of the CRA, other federal law precludes its demand for the District's unredacted VRL.  Specifically, the Privacy Act and the E-Government Act prevent Plaintiff from collecting the information it seeks here.

### 1.      Plaintiff's Demand for the Unredacted VRL Violates the Privacy Act.

The Privacy Act, 5 U.S.C. § 552a, "safeguards the public from unwanted collection, maintenance, use and dissemination of personal information contained in agency records[.]" *Henke v. U.S. Dep't of Com.*, 83 F.3d 1453, 1456 (D.C. Cir. 1996) (quoting *Bartel v. FAA*, 725 F.2d 1403, 1407 (D.C. Cir. 1984)) (internal quotation marks omitted).  The Act "mandates that federal agencies 'protect the privacy of individuals identified in information systems maintained by [them].'" *In re OPM Data Sec. Breach Litig.*, 928 F.3d 42, 62 (D.C. Cir. 2019) (quoting Pub. L. No. 93-579, § 2(a)(5), 88 Stat. 1896, 1896 (1974)) (alterations original).  Specifically, federal agencies are prohibited from maintaining, collecting, using, or disseminating any "record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained[.]"  5 U.S.C. § 552a(e)(7), (a)(3).  Further, federal agencies are subject to strict requirements before creating any compilation of records that is searchable by individual.  *Id.* § 552a(e)(4), (f).  A "record" under the Privacy Act refers to "any item, collection, or grouping of information about an individual that is maintained by an agency," including "identifying number, symbol, or other identifying particular assigned to the individual[.]"  *Id.* § 552a(a)(4).

The District's unredacted VRL is squarely covered by the Privacy Act because voter registration—and the decision whether to participate in elections—is a form of political expression protected by the First Amendment.  *See Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 195 (1999) (noting the choice whether to register to vote "implicates political thought

21

and expression"). And "an agency that maintains *any* system of records is prohibited from maintaining a record of an individual's First Amendment activity even if that record is not subsequently incorporated into the agency's system of records." *Maydak v. United States*, 363 F.3d 512, 516 (D.C. Cir. 2004) (quoting *Albright v. United States*, 631 F.2d 915, 916–17 (D.C. Cir. 1980)) (citation modified) (emphasis original). No statute authorizes Plaintiff to collect the states' full, unredacted VRLs. And Plaintiff has not pleaded that it received express authorization from the hundreds of thousands of District voters whose information it seeks to collect.

Further, before "establish[ing] or revis[ing]" a "system of records," Plaintiff must publish a System of Records Notice (SORN) in the Federal Register. 5 U.S.C. § 552a(e)(4); *Brusseau v. Dep't of Homeland Sec.*, 1:20-cv-1364 (LMB/IDD), 2021 WL 3174248, at *5 (E.D. Va. July 27, 2021). But neither the Complaint nor Plaintiff's motion to compel identifies an SORN that would allow it to obtain the District's unredacted VRL. The Privacy Act thus bars Plaintiff from collecting the information it seeks here, and the Complaint should be dismissed.

> **2.      Plaintiff's Demand for the Unredacted VRL Violates the
> E-Government Act.**

Plaintiff's demand also fails to comply with the E-Government Act, Pub. L. No. 107–347, § 208, 116 Stat. 2899 (2002). The E-Government Act requires federal agencies to conduct a "privacy impact assessment" (PIA) prior to "initiating a new collection of information" that "includes any information in an identifiable form permitting the physical or online contacting of a specific individual" if the information encompasses "10 or more persons." *Id.* § 208(b)(1)(A). Crucially, the PIA—which includes publishing the assessment, when practicable—must be completed "*before* the agency initiates a new collection of information." *Elec. Priv. Info. Ctr. v.*

*Presidential Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 311 (D.D.C. 2017) (emphasis original).

On the face of the Complaint, Plaintiff is clearly seeking information within the scope of the E-Government Act. *See* Compl. ¶ 27 (clarifying Plaintiff's request for a copy of the voter list containing "all fields," including "the registrant's full name, date of birth, residential address," "driver's license number or the last four digits of the registrant's social security number"). The information contained within the District's unredacted VRL is the exact type of information the E-Government Act seeks to protect. *See* Pub. L. No. 107–347, § 208(b)(1)(A)(ii)(II), 116 Stat. 2899 (2002). Yet Plaintiff does not allege that it has completed a PIA applicable to the trove of data about individual voters that it now demands. Because Plaintiff has not complied with the E-Government Act, the Complaint should be dismissed.

### C. The District's Privacy Laws Prevent Production of the Unredacted VRL and Are Not Preempted.

Despite Plaintiff's assertion to the contrary, Pl.'s Mot. Compel at 11, Defendants have a strong interest in protecting the sensitive information at issue in this case. And nothing in the NVRA or HAVA preempts the District's privacy laws, such as its Freedom of Information Act (DC FOIA), which allow for withholding personal identifying information (PII). *See* Sep. 4, 2025 Letter at 3. Plaintiff's argument that such state laws are preempted is unavailing.

Generally, there are "three ways in which a federal statute . . . can pre-empt state law: by express pre-emption, by 'field' pre-emption, . . . and by implied or conflict pre-emption[.]" *Geier v .Am. Honda Motor Co., Inc.*, 166 F.3d 1236, 1237 (D.C. Cir. 1999) (citing *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 767 (11th Cir. 1998)). "Express preemption arises when the federal statute itself announces its displacement of state law through 'an express preemption provision.'" *Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 346 (D.C. Cir. 2018)

(quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)).  As no such provision exists in the NVRA or HAVA, there is no express preemption here.  "Field preemption will be found where a framework of regulation is so pervasive that it leaves no space for state supplementation[.]"  *Id.* at 347 (citation modified).  Conflict preemption, meanwhile, exists where "compliance with both state and federal law [is] impossible[.]"  *Id.* (quoting *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015)) (internal quotation marks omitted).

There is no field preemption of the District's privacy laws, as Congress has not regulated the field of protecting voter PII so comprehensively that it is clear only federal law could control that protection.  As discussed, *supra* II.A.2., it is in fact well-established that states can redact voter PII when producing it under the NVRA and HAVA.  *See Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (affirming holding that the NVRA "grants . . . access to completed voter registration applications *with the voters' SSNs redacted*" (emphasis original)); *Project Vote, Inc.*, 208 F. Supp. 3d at 1344 (NVRA "does not require the disclosure of sensitive information that implicates special privacy concerns"); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 739 (S.D. Miss. 2014) (finding "no indication in the NVRA's legislative history that Congress intended to open up for inspection information . . . that is otherwise protected as personal information under other Federal or State laws").  For the same reason, there is no conflict preemption, as it is not "impossible" to comply with the list maintenance provisions of the NVRA and HAVA, as well as the document retention and production requirements of the CRA, while also protecting voter PII contained in the District's VRL.

*Lynd* is instructive here.  There, the court found no issue ordering the production of the documents sought because they were "not discussing confidential, private papers and effects"; rather, they were only "public records which ought ordinarily to be open to legitimate reasonable

24

inspection[.]" *Lynd*, 306 F.2d at 231.  This is quite unlike here, where Plaintiff baselessly asserts that the "public records" that are "open to legitimate reasonable inspection" are somehow insufficient for its purposes.  *See* Compl. ¶¶ 24–26 (acknowledging that Defendants provided a redacted version of the District's voter list).

In its motion to compel, Plaintiff argues that *Crooks v. S.C. Election Commission* holds that "any state-law privacy right . . . is preempted by the CRA's broad grant of access to the Attorney General."  Pl.'s Mot. Compel at 12.  But *Crooks* is a state court case involving an individual voter's challenge to South Carolina's potential production of its unredacted VRL to Plaintiff.  *See Crooks v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025) [2-7] at 1.  *Crooks* is not binding on this Court.  Nor is it particularly persuasive, especially in light of more recent decisions by federal district court judges holding that state privacy laws were *not* preempted by the federal election laws at issue.  *Oregon*, 2026 WL 318402, at *12 (finding CRA did not preempt state law prohibiting disclosure of sensitive voter data); *see also Weber*, 2026 WL 118807, at *13, 17 (finding NVRA and HAVA do not preempt state privacy laws).

In response to Plaintiff's demand for the District's VRL, BOE produced the publicly available version with certain fields containing sensitive information redacted.  Aug. 6, 2025 Letter at 3; Sep. 4, 2025 Letter at 2–3.  Plaintiff is not entitled to the unredacted VRL under the CRA, NVRA, or HAVA, *supra* II.A.2, and would not otherwise be entitled to an unredacted version of the VRL under DC FOIA, Sep. 4, 2025 Letter at 2–3.  Because the District's privacy laws are not preempted, the Complaint should be dismissed.[4]

---

[4]    Plaintiff's assertion that because the District participates in the Electronic Registration Information Center (ERIC) to share information with other jurisdictions for list maintenance

**D.**     **Plaintiff's Stated Purpose May Be Pretextual, and Defendants Are Entitled to an Adversarial Hearing to Assess Plaintiff's Motivation.**

Finally, Plaintiff's actions and public statements elsewhere raise concerns that the purpose it has provided for its demand is not its true (or only) purpose. This case is not a one-off investigation into the District's practices: Plaintiff has demanded the unredacted VRLs of more than 40 states in addition to the District and brought suit against more than half of those. *Weber*, 2026 WL 118807, at *4; *see also* Brennan Center Tracker ("At least 48 states and Washington, DC, have received requests for their complete voter registration lists . . . [t]he DOJ has sued Washington, DC, and 29 states for refusing to provide [their unredacted voter lists]."). Such aggressive, nationwide enforcement of the NVRA and HAVA (through the mechanism of the Civil Rights Act) has apparently never been necessary until now, despite Plaintiff citing "no disenfranchisement concerns for [its] extraordinary request[.]" *Weber*, 2026 WL 118807, at *1. Courts have found that this "rais[es] suspicion about the purposes for which [DOJ] seeks statewide unredacted voter registration lists." *Oregon*, 2026 WL 318402, at *11.

For example, courts have noted that the United States Attorney General herself apparently sought to tie the possible removal of immigration officers from Minnesota to Plaintiff's demand for that state's voter list. *Id.* (citing Letter from Pamela Bondi, Att'y Gen., to Tim Walz, Governor of Minn. (Jan. 24, 2026)). And other public statements by Plaintiff and its agents suggest that Plaintiff's intent in seeking the District's VRL is not to assess compliance with federal election law, but to create "a central, federal database of voter information" without

_____

purposes it cannot assert a privacy interest in withholding the unredacted VRL is unpersuasive. Defendants do not provide "the identical information sought by the Attorney General here" with ERIC. Pl.'s Mot. Compel at 11. In fact, the exact data points at issue here (driver's license numbers and partial social security numbers) are only provided to ERIC in encrypted form, to ensure the privacy of such sensitive information. *See Technology & Security Overview*, Elec. Reg. Info. Ctr., https://ericstates.org/security/ (last visited Mar. 8, 2026).

26

constitutional or statutory authority.  *See* Proposed Intervenor-Defs. Common Cause et al. Mot. Dismiss [12-2] at 8 (quoting Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html).  The Court is not required to ignore these public statements which, along with Plaintiff's shifting justifications in its letters to Defendants, may give rise to concerns that its stated interest in seeking the unredacted VRL is pretextual.  *See Dep't of Com.*, 588 U.S. at 785 (noting courts "are not required to exhibit a naiveté from which ordinary citizens are free" (quoting *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977) (Friendly, J.) (internal quotation marks omitted)).  "When Plaintiff . . . conveys assurances that any private and sensitive data will remain private and used only for a declared and limited purpose, it must be scrutinized and squared with its open and public statements to the contrary."  *Oregon*, 2026 WL 318402, at *11. Because Plaintiff's stated purpose cannot be squared with its conflicting public statements, the Complaint should be dismissed, or, at minimum, the Court should hold an adversarial hearing to discover the true purpose of Plaintiff's demand.  *Cf. Clarke*, 573 U.S. at 254.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion to compel and dismiss Plaintiff's Complaint with prejudice.

Date: March 13, 2026.                                Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

27

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Amanda C. Pescovitz*
AMANDA C. PESCOVITZ [1735780]
Assistant Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 805-7495
Email: amanda.pescovitz1@dc.gov

*Counsel for Defendants*

28