# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

MONICA H. EVANS, *et al.*,

*Defendants*.

Case No. 1:25-cv-4403 (RDM)

*AMICI CURIAE* **BRIEF OF THE BRENNAN CENTER FOR JUSTICE AND
CAMPAIGN LEGAL CENTER**

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

INTEREST OF *AMICI CURIAE* ...............................................................................................2

ARGUMENT..................................................................................................................................3

I.      Plaintiff's demand for the District of Columbia's voter data is part of an unprecedented
        effort to amass the sensitive data of every voter in America ..............................................3

        A.  Executive Orders reveal the federal government's day-one campaign to amass sensitive
            information.................................................................................................................4

        B.  The administration has engaged in systematic, reckless efforts to collect and
            centralize Americans' data .......................................................................................5

        C.  The administration's actions cast doubt on its justifications for demanding sensitive
            voter information in this case................................................................................10

II.     Plaintiff's demand undermines authority over elections that the Constitution reserves for
        Congress and the States ..................................................................................................12

CONCLUSION..............................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**                                                                                                              **Pages**

*California v. Trump*, 786 F. Supp. 3d 359 (D. Mass. 2025)......................................................1, 12

*California v. U.S. Department of Health & Human Services*, No. 25-cv-05536-VC, 2025 WL
    3751931 (N.D. Cal. Dec. 29, 2025) ...........................................................................................7

*Center for Taxpayer Rights v. Internal Revenue Service*, No. 1:25-cv-00457-CKK, 2025 WL
    3251044 (D.D.C. Nov. 21, 2025)...............................................................................................6

*Center for Taxpayer Rights v. Internal Revenue Service*, No. 1:25-cv-00457-CKK, 2026 WL
    551105 (D.D.C. Feb. 26, 2026)..................................................................................................6

*Community Economic Development Center of Southeastern Massachusetts v. Bessent*, No. 1:25-
    cv-12822-IT, 2026 WL 309281 (D. Mass. Feb. 5, 2026)..........................................................6

*Department of Commerce v. New York*, 588 U.S. 752 (2019)..........................................................4

*League of United Latin American Citizens v. Executive Office of the President*,
    808 F. Supp. 3d 29 (D.D.C. 2025) (*LULAC I*)......................................................................1, 12

*League of United Latin American Citizens v. Executive Office of the President*, Nos. 25-0946
    (CKK), 25-0952 (CKK), 25-0955 (CKK), 2026 WL 252420 (D.D.C. Jan. 30, 2026)
    (*LULAC II*)...........................................................................................................................1, 12

*League of Women Voters v. U.S. Department of Homeland Security*, No. 25-cv-3501 (SLS),
    2025 WL 3198970 (D.D.C. Nov. 17, 2025)..............................................................................7

*United States v. Benson*, No. 1:25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026) ..........1

*United States v. Markwood*, 48 F.3d 969 (6th Cir. 1995)................................................................4

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) .............................................................3, 4

*United States v. Oregon*, No. 6:25-cv-01666-MTK,
    2026 WL 318402 (D. Or. Feb. 5, 2026) ...........................................................1, 2, 3, 4, 11

*United States v. Weber*, No. 2:25-cv-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15,
    2026) ...........................................................................................................................2, 3, 4, 13

*Washington v. Trump*, No. 2:25-cv-00602-JHC, 2026 WL 73866 (W.D. Wash. Jan. 9, 2026)........1

**Constitutional Provisions**

40 U.S.C. § 11331(b)(2)(A)(i) ...........................................................................................................8

44 U.S.C. § 3554(a)(1)(A)(i)–(ii) ......................................................................................................8

44 U.S.C. § 3554(a)(1)(B)(i)...............................................................................................8

U.S. Const. art. I, § 2, cl. 1..............................................................................................12

U.S. Const. art. I, § 4.........................................................................................................1

U.S. Const. art. I, § 4, cl. 1..............................................................................................12

**Other Authorities**

Abby Vesoulis & Ari Berman, *New Docs Show DHS Gathering Driver's License Data in Voter Fraud Crusade*, Mother Jones (Nov. 14, 2025), https://perma.cc/KA7T-N2EK .......................8

Alan Feuer, Nick Corasaniti & Glenn Thrush, *F.B.I. Subpoenas Records in Arizona in Expansion of 2020 Voting Inquiry*, New York Times (Mar. 9, 2026), https://www.nytimes.com/2026/03/09/nyregion/fbi-subpoena-arizona-maricopa-county-election.html..............................................................................................................................11

*An Assessment of Minority Voting Rights Access in the United States*, U.S. Commission on Civil Rights (2018), https://perma.cc/J923-SHFJ ................................................................8

*Analyzing DOJ's MOU for Voter Registration List Data for FISMA Compliance*, Electronic Privacy Information Center (Feb. 2026), https://epic.org/documents/analyzing-dojs-mou-for-voter-registration-list-data-for-fisma-compliance/......................................................8

Complaint, *United States v. Alexander*, No. 1:25-cv-07084-TWT (N.D. Ga. Dec. 11, 2025), ECF No. 1..............................................................................................................................11

Complaint, *United States v. Evans*, No. 1:25-cv-4403 (D.D.C. Dec. 18, 2025), ECF No. 1 ........12

Complaint, *United States v. Pennsylvania*, No. 2:25-cv-01481 (W.D. Pa. Sep. 25, 2025), ECF No. 1..............................................................................................................................12

Complaint, *United States v. Simon*, No. 0:25-cv-03761-KMM-EMB (D. Minn. Sep. 25, 2025), ECF No. 1 ...................................................................................................................11, 12

Complaint, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Sep. 25, 2025), ECF No. 1 ...12

Debate in Massachusetts Ratifying Convention, in 2 The Founders' Constitution (P. Kurland & R. Lerner eds., 1987)................................................................................................12

*DOGE and State Voter Rolls*, Protect Democracy (July 15, 2025), https://perma.cc/TFD6-J8TC .......................................................................................7

Donald J. Trump (@realDonaldTrump), TruthSocial.com (Aug. 18, 2025, at 7:17AM), https://truthsocial.com/@realDonaldTrump/posts/115049485680941254 ..............................13

Eileen O'Connor, *"Confidential" Agreements Show Trump Administration's Plans for States' Voter Data*, Brennan Center for Justice (Feb. 5, 2026), https://perma.cc/9DMU-YDT4........13

Eli Hager, *DHS Seeks Access to Massive Employment, Salary and Family Database Legally Restricted to Use in Child Support Cases*, ProPublica (Mar. 11, 2026), https://perma.cc/KN7R-ERA8 ...................................................................................................10

Erica L. Green, Michael Gold & Robert Jimison, *Trump Repeats Call to 'Nationalize' Elections, as White House Walks It Back*, New York Times (Feb. 3, 2026), https://www.nytimes.com/2026/02/03/us/politics/trump-save-act-elections.html...................13

Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025).............................................................4

Exec. Order No. 14,243, 90 Fed. Reg. 13681 (Mar. 20, 2025)..........................................................5

Exec. Order No. 14,248, 90 Fed. Reg. 14005 (Mar. 25, 2025)..........................................................5

Gowri Ramachandran, *Trump Administration Escalates Undermining Elections with Fulton County FBI Raid*, Brennan Center for Justice (Feb. 24, 2026), https://perma.cc/PG5E-R86D ..................................................................................................11

Hamed Aleaziz, *Immigration Agents Are Using Air Passenger Data for Deportation Effort*, New York Times (Dec. 12, 2025), https://www.nytimes.com/2025/12/12/us/politics/immigration-tsa-passenger-data.html................................................................................................................6

Jacob Bogage, Jeff Stein & Perry Stein, *IRS improperly disclosed confidential immigrant tax data to DHS*, Washington Post (Feb. 11, 2026), https://www.washingtonpost.com/business/2026/02/11/immigrants-irs-dhs-tax-data/ .............9

Jared Perlo, Kevin Collier & David Ingram, *OpenAI alters deal with Pentagon as critics sound alarm over surveillance*, NBC News (Mar. 3, 2026), https://perma.cc/GA9G-RNHB...........10

Jasleen Singh & Spencer Reynolds, *Homeland Security's "SAVE" Program Exacerbates Risks to Voters*, Brennan Center for Justice (July 21, 2025), https://perma.cc/HN98-8N2Q..................7

Jen Fifield & Zach Despart, *"Not Ready for Prime Time." A Federal Tool to Check Voter Citizenship Keeps Making Mistakes.*, ProPublica and Texas Tribune (Feb. 13, 2026), https://perma.cc/T2ER-EDCH. ..............................................................................................7

Jonathan Shorman, *Homeland Security wants state driver's license data for sweeping citizenship program*, Stateline (Nov. 25, 2025), https://stateline.org/2025/11/25/homeland-security-wants-state-drivers-license-data-for-sweeping-citizenship-program/.......................................9

Joseph Cox, *Here's the document giving ICE 80 million Medicaid patients' data*, Freedom of the Press Foundation (Jan. 5, 2026), https://perma.cc/J9JT-MSHE. ...............................................6

Josh Gerstein & Kyle Cheney, *Trump, Bondi statements fuel legal case against Minnesota surge*, Politico (Jan. 26, 2026), https://www.politico.com/news/2026/01/26/minnesota-operation-metro-surge-case-00746755................................................................................................11

Jude Joffe-Block, *The USDA wants states to hand over food stamp data by the end of July*, NPR (July 19, 2025), https://perma.cc/J3G3-QBSK ....................................................................9

Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Center for Justice (Aug. 28, 2025) (last updated Mar. 18, 2026), https://perma.cc/4W2H-L4ZT. ...................................................................1

Letter from Nancy Morales Gonzalez, Associate General Counsel, SSA Office of General Counsel to Jon Sherman, Litigation Director & Senior Counsel, Fair Elections Center (July 13, 2023), https://perma.cc/Y5U9-UTU8. ...............................................................7

Letter from U.S. Attorney General Pamela Bondi to Minnesota Governor Tim Walz (Jan 24, 2026), https://www.nytimes.com/interactive/2026/01/24/us/pam-bondi-walz-doc.html ........10

Lisa J. Danetz, *The Justice Department's Security Measures for Collecting Voter Rolls Are Inadequate*, Brennan Center for Justice (Feb. 25, 2026), https://perma.cc/4NN8-BEK7 ........8

Meryl Kornfield, Elizabeth Dwoskin & Lisa Rein, *Whistleblower claims ex-DOGE member says he took Social Security data to new job*, Washington Post (Mar. 10, 2026), https://www.washingtonpost.com/politics/2026/03/10/social-security-data-breach-doge-2/....9

Nick Corasaniti, *Why Is the Trump Administration Demanding Minnesota's Voter Rolls?*, New York Times (Jan. 26, 2026), https://www.nytimes.com/2026/01/26/us/politics/minnesota-trump-voter-rolls.html..................................................................................................10

Nicole Alvarez, *The Trump Administration Is Using Americans' Sensitive Data to Build a Digital Watchtower*, Center for American Progress (Aug. 25, 2025), https://www.americanprogress.org/article/the-trump-administration-is-using-americans-sensitive-data-to-build-a-digital-watchtower. ............................................................6

Notice of Corrections to the Record, *American Federation of State, County, and Municipal Employees v. SSA*, No. 1:25-cv-00596-ELH (D. Md. Jan. 16, 2026), ECF No. 197 .................9

Press Release, Department of Homeland Security, DHS, USCIS, DOGE Overhaul Systematic Alien Verification for Entitlements Database (Apr. 22, 2025), https://perma.cc/Y8A5-YX3M .....................................................................................7

Pub. L. No. 100-503, 102 Stat. 2507 (1988).................................................................................7

Rachel Siegel, Hannah Natanson & Laura Meckler, *DOGE is collecting federal data to remove immigrants from housing, jobs*, Washington Post (Apr. 15, 2025), https://perma.cc/JPP7-JJH4 .......................................................................................10

Reid J. Epstein & Nick Corasaniti, *Trump, in an Escalation, Calls for Republicans to 'Nationalize' Elections*, New York Times (Feb. 2, 2026), https://www.nytimes.com/2026/02/02/us/politics/trump-nationalize-elections.html. ...............1

v

Stephen Fowler & Jude Joffe-Block, *The Trump administration admits even more ways DOGE accessed sensitive personal data*, NPR (Jan. 30, 2026), https://perma.cc/3CNL-YHUK .........9

U.S. Department of Justice, Confidential Memorandum of Understanding, https://www.brennancenter.org/media/14806/download/2025-12-01-doj-mou-to-colorado.pdf .........................................................................................................................8

U.S. Department of Justice, Confidential Memorandum of Understanding between U.S. Department of Justice and Alaska Division of Elections (Dec. 22, 2025), https://perma.cc/5N3S-42XK...................................................................................................13

William Turton, Christopher Bing & Avi Asher-Schapiro, *The IRS Is Building a Vast System to Share Millions of Taxpayers' Data With ICE*, ProPublica (July 15, 2025), https://perma.cc/F2N2-GWNV ........................................................................................6

**INTRODUCTION**

The Constitution delegates election administration primarily to the states, subject to regulation by Congress. *See* U.S. Const. art. I, § 4. Nonetheless, President Trump began his current term by issuing an executive order on elections that claimed broad authority over elections that the executive branch does not have (and which courts have already enjoined). *See League of United Latin Am. Citizens v. Exec. Off. of the President*, 808 F. Supp. 3d 29, 41–42 (D.D.C. 2025) (*LULAC I*) (permanently enjoining part of the executive order on elections); *id.*, Nos. 25-0946 (CKK), 25-0952 (CKK), 25-0955 (CKK), 2026 WL 252420, at *1 (D.D.C. Jan. 30, 2026) (*LULAC II*) (same); *Washington v. Trump*, No. 2:25-cv-00602-JHC, 2026 WL 73866, at *1 (W.D. Wash. Jan. 9, 2026) (same); *California v. Trump*, 786 F. Supp. 3d 359 (D. Mass. 2025) (granting preliminary injunction). President Trump recently announced his intention to "take over" and "nationalize" voting in the United States.[1] And the U.S. Department of Justice (DOJ) is leading the way on the administration's attempt to upend the constitutional framework that governs elections. Since last May, DOJ has demanded full voter registration lists—including sensitive data like driver's license and partial social security numbers—from at least 48 states. Most have refused. Plaintiff has sued the District of Columbia and 29 states over their refusals.[2] The three courts to address Plaintiff's claims have dismissed the cases. *See United States v. Benson*, No. 1:25-cv-1148, 2026 WL 362789, at *1 (W.D. Mich. Feb. 10, 2026); *United States v. Oregon*, No. 6:25-cv-01666-MTK, 2026 WL

---

[1] Reid J. Epstein & Nick Corasaniti, *Trump, in an Escalation, Calls for Republicans to 'Nationalize' Elections*, N.Y. Times (Feb. 2, 2026), https://www.nytimes.com/2026/02/02/us/politics/trump-nationalize-elections.html.

[2] Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Aug. 28, 2025) (last updated Mar. 18, 2026), https://perma.cc/4W2H-L4ZT.

318402, at *1 (D. Or. Feb. 5, 2026); *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS, 2026 WL 118807, at *1 (C.D. Cal. Jan. 15, 2026).

*Amici curiae* Brennan Center for Justice and Campaign Legal Center, two nonpartisan nonprofit organizations dedicated to solving challenges facing American democracy, submit this brief to provide national context for the administration's demand for the District of Columbia's complete voter rolls. Plaintiff does not seek to assess any suspected violation of federal law by the District of Columbia—indeed, it has not identified any such potential violation—but to amass an unprecedented amount of sensitive data about millions of voters across the country. Courts addressing this effort have concluded that Plaintiff's demands amount to an "overreach and misuse" of its role in election administration beyond constitutional limits. *Oregon*, 2026 WL 318402, at *13; *see also Weber*, 2026 WL 118807, at *20 ("[T]he Executive may not unilaterally usurp the authority over elections . . . "). If granted, Plaintiff's demand would make voters, whose information could be used "in unprecedented ways, including immigration enforcement efforts," *Oregon*, 2026 WL 318402, at *13, less likely to register and turn out to vote, *Weber*, 2026 WL 118807, at *20. "This risk threatens the right to vote which is the cornerstone of American democracy." *Id.*

*Amici curiae* urge this Court to grant the motions to dismiss.

**INTEREST OF *AMICI CURIAE***

The Brennan Center for Justice at New York University School of Law[3] is a nonprofit, nonpartisan think tank and public-interest law institute that seeks to improve systems of democracy and justice. Since its founding in 1995, the Brennan Center's work has focused extensively on protecting the right to vote using empirical, quantitative, historical, and legal research. It

---

[3] This brief does not purport to convey the position of New York University School of Law.

participates in voting rights and election law cases around the country, both as counsel and *amicus curiae*.

Campaign Legal Center (CLC) is a leading nonpartisan, nonprofit organization that has been working for more than 20 years to advance democracy through law. CLC engages in litigation, policy development, and advocacy to protect voting rights and ensure broad and equal access to the ballot.

## ARGUMENT

This Court should reject Plaintiff's demand for the District of Columbia's complete voter rolls, which is based on thin pretext. Under Title III of the Civil Rights Act of 1960, courts may examine—and have examined—Plaintiff's stated reasons for demanding sensitive voter data. Plaintiff's public statements make clear that it does not seek to enforce federal law, but rather, to amass an unprecedented amount of confidential voter data and undercut the constitutional separation of powers. In circumstances such as these, the courts play an important role in protecting "against mistaken or arbitrary orders" by government officials. *United States v. Morton Salt Co.*, 338 U.S. 632, 640 (1950).

## I.    Plaintiff's demand for the District of Columbia's voter data is part of an unprecedented effort to amass the sensitive data of every voter in America.

Contrary to the insufficient allegations presented in the Complaint, public actions and statements from federal officials reveal Plaintiff's true objective: "a nationwide quest to gather the sensitive, private information of millions of Americans for use in a centralized federal database." *Weber*, 2026 WL 118807, at \*10; *see also Oregon*, 2026 WL 318402, at \*11 (quoting *Weber*). This Court need not ignore this publicly stated objective and simply accept Plaintiff's claimed purpose in this case.

3

In reviewing federal agency action, the Supreme Court has emphasized that judicial review is "more than an empty ritual" and that "[a]ccepting contrived reasons would defeat the purpose of the enterprise." *Dep't of Com. v. New York*, 588 U.S. 752, 784–85 (2019) (refusing to accept the claim by the Department of Commerce that it attempted to add a citizenship question to the Census at the request of DOJ when the record showed otherwise). Courts need not "ignore the disconnect between the decision made and the explanation given," nor are they "required to exhibit a naiveté from which ordinary citizens are free." *Id.* (citation and quotations omitted). Federal agency demands for information warrant the same scrutiny. *See Morton Salt Co.*, 338 U.S. at 640; *United States v. Markwood*, 48 F.3d 969, 978 (6th Cir. 1995). Likewise, in Plaintiff's cases seeking unredacted voter rolls in California and Oregon, neither district court accepted pretextual justifications for uses of "the sensitive information of millions of Americans." *Weber*, 2026 WL 118807, at *10; *see also Oregon*, 2026 WL 318402, at *11 ("When Plaintiff, in this case, conveys assurances that any private and sensitive data will remain private and used only for a declared and limited purpose, it must be thoroughly scrutinized and squared with its open and public statements to the contrary.").

Nor should this Court accept Plaintiff's pretextual justifications. As the *Oregon* court found, the "presumption of regularity . . . no longer holds." *Oregon*, 2026 WL 318402, at *11. The administration's executive orders and efforts to amass centralized information, along with recent representations by the federal government concerning voter roll data demand a closer look.

A.    **Executive Orders reveal the federal government's day-one campaign to amass sensitive information.**

In his first three months in office, President Trump signed three executive orders to enable an extraordinary consolidation of data by the federal government. In January 2025, the President issued Executive Order No. 14,158 (the DOGE EO), which claimed to "establish[]" a "Department

of Government Efficiency" ("DOGE" or "USDS") and provided that "Agency Heads shall take all necessary steps . . . to the maximum extent consistent with law, to ensure USDS has full and prompt access to all unclassified agency records, software systems, and IT systems." 90 Fed. Reg. 8441, 8442 §§ 1, 4(b) (Jan. 20, 2025).

In March 2025, President Trump issued Executive Order No. 14,243 (the "Information EO"). It required federal agencies to "rescind or modify all agency guidance that serves as a barrier to the inter- or intra-agency sharing of unclassified information" and "ensure the Federal Government has unfettered access to comprehensive data from all State programs that receive Federal funding, including, as appropriate, data generated by those programs but maintained in third-party databases." 90 Fed. Reg. 13681, §§ 3(b), (c) (Mar. 20, 2025).

Days later, President Trump issued Executive Order No. 14,248 (the "Elections EO"). It directed the Department of Homeland Security ("DHS") to provide state and local officials access to government systems for verifying citizenship and to coordinate with DOGE to review various data sources "for consistency with Federal requirements" and to "identify unqualified voters registered in the States." 90 Fed. Reg. 14005, 14006–07 §§ 2(b), 2(b)(iii) (Mar. 25, 2025). The DOGE EO, Information EO, and Elections EO marshaled federal resources toward a unified, unprecedented goal: giving federal agencies and DOGE broad access to federal and state data about ordinary Americans.

> **B.      The administration has engaged in systematic, reckless efforts to collect and centralize Americans' data.**

Just as quickly as it promulgated the executive orders, the administration established it would not use this information lawfully or appropriately. Instead, it has reappropriated and centralized that data, while failing to institute appropriate safeguards. The same could happen to Washingtonians' sensitive voter data.

The federal government has engaged in unauthorized "secondary use[s]" of data, "where information that an individual has given to one agency for a specific purpose is later reused by that agency or by another agency or entity for an entirely different purpose without the individual's consent."[4] This has included directing the Internal Revenue Service (IRS) to provide confidential tax information to Immigration and Customs Enforcement (ICE), data-sharing which this Court found unlawful.[5] *See Ctr. for Taxpayer Rts. v. Internal Revenue Serv.*, No. 1:25-cv-00457-CKK, 2025 WL 3251044, at *2 (D.D.C. Nov. 21, 2025); *id.*, No. 1:25-cv-00457-CKK, 2026 WL 551105, at *3 (D.D.C. Feb. 26, 2026) ("[T]he IRS violated the [Internal Revenue Code] approximately 42,695 times by disclosing last known taxpayer addresses to ICE through TIN Matching without confirming that ICE's request set forth the address of the taxpayer with respect to whom the requested return information related.") (internal quotations omitted); *Cmty. Econ. Dev. Ctr. of Se. Mass. v. Bessent*, No. 1:25-cv-12822-IT, 2026 WL 309281, at *1 (D. Mass. Feb. 5, 2026) (enjoining ICE's use of taxpayer addresses provided by IRS).  The Transportation Security Administration is likewise reported to be providing names and birthdates of travelers to ICE for use in immigration enforcement.[6] And the Centers for Medicare & Medicaid Services agreed to provide extraordinary levels of detail about Medicaid recipients, including "social security number (SSN), date of birth, sex, phone number, locality, ethnicity and race,"[7] only to have that agreement narrowed following

---

[4] Nicole Alvarez, *The Trump Administration Is Using Americans' Sensitive Data to Build a Digital Watchtower*, Ctr. for Am. Progress (Aug. 25, 2025), https://www.americanprogress.org/article/the-trump-administration-is-using-americans-sensitive-data-to-build-a-digital-watchtower.

[5] William Turton, Christopher Bing & Avi Asher-Schapiro, *The IRS Is Building a Vast System to Share Millions of Taxpayers' Data With ICE*, ProPublica (July 15, 2025), https://perma.cc/F2N2-GWNV.

[6] Hamed Aleaziz, *Immigration Agents Are Using Air Passenger Data for Deportation Effort*, N.Y. Times (Dec. 12, 2025), https://www.nytimes.com/2025/12/12/us/politics/immigration-tsa-passenger-data.html.

[7] Joseph Cox, *Here's the document giving ICE 80 million Medicaid patients' data*, Freedom of the Press Found. (Jan. 5, 2026), https://perma.cc/J9JT-MSHE.

litigation. *See California v. U.S. Dep't of Health & Hum. Servs.*, No. 25-cv-05536-VC, 2025 WL 3751931, at *3 (N.D. Cal. Dec. 29, 2025).

At the same time the administration has engaged in an unprecedented effort to gather Americans' data, it has centralized data across the government. DHS and DOGE transformed the Systematic Alien Verification for Entitlements (SAVE) program from a relatively limited system into one which searches multiple databases, including SSA data—a notoriously unreliable source of citizenship information.[8] The administration apparently intends this expanded version of SAVE to be used to scrutinize state voter rolls. *League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 25-cv-3501 (SLS), 2025 WL 3198970, at *2–4 (D.D.C. Nov. 17, 2025); *but see* Pub. L. No. 100-503, § 9, 102 Stat. 2507, 2514 (1988) (prohibiting "national data bank[s] that combine[], merge[], or link[] information on individuals"). But SAVE has made "persistent mistakes" where it has been used to review state voter rolls, erroneously identifying eligible U.S. citizen voters as noncitizens.[9] SSA itself states that its data does not provide "definitive information about an individual's citizenship status."[10] Nor has DHS shown that it conducts proper data matching.[11] It is no wonder, then, that such a system creates a demonstrated risk of false matches. That is why both government agencies and nonprofits have warned against relying on SAVE, and its underlying

---

[8] *See* Press Release, Dep't of Homeland Sec., DHS, USCIS, DOGE Overhaul Systematic Alien Verification for Entitlements Database (Apr. 22, 2025), https://perma.cc/Y8A5-YX3M; Jasleen Singh & Spencer Reynolds, *Homeland Security's "SAVE" Program Exacerbates Risks to Voters*, Brennan Ctr. for Just. (July 21, 2025), https://perma.cc/HN98-8N2Q.

[9] Jen Fifield & Zach Despart, *"Not Ready for Prime Time." A Federal Tool to Check Voter Citizenship Keeps Making Mistakes.*, ProPublica and Texas Tribune (Feb. 13, 2026), https://perma.cc/T2ER-EDCH. In one Missouri county, more than half of the voters identified by SAVE as noncitizens were actually U.S. citizens. *Id.* DHS has also had to correct information provided to five states after SAVE misidentified U.S. citizen voters as noncitizens. *Id.*

[10] Letter from Nancy Morales Gonzalez, Assoc. Gen. Couns., SSA Off. of Gen. Couns. to Jon Sherman, Litig. Dir. & Senior Couns., Fair Elections Ctr. 2 (July 13, 2023), https://perma.cc/Y5U9-UTU8.

[11] *DOGE and State Voter Rolls*, Protect Democracy (July 15, 2025), https://perma.cc/TFD6-J8TC.

USCIS data, for voter verification[12]: The demonstrated risks of false negatives and wrongful voter purges jeopardize voters' rights and can be used by the administration to support debunked claims of noncitizen voting.

As the administration improperly amasses sensitive data, it has failed to properly protect that data. While the United States claims that submitted voter rolls will be "subject to federal privacy protections," Aug. 14, 2025 Letter from Harmeet K. Dhillon to Monica Evans, ECF No. 2-5 at 3, the agreement DOJ has asked states to sign governing the transfer of their voter registration data lacks key security provisions and may violate federal law.[13] Under the Federal Information Security Modernization Act of 2014 (FISMA), federal agencies and their contractors must develop and implement information security programs to protect their computer systems and the information stored in them. *See* 44 U.S.C. §§ 3554(a)(1)(A)(i)–(ii), (B)(i); 40 U.S.C. § 11331(b)(2)(A)(i). But DOJ's proposed agreement  has (1) inadequate data encryption, meaning unauthorized users can easily access voters' private data; (2) insufficient access and data minimization controls; and (3) no provisions for vetting contractors, despite expressly providing that the voter files can be shared with contractors.[14] And DOJ plans to "archive"[15] and store data after its analysis rather than destroy it, creating a permanent federal registry of voters' sensitive information.

---

[12] *See, e.g.*, *An Assessment of Minority Voting Rights Access in the United States*, U.S. Comm'n on C.R., 148–50 (2018), https://perma.cc/J923-SHFJ; Abby Vesoulis & Ari Berman, *New Docs Show DHS Gathering Driver's License Data in Voter Fraud Crusade*, Mother Jones (Nov. 14, 2025), https://perma.cc/KA7T-N2EK.

[13] Lisa J. Danetz, *The Justice Department's Security Measures for Collecting Voter Rolls Are Inadequate*, Brennan Ctr. for Just. (Feb. 25, 2026), https://perma.cc/4NN8-BEK7.

[14] *See Analyzing DOJ's MOU for Voter Registration List Data for FISMA Compliance*, Elec. Priv. Info. Ctr. (Feb. 2026), https://epic.org/documents/analyzing-dojs-mou-for-voter-registration-list-data-for-fisma-compliance/.

[15] *See, e.g.*, U.S. Dep't of Just., Confidential Memorandum of Understanding at 7, https://www.brennancenter.org/media/14806/download/2025-12-01-doj-mou-to-colorado.pdf.

Recent examples of Plaintiff's mishandling of sensitive information about Americans cast doubt on any assurances it may make about the security of these voter files. In ongoing litigation over SSA data—which includes private information about the health, income, and assets of millions of Americans—the United States disclosed that DOGE team members "were potentially outside of SSA policy and/or noncompliant with the [court's] temporary restraining order." Notice of Corrections to the Record, *Am. Fed'n of State, Cnty., and Mun. Emps. v. SSA*, No. 1:25-cv-00596-ELH (D. Md. Jan. 16, 2026), ECF No. 197 at 1. This included potentially transferring personally identifiable information to DOGE employees and executing a "Voter Data Agreement" with a non-governmental group looking to "find evidence of voter fraud and to overturn election results in certain States." *Id.* at 2–3, 5. Whistleblower reports have similarly exposed how DOGE employees mishandled SSA data, including a report that a DOGE employee attempted to transfer SSA data onto a thumb drive and intended to take it to a subsequent employer.[16] The IRS illegally and inadvertently shared taxpayer information with DHS—beyond even what DHS requested.[17] Despite its demonstrated inability to handle this information properly, the administration has sought to gather driver's license,[18] Supplemental Nutrition Assistance Program (SNAP),[19]

---

[16] Stephen Fowler & Jude Joffe-Block, *The Trump administration admits even more ways DOGE accessed sensitive personal data*, NPR (Jan. 30, 2026), https://perma.cc/3CNL-YHUK; Meryl Kornfield, Elizabeth Dwoskin & Lisa Rein, *Whistleblower claims ex-DOGE member says he took Social Security data to new job*, Wash. Post (Mar. 10, 2026), https://www.washingtonpost.com/politics/2026/03/10/social-security-data-breach-doge-2/.

[17] Jacob Bogage, Jeff Stein & Perry Stein, *IRS improperly disclosed confidential immigrant tax data to DHS*, Wash. Post (Feb. 11, 2026), https://www.washingtonpost.com/business/2026/02/11/immigrants-irs-dhs-tax-data/.

[18] Jonathan Shorman, *Homeland Security wants state driver's license data for sweeping citizenship program*, Stateline (Nov. 25, 2025), https://stateline.org/2025/11/25/homeland-security-wants-state-drivers-license-data-for-sweeping-citizenship-program/.

[19] Jude Joffe-Block, *The USDA wants states to hand over food stamp data by the end of July*, NPR (July 19, 2025), https://perma.cc/J3G3-QBSK.

Department of Housing and Urban Development,[20] and child support[21] data, including social security numbers.

      **C.**      **The administration's actions cast doubt on its justifications for demanding sensitive voter information in this case.**

This case is another vehicle by which the federal government seeks to accumulate and centralize massive troves of Americans' private data. Plaintiff is also reportedly trying "to build the largest set of national voter roll data it has ever collected, raising concerns that the data could be used to cast doubt on future election results."[22] And the Defense Department's recent retaliation against Anthropic for maintaining safeguards against mass surveillance[23] suggests the administration intends to leverage aggregated data—including, potentially, the voter data at issue here—for domestic surveillance purposes, too. This lawsuit, and the dozens of similar lawsuits playing out across the country, are not a good faith attempt to enforce federal election law. They are, rather, a profound threat to the right to vote and long-standing separation of powers principles.

The Attorney General made this pretext plain in her letter to Governor Walz, sent mere hours after federal agents killed Alex Pretti in Minnesota on January 23, 2026.[24] While eliding an explicit quid pro quo, her letter linked DOJ's demand to "access voter rolls" not with enforcement of federal statutes but, instead, with the massive presence of federal immigration agents in

---

[20] Rachel Siegel, Hannah Natanson & Laura Meckler, *DOGE is collecting federal data to remove immigrants from housing, jobs*, Wash. Post (Apr. 15, 2025), https://perma.cc/JPP7-JJH4.

[21] Eli Hager, *DHS Seeks Access to Massive Employment, Salary and Family Database Legally Restricted to Use in Child Support Cases*, ProPublica (Mar. 11, 2026), https://perma.cc/KN7R-ERA8.

[22] Nick Corasaniti, *Why Is the Trump Administration Demanding Minnesota's Voter Rolls?*, N.Y. Times (Jan. 26, 2026), https://www.nytimes.com/2026/01/26/us/politics/minnesota-trump-voter-rolls.html.

[23] Jared Perlo, Kevin Collier & David Ingram, *OpenAI alters deal with Pentagon as critics sound alarm over surveillance*, NBC News (Mar. 3, 2026), https://perma.cc/GA9G-RNHB.

[24] *See* Letter from U.S. Att'y Gen. Pamela Bondi to Minn. Gov. Tim Walz (Jan 24, 2026), https://www.nytimes.com/interactive/2026/01/24/us/pam-bondi-walz-doc.html.

Minneapolis. The letter also renewed demands for Minnesota's SNAP and Medicaid data. The Attorney General's attempt to compel Minnesota to hand over its unredacted voter rolls out of court[25] raises a serious concern that Plaintiff is attempting to further its data-collection agenda through extrajudicial means.[26] "The context of this demand within a letter about immigration enforcement casts serious doubt as to the true purposes for which Plaintiff is seeking voter registration lists in this and other cases, and what it intends to do with that data." *Oregon*, 2026 WL 318402, at *11.

Plaintiff's claims in this case, and in cases like it, are far from a good faith effort to investigate potential violations of federal law. Instead, they are a transparent effort to gather unprecedented amounts of voter data for political purposes—by any means at the executive's disposal, including through unlawful coercion. "The presumption of regularity that has been previously extended to Plaintiff that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds." *Id.*

---

[25] Plaintiff filed suit against Minnesota and its Secretary of State on September 25, 2025. Compl., *United States v. Simon*, No. 0:25-cv-03761-KMM-EMB (D. Minn. Sep. 25, 2025), ECF No. 1.

[26] As Judge Menendez, who is hearing both a challenge to ICE's operations in Minneapolis and Plaintiff's suit against Minnesota asked: "Is the executive trying to achieve a goal through force that it can't achieve through the courts?" Josh Gerstein & Kyle Cheney, *Trump, Bondi statements fuel legal case against Minnesota surge*, Politico (Jan. 26, 2026), https://www.politico.com/news/2026/01/26/minnesota-operation-metro-surge-case-00746755. Only two days after Judge Menendez's warning, and based on faulty information, the Federal Bureau of Investigation executed a search warrant on the Fulton County Election Hub and Operation Center for records related to the 2020 election, even as Plaintiff pursues CRA claims seeking the same records. Gowri Ramachandran, *Trump Administration Escalates Undermining Elections with Fulton County FBI Raid*, Brennan Ctr. for Just. (Feb. 24, 2026), https://perma.cc/PG5E-R86D; Compl., *United States v. Alexander*, No. 1:25-cv-07084-TWT (N.D. Ga. Dec. 11, 2025), ECF No. 1. A similar situation is now unfolding in Arizona. Alan Feuer, Nick Corasaniti & Glenn Thrush, *F.B.I. Subpoenas Records in Arizona in Expansion of 2020 Voting Inquiry*, N.Y. Times (Mar. 9, 2026), https://www.nytimes.com/2026/03/09/nyregion/fbi-subpoena-arizona-maricopa-county-election.html.

**II.    Plaintiff's demand undermines authority over elections that the Constitution reserves for Congress and the States.**

The administration has weaponized data to exert authority over election administration. Under the Constitution, the states and Congress share responsibilities for regulating election administration. *See* U.S. Const. art. I, § 2, cl. 1; U.S. Const. art. I, § 4, cl. 1. The Constitution "assigned no role at all to the President" in election administration. *LULAC II*, 2026 WL 252420, at *1. The notion that the executive would have the power to regulate federal elections "does not appear to have crossed the Framers' minds." *LULAC I*, 808 F. Supp. 3d at 45 (citing The Federalist No. 59 (Alexander Hamilton)); *see also* Debate in Massachusetts Ratifying Convention, in 2 The Founders' Constitution 255 (P. Kurland & R. Lerner eds., 1987) ("I know of but two bodies where-in [the power to regulate federal elections] can be lodged—*the legislatures of the several states, and the general Congress*." (statement of Caleb Strong)). "Congress, not the President, has the ultimate constitutional authority over elections." *California*, 786 F. Supp. 3d at 381.

Although the president has no constitutional role in elections, Plaintiff's first half-dozen complaints in these thirty cases seeking unredacted voter rolls began by identifying President Trump's Elections EO as the catalyst for filing these suits. Notably, Plaintiff has ceased doing so, including in this lawsuit. *Compare, e.g.*, Compl. at 2–3, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Sep. 25, 2025), ECF No. 1; Compl. at 1, *United States v. Pennsylvania*, No. 2:25-cv-01481 (W.D. Pa. Sep. 25, 2025), ECF No. 1; *and* Compl. at 1, *United States v. Simon*, No. 0:25-cv-03761 (D. Minn. Sep. 25, 2025), ECF No. 1, *with* Compl. at 1, *United States v. Evans*, No. 1:25-cv-4403 (D.D.C. Dec. 18, 2025), ECF No. 1 (solely discussing CRA). That shift indicates the faulty premise of these actions. Indeed, that is why courts have already stated that multiple provisions of the Elections EO "are inconsistent with the constitutional separation of powers and cannot lawfully be implemented." *LULAC II*, 2026 WL 252420, at *1 (permanently enjoining

provisions purporting to impose new requirements for verifying citizenship for people registering to vote or applying for absentee ballots).

Nonetheless, in early February 2026, the President called for an unconstitutional "take over" of voting procedures in many states.[27] This is an escalation, but not a change in position for this President, who in August 2025 declared that states must do "what the Federal Government, as represented by the President of the United States, tells them" as related to elections.[28] By its own public accounts, the executive's real purpose for collecting sensitive voter data from the District of Columbia and states is to disrupt and take over election processes, just as it has weaponized data in other contexts to pursue policy goals regardless of legal limitations. Specifically, Plaintiff seeks to supplant the District's role in list maintenance by substituting its own judgment and process, which violates the Constitutional and statutory assignments of election administration duties. *Weber*, 2026 WL 118807, at *17–18. Plaintiff's role in enforcing federal statutes does not permit it to engage in list maintenance, but only to ensure the states comply with federal laws. But as made clear by the agreements that DOJ has asked states to sign,[29] DOJ plans to conduct its own analyses to identify voters it deems should be removed from the rolls—and to require states to do so.[30] As with its other unlawful uses of information, Plaintiff's goal in obtaining and consolidating massive amounts of voter data is to encroach on the constitutionally mandated role of states in election administration.

---

[27] *See* Erica L. Green, Michael Gold & Robert Jimison, *Trump Repeats Call to 'Nationalize' Elections, as White House Walks It Back*, N.Y. Times (Feb. 3, 2026), https://www.nytimes.com/2026/02/03/us/politics/trump-save-act-elections.html.

[28] *See* Donald J. Trump (@realDonaldTrump), TruthSocial.com (Aug. 18, 2025, at 7:17AM), https://truthsocial.com/@realDonaldTrump/posts/115049485680941254.

[29] Eileen O'Connor, *"Confidential" Agreements Show Trump Administration's Plans for States' Voter Data*, Brennan Ctr. for Just. (Feb. 5, 2026), https://perma.cc/9DMU-YDT4.

[30] *See, e.g.*, U.S. Dep't of Just., Confidential Memorandum of Understanding between U.S. Dep't of Just. and Alaska Div. of Elections at 5 (Dec. 22, 2025), https://perma.cc/5N3S-42XK.

## CONCLUSION

In exercising its authority to enact election laws, Congress respected the constitutional structure that grants authority over elections to the states in the first instance, while balancing transparency interests with the need to protect individual citizens' right to vote. Plaintiff's unprecedented demands for sensitive voter data would upset this careful scheme and instead consolidate data and power in the hands of the federal government. This Court should reject Plaintiff's pretextual and statutorily deficient demand for the District's unredacted voter data and dismiss the Complaint.

March 23, 2026

Respectfully submitted,

/s/ Alexis D. Grady
Alexis Grady (DC 90017620)
Brent Ferguson (DC 90002204)
Daniel S. Lenz*
Sejal Jhaveri**
Renata O'Donnell (DC 1723929)
Kate Hamilton (DC 90006168)
Campaign Legal Center
1101 14th St. NW, Ste. 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
bferguson@campaignlegalcenter.org
dlenz@campaignlegalcenter.org
sjhaveri@campaignlegalcenter.org
rodonnell@campaignlegalcenter.org
khamilton@campaignlegalcenter.org
agrady@campaignlegalcenter.org


Maura Eileen O'Connor***
Justin Lam (DC 1766514)****
Brennan Center for Justice
at NYU School of Law
777 6th St. NW, Ste. 1100
Washington, DC 20001
Tel: (202) 249-7190
oconnore@brennan.law.nyu.edu

14

lamju@brennan.law.nyu.edu

*Admitted to practice in Wisconsin and Illinois. Practice in the District of Columbia is limited to federal courts.*

** Admitted to practice only in New York. Practice in the District of Columbia is limited to federal courts.*

**\*** Contributed to the brief but not appearing.*

****\** Pending admission.*

*Counsel for Amici Brennan Center for Justice and Campaign Legal Center*

15