**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE UNITED STATES OF AMERICA, <br><br>     *Plaintiff*, <br>  v. <br><br> DISTRICT OF COLUMBIA BOARD OF ELECTIONS; MONICA H. EVANS, in her official capacity as Executive Director for the District of Columbia Board of Elections; GARY THOMPSON, in his official capacity for the District of Columbia Board of Elections as Chair and Member; and KARYN GREENFIELD, in her official capacity for the District of Columbia Board of Elections as Member, <br><br>     *Defendants*. | Civil Action No. 25-4403 (RDM) |

**REPLY IN SUPPORT OF INTERVENOR DEFENDANTS COMMON CAUSE, RUTH GOLDMAN, AND CHRIS MELODY FIELDS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

    I.    The Federal Rules of Civil Procedure Apply in this Civil Action. ...................................... 1

    II.   The United States Has Failed to Plausibly Plead Compliance with Title III's Basis and Purpose Requirement. ..................................................................................... 4

        A.  DOJ Did Not Set Forth an Adequate "Basis" For its Demand. ........................................ 4

        B.  DOJ Did Not Set Forth an Adequate "Purpose" For its Demand. .................................... 7

    III.  The United States Is Not Entitled to Unredacted Records. ............................................... 9

CONCLUSION ................................................................................................................ 12

CERTIFICATE OF SERVICE .......................................................................................... 14

i

## TABLE OF AUTHORITIES

**Cases**

*Becker v. United States*,
451 U.S. 1306 (1981)........................................................................................................ 3

*Coalition for Open Democracy v. Scanlan*,
No. 24-CV-312-SE, 2025 WL 1503937 (D.N.H. May 27, 2025).......................................... 10

*Duncan v. Walker*,
533 U.S. 167 (2001)......................................................................................................... 5

*Judicial Watch v. Lamone*,
399 F. Supp. 3d 425 (D. Md. 2019) .................................................................................. 10

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) ................................................................................... 4, 6, 7

*Project Vote/Voting for America, Inc. v. Long*,
682 F.3d 331 (4th Cir. 2012) .......................................................................................... 10

*TRW Inc. v. Andrews*,
534 U.S. 19 (2001)........................................................................................................... 3

*United States v. Amore*,
No. 1:25-cv-639-MSM-PAS (D.R.I. Apr. 17, 2026) .............................................................. 1

*United States v. Benson*,
No. 1:25-cv-01148-HYJ-PJG, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026) ................. 1, 10

*United States v. Galvin*,
No. 25-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026) ..................................... passim

*United States v. Oregon*,
No. 6:25-cv-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026)................................ 1, 5, 9

*United States v. Powell*,
379 U.S. 48 (1964).................................................................................................... 1, 3, 4

*United States v. Weber*,
No. 2:25-cv-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026)................. passim

**Statutes**

26 U.S.C. § 7604(a) ....................................................................................................... 3, 4

26 U.S.C. §7605(b) .......................................................................................................... 3

52 U.S.C. § 20507(a)(4)........................................................................................................ 8

52 U.S.C. § 20701 ................................................................................................................ 9

52 U.S.C. § 20703 ...................................................................................................... 1, 2, 4, 9

52 U.S.C. § 20704 .............................................................................................................. 11

52 U.S.C. § 20705 ............................................................................................................ 2, 3

52 U.S.C. § 21083(a)(5)(A) ................................................................................................. 7

52 U.S.C. § 21085 ................................................................................................................ 8

**Rules**

Federal Rule of Civil Procedure 1 ....................................................................................... 2

Federal Rule of Civil Procedure 81 ................................................................................... 2, 3

**Other Authorities**

*Analyzing DOJ's MOU for Voter Registration List Data for FISMA Compliance*,
    Electronic Privacy Information Center (Feb. 2026),
    https://epic.org/documents/analyzing-dojs-mou-for-voter-registration-list-data-for-
    fisma-compliance/...................................................................................................... 12

District of Columbia Board of Elections, *Voter Registration Application*,
    https://perma.cc/3YLK-YH2P ..................................................................................... 8

Electronic Registration Information Center,
    *Technology & Security Overview* (Sept. 29, 2025), https://perma.cc/H8YU-MCB7............. 11

Lisa Danetz, *The Justice Department's Security Measures for Collecting Voter Rolls Are
    Inadequate*,
    Brennan Center for Justice (Feb. 25, 2026), https://perma.cc/4WSD-DJKU ........................ 12

**INTRODUCTION**

The United States fails to plausibly plead that the then-Attorney General set forth, in writing, "the basis and the purpose" of her demand for District of Columbia ("D.C.") voters' sensitive data, as Title III of the Civil Rights Act ("CRA") requires. 52 U.S.C. § 20703. In opposing dismissal, the U.S. Department of Justice ("DOJ") fails to explain how it satisfied that statutory prerequisite. Instead, it primarily insists that the CRA—a statute enacted to safeguard voters' rights—compels the wholesale disclosure of their personal information, without procedural protections or judicial review. That position contravenes statutory text, binding precedent, the Federal Rules, and common sense. It is especially troubling in light of public statements by President Trump and other federal officials suggesting that DOJ's true purpose is to amass the sensitive personal information of millions of Americans for use in an illegal federal database.

DOJ has invoked this court's process "to enforce" its demand, but the "court may not permit its process to be abused." *United States v. Powell*, 379 U.S. 48, 58 (1964). Consistent with that command, all five courts to have considered DOJ's cookie-cutter suits seeking states' unredacted voter files have dismissed them. *See United States v. Amore*, No. 1:25-cv-639-MSM-PAS, Dkt. 51 (D.R.I. Apr. 17, 2026) (attached as Exhibit 1); *United States v. Galvin*, No. 25-cv-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026); *United States v. Benson*, No. 1:25-cv-01148-HYJ-PJG, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026); *United States v. Oregon*, No. 6:25-cv-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026); *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026). This Court should do the same.

**ARGUMENT**

**I.      The Federal Rules of Civil Procedure Apply in this Civil Action.**

The United States' primary argument is that federal actions brought pursuant to Title III of the CRA are summary affairs that do not allow courts to even consider the legal sufficiency of the

1

complaint. United States' Consolidated Mem. in Opp. to Mots. to Dismiss and Reply in Supp. of Mot. to Compel ("Opp.") at 6–15 (Dkt. 54 at 11–20). That statute says nothing of the sort, and binding precedent and the Federal Rules are to the contrary. "Title III cannot transform an election records request by the federal government from an ordinary civil action into an action comparable to an order to show cause." *Weber*, 2026 WL 118807, at \*8.

Start with text. Title III provides that the Attorney General may make a "demand in writing" for certain voting-related records or papers, which "shall contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. It then provides that "[t]he United States district court for the district in which a demand is made pursuant to section 20703 of this title . . . shall have jurisdiction *by appropriate process* to compel the production of such record or paper." *Id.* § 20705 (emphasis added). In other words, where there is a dispute over a Title III demand, the Attorney General may go to a federal court to seek relief.

But Title III prescribes no special procedures for that enforcement. It does not require summary adjudication; it does not limit the court's ordinary role in assessing legal sufficiency; and it does not purport to displace the usual rules governing the exercise of judicial power. *Weber*, 2026 WL 118807, at \*8 ("Nothing in the text of Title III requires a special statutory proceeding or any abbreviated procedures."). Instead, Title III authorizes enforcement only "by appropriate process." 52 U.S.C. § 20705.

That phrase invokes the Federal Rules of Civil Procedure, which "govern the procedure in *all* civil actions and proceedings in the United States district courts," Fed. R. Civ. P. 1 (emphasis added), except where expressly displaced, *see* Fed. R. Civ. P. 81. Title III is not among the enumerated exceptions. To the contrary, Rule 81 specifically confirms that the Rules apply to "proceedings to compel testimony or the production of documents through a subpoena issued by

2

a United States officer or agency under a federal statute." Fed. R. Civ. P. 81(a)(5).

The drafters of the Federal Rules knew how to exempt particular proceedings from the Rules' otherwise categorical application, yet they did not do so here. *See TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."). The Rules—including the mechanisms they provide for testing the sufficiency of pleadings and for taking discovery—therefore apply in this civil action.

Binding precedent confirms as much. In *United States v. Powell*, 379 U.S. 48 (1964), the Supreme Court held that where a statute grants jurisdiction to enforce an investigatory demand "by appropriate process" but "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." *Id.* at 57–58 n.18; *see also Becker v. United States*, 451 U.S. 1306, 1307–08 (1981) (Rehnquist, J., in chambers).

The statute at issue in *Powell* is materially indistinguishable from Title III. The Internal Revenue Code provides that district courts "shall have jurisdiction by appropriate process to compel" compliance with IRS demands. 26 U.S.C. § 7604(a). Title III likewise provides that district courts "shall have jurisdiction by appropriate process to compel the production" of requested election records. 52 U.S.C. § 20705. Because the operative language is materially identical, *Powell*'s holding applies directly here. *See Weber*, 2026 WL 118807, at *8 n.15.

DOJ attempts to distinguish *Powell* on the ground that the Internal Revenue Code separately prohibits the IRS from subjecting taxpayers to "unnecessary examination or investigations." Opp. at 10 (Dkt. 54 at 15) (quoting 26 U.S.C. § 7605(b)). But that *substantive* limitation has nothing to do with the *procedural* question addressed in *Powell*. The Supreme Court's holding that the Federal Rules govern did not rest on § 7605(b); it rested on the statute's

authorization of enforcement "by appropriate process" in § 7604(a) and the absence of contrary procedural instructions. *See Powell*, 379 U.S. at 57–58 n.18.

Unable to distinguish controlling Supreme Court precedent, DOJ instead relies primarily on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), and related Fifth Circuit decisions from the early 1960s. *See* Opp. at 6–8 (Dkt. 54 at 11–13). But those decisions predate *Powell*, are not binding here, and arose in extraordinary factual circumstances far removed from this case. *See* Common Cause Intervenors' Mem. in Supp. of Mot. to Dismiss and in Opp. to Mot. to Compel ("CC MTD") at 12–16 (Dkt. 40-1 at 21–25); Ex. 1, *Amore*, at 8–9. In any event, nothing in those decisions suggests that courts must dispense with Rule 12 scrutiny where, as here, the United States seeks sensitive personal voter information pursuant to a legally deficient demand. This Court should therefore hold that the complaint is subject to ordinary Rule 12 review.

## II.    The United States Has Failed to Plausibly Plead Compliance with Title III's Basis and Purpose Requirement.

Applying Rule 12, the United States has failed to plausibly plead compliance with Title III's requirements, in particular the requirement that the Attorney General make a "demand in writing" which "shall contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. DOJ barely addresses the arguments for dismissal, let alone refutes them.

### A.  DOJ Did Not Set Forth an Adequate "Basis" For its Demand.

DOJ never set forth a "basis" for its demand. *See* CC MTD 16–18 (Dkt. 40-1 at 25–27). The "basis" for a CRA request is a statement of *why* the United States believes there may be some relevant violation of law. *See Kennedy*, 306 F.2d at 229 n.6; *accord Weber*, 2026 WL 118807, at *9 ("The basis is the reasoning provided by the DOJ regarding the evidence behind its investigation of a particular state and specific, articulable facts pointing to the violation of federal law."); *Galvin*, 2026 WL 972129, at *3 (finding that "the basis" under Title III "must be 'the' factual basis, not

4

just a conceivable or possible basis," for the demand); Ex. 1, *Amore*, at 11 ("[T]he 'basis' contemplated by Title III is a factual, not legal basis."). Yet the complaint alleges no such basis, and DOJ's August 14, 2025, letter—the first communication invoking the CRA—is likewise silent as to why the United States believes D.C.'s list maintenance procedures may violate the NVRA. Pls.' Mot. for Order to Compel Production of Records, Ex. 3, Dkt. 2-5. That omission is fatal. *See Galvin*, 2026 WL 972129, at *6 (dismissing because the United States failed to state a basis for its CRA demand against Massachusetts).

Rather than identify any factual basis, the United States argues it need only provide "a reference to the statutory basis for making the demand, namely HAVA and the NVRA." Opp. at 14 (Dkt. 54 at 19). But DOJ's statutory basis for making the demand is not HAVA or the NVRA; it is Title III of the CRA. *See* Compl. ¶ 30 (Dkt. 3-1 at 7). And reading "basis" to mean nothing more than a reference to the CRA would render the requirement "wholly superfluous." *See Duncan v. Walker*, 533 U.S. 167, 174 (2001). Indeed, "[t]his argument confuses the legal authority under which the Attorney General made the demand—the CRA—and the statute's requirement to state 'the basis'—the foundation in fact or evidence for the demand." *Galvin*, 2026 WL 972129, at *5; *see also* Ex. 1, *Amore*, at 11 ("To read 'basis' as meaning a legal basis would conflate that requirement with the required statement of the demand's 'purpose.'"). That alone warrants dismissal. *See Oregon*, 2026 WL 318402, at *9 (the United States' demand "contain[ed] no statement of a factual basis"); Ex. 1, *Amore*, at 7 (at a hearing "the United States acknowledged that the Demand Letter stated no factual basis for DOJ's request" for Rhode Island's unredacted voter file).

Nor does the United States plead any alternative "basis." Neither the August 14 letter containing the CRA demand nor the complaint identifies any concern with D.C.'s list maintenance

practices. *See* CC MTD 17–18 (Dkt. 40-1 at 26–27); *see also* Ex. 1, *Amore*, at 12–13 ("Absent from the demand are any factual allegations suggesting that Rhode Island may be violating the list maintenance requirements of the NVRA and HAVA, let alone the CRA. This alone would be enough to foreclose judicial enforcement of the demand."); *cf. Lynd*, 306 F.2d at 229 n.6 (demand was "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting . . . ."). Although DOJ suggests that merely invoking "possible violations" may suffice, Opp. at 14 (Dkt. 54 at 19), it does not actually identify such possibilities, and Title III does not authorize fishing expeditions untethered to any identified issue with a jurisdiction's practices. *Weber*, 2026 WL 118807, at *9; *Galvin*, 2026 WL 972129, at *3; Ex. 1, *Amore*, at 12, 14.

DOJ next attempts to retroactively manufacture a "basis" from earlier correspondence, pointing to its July 11 letter. Opp. at 16 (Dkt. 54 at 21). But that letter neither invoked Title III nor stated a basis for a CRA demand. *See* Pls.' Mot. for Order to Compel Production of Records, Ex. 1, Dkt. 2-3. Instead, it sought voter registration data pursuant to the NVRA's public-disclosure provision and separately requested information concerning D.C.'s 2024 Election Administration and Voting Survey ("EAVS") report. *Id.* at 2. D.C. provided detailed responses to those inquiries. *See* Pls.' Mot. for Order to Compel Production of Records, Ex. 2, Dkt. 2-4. DOJ cannot retroactively recast separate correspondence as compliance with Title III's statutory requirements.

In any event, DOJ's questions pertaining to the 2024 EAVS report—whether valid or not— do not provide a "basis" for its demand. The 2024 EAVS Report is a biennial survey published by the U.S. Election Assistance Commission that compiles aggregate public election-administration data submitted by all 50 states and U.S. territories. It provides a broad overview of the Nation's decentralized electoral system and expressly reflects that registration practices vary significantly

among states. Because states and territories' voter rolls are continuously updated, and because federal law contemplates that they will inevitably include some voters who are no longer eligible, the EAVS report necessarily relies on historical and aggregate data not reflected in D.C.'s current voter file.

DOJ has failed to identify any factual basis for its demand as required by Title III, so the complaint should be dismissed.

### B.  DOJ Did Not Set Forth an Adequate "Purpose" For its Demand.

Even if DOJ had articulated a "basis" for its demand—and it has not—it separately fails to state a "purpose" connected to its request for the complete, unredacted voter file. DOJ suggests that the "basis" and "purpose" are interchangeable, Opp. at 15 n.9 (Dkt. 54 at 20 n.9), but courts have long recognized they are distinct requirements, *see* CC MTD 16–17 (Dkt. 40-1 at 25–26) (citing cases); *see also Galvin*, 2026 WL 972129, at *4 ("[T]he statutory text clearly conveys that 'the basis' and 'the purpose' are conceptually distinct."). The "purpose" requirement demands an explanation of how the requested records will assist DOJ in determining whether a legal violation exists. *See Lynd*, 306 F.2d at 229 n.6.

The United States has not provided an adequate "purpose." The complaint states only that DOJ seeks "information regarding the District of Columbia's compliance with federal election law." Compl. ¶ 23 (Dkt. 3-1 at 6). HAVA requires states to collect driver license numbers or partial Social Security numbers, 52 U.S.C. § 21083(a)(5)(A), and DOJ claims it merely wishes to "verify that [D.C. is] collecting these numbers," Opp. at 15 (Dkt. 54 at 20). But that inquiry does not require the unredacted voter file. The United States can review D.C.'s voter registration form, which solicits that information; it can inquire into D.C.'s collection practices and data-entry procedures; and it can review a redacted voter file showing whether the required fields are

populated.[1] It does not need the unredacted contents of the voter file itself. Nor may DOJ second-guess D.C.'s "specific choices on the methods of complying with the requirements of [HAVA]," 52 U.S.C. § 21085.[2]

DOJ likewise fails to explain why unredacted voter data is necessary for NVRA compliance. It asserts that driver license and Social Security data are used to identify duplicate registrations and ineligible voters. Opp. at 15 (Dkt. 54 at 20). But even assuming a static snapshot of the voter file could meaningfully serve that function (which it cannot, *see* CC MTD 18 & n.17 (Dkt. 40-1 at 27 n.17)), the NVRA assigns primary responsibility for list maintenance to the States and requires only a "reasonable effort" through a "general program" to maintain accurate rolls. 52 U.S.C. § 20507(a)(4). DOJ may prefer to assume that role itself, *see* CC MTD 7–10 (Dkt. 40-1 at 16–19) (describing DOJ MOU implementing such an arrangement), but the Constitution and related federal statutes assign that role to the States. DOJ does not need unredacted voter data to assess state compliance with that statutory standard.

Finally, DOJ's asserted purpose is not only unsupported but pretextual. Its actual aim is to facilitate the creation of a centralized federal database. *See* CC MTD 20–22 (Dkt. 40-1 at 29–31). DOJ denies that it is presently "amassing a nationwide voter database" when the Civil Rights Division conducts an "individualized assessment" of a jurisdiction's voter file. Opp. at 2 (Dkt. 54

---

[1]   *See* District of Columbia Board of Elections, *Voter Registration Application*, https://perma.cc/3YLK-YH2P.

[2]   The North Carolina enforcement action cited in DOJ's opposition proves the point. Opp. at 17 n.10 (Dkt. 54 at 22 n.10). There, DOJ alleged that North Carolina "used state voter registration forms and instructions that did not explicitly require a voter to provide a driver's license or the last four digits of a social security number." Consent J. & Order at 2, *United States v. N. Carolina Bd. of Elections*, No. 5:25-cv-00283-M-RJ (E.D.N.C. Sept. 8, 2025), Dkt. 72. DOJ did not need North Carolina's voter registration list in order to assess the State's compliance with HAVA; the alleged deficiency was apparent on the face of the form.

at 7). But that carefully worded statement does not disclaim future aggregation of the data or its potential use by other federal entities such as DHS or DOGE. Indeed, when asked in recent litigation whether the Attorney General could use state voter files to "look at every person who has voted in the country," DOJ counsel stated that he did "not know the answer." Hr'g. Tr. at 49–50, *United States v. Simon*, No. 25-cv-3761 (D. Minn. Mar. 4, 2026), Dkt. 161; *see also* Aff. in Supp. of Mot. to Dismiss, Ex. A, *United States v. Galvin*, No. 25-13816-LTS (D. Mass. Mar. 13, 2026). Under these circumstances, DOJ has not truthfully stated "*the* purpose" of its demand as Title III requires. 52 U.S.C. § 20703 (emphasis added).[3]

The United States' failure to state a purpose connected to the extraordinary scope of records it demands is fatal under Title III.

### III.   The United States Is Not Entitled to Unredacted Records.

Even if DOJ provided an adequate basis and purpose—and it did not—it still would not be entitled to *unredacted* voter records. *See* CC MTD 22–25 (Dkt. 40-1 at 31–34).

First, DOJ argues that Title III's reference to "all records and papers" indicates that the records may not be redacted. Opp. at 18–20 (Dkt. 54 at 23–25) (quoting 52 U.S.C. § 20701). But a document may remain a covered "record" subject to disclosure while still being produced with appropriate redactions to protect sensitive personal information. DOJ's own authorities confirm as much. DOJ elsewhere argues that voter registration files constitute "records" under Section 8(i) of the NVRA, which similarly requires election officials to retain and disclose certain voter-registration records. Opp. at 21 (Dkt. 54 at 26) (citing *Judicial Watch v. Lamone*, 399 F. Supp. 3d

---

[3]     DOJ dismisses as "alarmist" the suggestion that it intends to use the national database to facilitate mass voter challenges. Opp. at 13 n.8 (Dkt. 54 at 18 n.8). But it fails to grapple with "its open and public statements," which confirm the true purpose of the program. *Oregon*, 2026 WL 318402, at *11; *see also* CC MTD 4–7 (Dkt. 54 at 13–16). This disconnect has led other federal courts to conclude that DOJ should not be "taken at its word" regarding its stated purposes. *Oregon*, 2026 WL 318402, at *11; *see Weber*, 2026 WL 118807, at *10–*12.

425, 434 (D. Md. 2019)). But, as explained in Common Cause Intervenors' opening brief, Section 8(i)—like Title III—is silent regarding sensitive personal information, and courts construing that provision have consistently permitted, and sometimes even affirmatively required, redaction to protect voter privacy and constitutional rights. *See* CC MTD 22–25 (Dkt. 40-1 at 31–35).[4]

DOJ next suggests that the disclosure of private voter records raises no constitutional issues because Congress authorized DOJ's demand. Opp. at 27 (Dkt. 54 at 32). That is incorrect and, in any event, beside the point. The constitutional defect is not that DOJ's request is unlawful—though it is. Rather, the constitutional problem is that compelled disclosure of unredacted voter information would impose an unconstitutional burden on the right to vote. *See* CC MTD 24 (Dkt. 40-1 at 33) (citing *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012)).

DOJ also points to *Coalition for Open Democracy v. Scanlan*, No. 24-CV-312-SE, 2025 WL 1503937 (D.N.H. May 27, 2025), asserting that private parties have received "even more detailed voter data" than DOJ seeks here. Opp. at 31–32 (Dkt. 54 at 36–37). But *Scanlan*, a challenge to a New Hampshire law requiring proof of citizenship to register to vote, is inapposite because the produced voter file did not include sensitive information like Social Security numbers or driver license numbers. Moreover, the voter information that *was* produced in discovery was subject to numerous, severe restrictions—including a scrupulous protective order that designates the file as "highly confidential," restricts its use to that litigation, restricts viewing to only a tight circle of designated personnel using "air-gapped" computers, and mandates destruction of the data after the case is closed. *See* Protective Order at 4, 13–17, *Coal. for Open Democracy v. Scanlan*, No. 24-cv-312-SE (D.N.H. June 18, 2025), Dkt. 87 and Sched. A at 2– 3, *Coal. for Open*

---

[4]    In any event, voter registration lists are not covered records under Title III because they do not "come into" elections officials' possession; rather, they are created by election officials. *Benson*, 2026 WL 362789, at *9–11.

*Democracy v. Scanlan*, No. 24-cv-312-SE (D.N.H. June 18, 2025), Dkt. 87-1. Thus, *Scanlan* does not support DOJ's claim to D.C.'s unredacted voter file—including sensitive personal information—subject to no comparable restrictions beyond its own dubious assurances that it will comply with federal privacy requirements.

DOJ similarly asserts that D.C. shares sensitive voter data through the Electronic Registration Information Center ("ERIC") in complying with federal list-maintenance requirements. Opp. at 31 (Dkt. 54 at 36). That is incorrect. Under ERIC, before transmission, voter data is converted through a hashing algorithm into randomized characters, allowing duplicate record detection without transmitting the underlying sensitive information. *See* Elec. Registration Info. Ctr., *Technology & Security Overview* (Sept. 29, 2025), https://perma.cc/H8YU-MCB7. In any event, even if D.C. did share sensitive data with ERIC, a state's voluntarily participation in an interstate election-administration compact bears no resemblance to compelled disclosure to the federal government—particularly where the federal government has expressed an intent to build a national voter database in violation of federal law.[5]

These privacy concerns are not hypothetical. DOJ insists it will comply with privacy protections, including the federal Privacy Act and Title III's confidentiality provision, 52 U.S.C. § 20704. *See* Opp. at 25–27 (Dkt. 54 at 30–32). But DOJ itself has recently admitted to misuse of voter data by federal actors. As noted in Common Cause Intervenors' opening brief, DOJ

---

[5]    DOJ also notes that it has previously obtained statewide voter registration lists under Title III that contained sensitive voter information. *See* Opp. at 2–3 & nn.2–4 (Dkt. 54 at 7–8 & nn.2–4). However, it also acknowledges that all of these cases were resolved by mutual agreement early on in litigation, some prior to any litigation at all. *See id.* A state's voluntary choice to turn over data in response to a request for documents says nothing about the requirements of Title III. Indeed, it is worth noting that, regardless of those previous arrangements, several of the States that DOJ names—Georgia, Maine, and New Jersey—have refused to turn over their states' unredacted voter files in response to materially identical demands from DOJ.

acknowledged in recent Social Security Administration ("SSA") litigation that SSA's DOGE team entered into a "Voter Data Agreement" with a political advocacy group whose "stated aim was to find evidence of voter fraud and to overturn election results in certain States." *See* CC MTD at 6–7 (Dkt. 40-1 at 15–16) (quoting Notice of Corrections to the Record at 5, *Am. Fed'n of State, Cnty. & Mun. Emps. v. Soc. Sec. Admin.*, No. 25-cv-596, (D. Md. Jan. 16, 2026), Dkt. No. 197). DOJ further admitted that federal actors shared Social Security data on an unauthorized third-party server in a "manner [that] is outside SSA's security protocols." *Id.* at 7 (Dkt. 40-1 at 16).

Independent experts have likewise identified serious deficiencies in DOJ's own voter-data security practices. A recent analysis by the Electronic Privacy Information Center concluded that DOJ has failed to comply with the Federal Information Security Modernization Act of 2014 in its collection and retention of voter-registration-list data. *Analyzing DOJ's MOU for Voter Registration List Data for FISMA Compliance*, Elec. Priv. Info. Ctr. (Feb. 2026), https://epic.org/documents/analyzing-dojs-mou-for-voter-registration-list-data-for-fisma-compliance/. Identified deficiencies include inadequate encryption, insufficient access controls, lack of audit log review, absence of breach-reporting protocols, and failure to explain safeguards for third-party contractor access. *Id.* Most concerningly, DOJ plans to "archive" the data permanently, creating a federal repository of sensitive voter information. *Id.*; *see also* Lisa Danetz, *The Justice Department's Security Measures for Collecting Voter Rolls Are Inadequate*, Brennan Ctr. for Just. (Feb. 25, 2026), https://perma.cc/4WSD-DJKU.

In sum, DOJ has offered no basis for compelling disclosure of voters' most sensitive personal information without meaningful safeguards.

## CONCLUSION

The United States' Motion to Compel should be denied and the complaint dismissed.

Dated: April 17, 2026                               Respectfully submitted,


                                                    */s/ Ethan Herenstein*
Sarah Brannon (D.C. Bar No. 90024493)               Ethan Herenstein*
Adriel I. Cepeda Derieux (D.C. Bar No.              Sophia Lin Lakin*
90026636)                                           Theresa J. Lee*
AMERICAN CIVIL LIBERTIES UNION                      Jonathan Topaz*
FOUNDATION                                          AMERICAN CIVIL LIBERTIES
915 15th St. NW                                     UNION FOUNDATION
Washington, DC 20001                                125 Broad St., 18th Floor
(347) 714-1530                                      New York, NY 10004
sbannon@aclu.org                                    (212) 549-2500
acepedaderieux@aclu.org                             eherenstein@aclu.org
                                                    slakin@aclu.org
                                                    tlee@aclu.org
                                                    jtopaz@aclu.org


* admitted *pro hac vice*                           *Counsel for Intervenors*
                                                    *Common Cause, Ruth Goldman, and*
                                                    *Chris Melody Fields*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via the Court's ECF system on all counsel of record on April 17, 2026.

*/s/ Ethan Herenstein*
Ethan Herenstein
