**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:25-cv-04403-RDM** |
| **MONICA H. EVANS,** *et al.*, | |
| **Defendants.** | |

**DEFENDANTS' REPLY IN FURTHER SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. ii

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 1

I.      The CRA Does Not Authorize a Summary Procedure and Defendants'
Motion to Dismiss Is Not Improper. ........................................................................ 1

II.     Plaintiff's Complaint Should Be Dismissed Because Its Demand Under
the Civil Rights Act Is Facially Deficient. ............................................................... 2

        A.     Plaintiff Has Not Provided a Statement of "the Basis" for Its
Demand. .................................................................................................. 3

        B.     Plaintiff's Stated Purpose Does Not Require the Unredacted VRL. .......... 6

        C.     The District's Electronic VRL Is Not a Record Covered by Title
III. .......................................................................................................... 8

III.    Plaintiff's Demand for the District's Unredacted VRL Violates Federal
Privacy Law. .......................................................................................................... 10

IV.    The District's Privacy Laws Are Not Preempted. ................................................ 13

CONCLUSION ...................................................................................................................... 14

**TABLE OF AUTHORITIES**

**Cases**

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 855 (M.D. Ala. 1960) ............................... 9

*Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182 (1999) ............................................... 10

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ..................................................................... 4

*King v. Burwell*, 576 U.S. 473 (2015) .................................................................................. 4

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016) .................................... 6

*Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) .................................... 13

*Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697 (E.D. Va. 2010) ......................... 6

*Pub. Int. Legal Found. v. Benson*, 136 F.4th 613 (6th Cir. 2025) ..................................... 7

*Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) ............................... 6

*Pulsifer v. United States*, 601 U.S. 124 (2024) ................................................................. 5

*Ross v. Blake*, 578 U.S. 632 (2016) .................................................................................. 6

*Singh v. District of Columbia*, 55 F. Supp. 3d 55 (D.D.C. 2014) .................................... 3

*Solar Energy Indus. Ass'n v. Fed. Energy Regul. Comm'n*, 154 F.4th 863
(D.C. Cir. 2025) ....................................................................................................... 4, 5

*United States v. Amore*, 1:25-cv-00639-MSM-PAS, 2026 WL 1040637
(D.R.I. Apr. 17, 2026) ................................................................................................ 9

*United States v. Benson*, 1:25-cv-1148, 2026 WL 362789
(W.D. Mich. Feb. 10, 2026) ............................................................................... passim

*United States v. Galvin*, 1:25-cv-13816-LTS, 2026 WL 972129
(D. Mass. Apr. 9, 2026) ..................................................................................... 3, 4, 5, 9

*United States v. Oregon*, 6:25-cv-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026) ............ 9

*United States v. Powell*, 379 U.S. 48 (1964) ..................................................................... 2

*United States v. Weber*, 2:25-cv-09149-DOC-ADS, 2026 WL 118807

(C.D. Cal. Jan. 15, 2026) ........................................................................... 9, 10, 11

*Wilmer Cutler Pickering Hale and Dorr LLP v. Exec. Off. of the President*,

784 F. Supp. 3d 127 (D.D.C. 2025) ...................................................................... 8

**Statutes**

5 U.S.C. § 552a ...................................................................................................... 11

52 U.S.C. § 20507 .................................................................................................... 7

52 U.S.C. § 20510 .................................................................................................... 6

52 U.S.C. § 20701 .................................................................................................... 8

52 U.S.C. § 20703 ............................................................................................. 2, 5, 8

52 U.S.C. § 21085 .................................................................................................... 7

**Other Authorities**

Alexander Castro, *Providence Federal Judge Grills DOJ Lawyer Over Reasons for Demanding

RI's Voter Data*, Rhode Island Current (Mar. 26, 2026, 6:27 PM),

https://rhodeislandcurrent.com/2026/03/26/providence-federal-judge-grills-doj-lawyer-

over-reasons-for-demanding-ris-voter-data/ ...................................................... 12

Exec. Order No. 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026) ..................................... 13

Yunior Rivas, *Trump Signs Sweeping Order Attacking Mail-In Voting*, Democracy Docket

(Mar. 31, 2026), https://www.democracydocket.com/news-alerts/trump-signs-sweeping-

order-attacking-mail-in-voting/ ........................................................................ 13

**INTRODUCTION**

Plaintiff's opposition doubles down on its assertion of almost unreviewable discretion when seeking documents under Title III of the Civil Rights Act of 1960 (CRA). But no statute excuses Plaintiff from the obligation to demonstrate that it complied with the CRA before obtaining sensitive voter records—as every court to consider Plaintiffs' recent slew of document requests has concluded. And even a brief review of the demand here demonstrates that Plaintiff has not complied with the CRA's requirements. As Plaintiff all but admits, it failed to state "the basis" for its demand for the District's unredacted voter registration list (VRL); its only argument is that the term "basis" should be treated as synonymous with the word "purpose." Nor does Plaintiff's stated "purpose" of ensuring compliance with the National Voter Registration Act (NVRA) and Help America Vote Act (HAVA) justify its request, as neither of those statutes requires production of an unredacted VRL. And the VRL is not itself a "record" subject to the CRA because it did not "come into [Defendants'] possession," but rather was created by Defendants themselves. The context surrounding Plaintiff's demand, as well as its own public statements, suggests that its demand is without statutory justification and violates federal privacy laws. For all these reasons, the Court should dismiss the Complaint with prejudice.

**ARGUMENT**

I.      **The CRA Does Not Authorize a Summary Procedure and Defendants' Motion to Dismiss Is Not Improper.**

Plaintiff's opposition spends a great deal of time rehashing its argument that the CRA creates a "special statutory proceeding" akin to an administrative subpoena and that, as such, Defendants' motion to dismiss is procedurally improper. *See* Pl.'s Consol. Opp'n to Mots. Dismiss & Reply Supp. Mot. Compel (Pl.'s Opp'n), Dkt. 54, at 11–17. But as Defendants argued, nothing in the text of the CRA "displaces the Federal Rules of Civil Procedure." Mem.

Supp. Defs.' Opp'n to Pl.'s Mot. Compel & Cross-Mot. Dismiss (Defs.' Mot.), Dkt. 41-1, at 16–20.  And even if it did, courts are empowered to ensure that their process, when invoked, is not abused.[1]  *Id.* at 20–22.  Even *United States v. Benson*, which Plaintiff cites extensively, held only that the court's role when faced with a demand under the CRA is limited, not that such a demand was functionally unreviewable.  *United States v. Benson*, 1:25-cv-1148, 2026 WL 362789, at *7 (W.D. Mich. Feb. 10, 2026) (construing demand as administrative subpoena but noting court must still determine whether agency has complied with statutory requirements and is not acting in bad faith); *see also* Defs.' Mot. at 20–22.  Because the Federal Rules are not displaced—and even if they were, Plaintiff must still comply with the statute's requirements—Defendants' motion to dismiss is procedurally proper.

## II.        Plaintiff's Complaint Should Be Dismissed Because Its Demand Under the Civil Rights Act Is Facially Deficient.

The CRA provides that the Attorney General, when seeking records, must accompany his demand with "a statement of the basis and the purpose therefor."  52 U.S.C. § 20703; Defs.' Mot. at 23–25.  Plaintiff's opposition continues to claim, without factual support, that it has complied with these requirements.  Pl.'s Opp'n at 17.  But the letters on their face fail to identify any "basis" for the demand, and the sole "purpose" Plaintiff now identifies is circular.  Further, the District's unredacted VRL is not a "record" that can be demanded under the CRA or required to be produced under the NVRA.  Defs.' Mot. at 26–27.  For all these reasons, the Complaint should be dismissed with prejudice.

---

[1]       Plaintiff's attempt to limit the Supreme Court's holding in *United States v. Powell*, 379 U.S. 48 (1964), to the Internal Revenue Code (IRC) is unavailing.  Contrary to Plaintiff's assertion that the phrase "jurisdiction . . . by appropriate process" means one thing in the IRC and another in the CRA, Pl.'s Opp'n at 14–15, the Supreme Court's interpretation of that language did not rely on other provisions of the IRC providing for judicial inquiry into the appropriateness of the subpoena*, see Powell*, 379 U.S. at 58 n.18.

2

### A.    Plaintiff Has Not Provided a Statement of "the Basis" for Its Demand.

Nowhere in either of its letters, its Complaint, or its Motion to Compel did Plaintiff state "the basis" for its demand for the District's unredacted VRL. *Id.* at 24.  In fact, Plaintiff did not invoke the CRA *at all* in its initial letter, and in its second letter stated only that "[t]he *purpose* of the request is to ascertain [the] District of Columbia's compliance with the list maintenance requirements of the NVRA and HAVA." *See generally* July 11, 2025 Letter, Dkt. 2-3, (citing only the NVRA and HAVA); Aug. 14, 2025 Letter, Dkt. 2-5, at 3 (stating "purpose" but no "basis" for the request) (emphasis added).  In its opposition, Plaintiff now states for the first time that "the basis for the demand [is] Title III of the CRA, the NVRA and HAVA." Pl.'s Opp'n at 17–18.  Putting aside the fact that Plaintiff cannot amend its Complaint (or its pre-Complaint correspondence) in its opposition, *Singh v. District of Columbia*, 55 F. Supp. 3d 55, 70 (D.D.C. 2014); *United States v. Galvin*, 1:25-cv-13816-LTS, 2026 WL 972129, at *3 (D. Mass. Apr. 9, 2026) (noting that courts must look "to the Attorney General's written demand" rather than "subsequent court filings"), that still fails to meet the statute's requirement.

Ordinary principles of statutory interpretation and Plaintiff's past practice make clear that the CRA calls for a statement of the factual basis for the demand.  In other words, the CRA's requirement of a statement of "the basis . . . therefor" necessitates a statement of "the foundation or chief supporting factor for the demand." *Galvin*, 2026 WL 972129, at *3 (alterations original).  It is not "the purpose" of the demand, as Plaintiff expressly states, Pl.'s Opp'n at 19, as that would render the requirement to state "the basis" for a demand under the CRA wholly duplicative of the requirement to state the demand's "purpose."[2] *Solar Energy Indus. Ass'n v.*

---

[2]    Plaintiff's newly staked out position that the CRA's requirement of a statement of "the basis and the purpose" is simply an example of the "lawyerly penchant for doublets" strains credulity.  *See* Pl.'s Opp'n at 20 n.9 (quoting *King v. Burwell*, 576 U.S. 473, 502 (Scalia, J.,

*Fed. Energy Regul. Comm'n*, 154 F.4th 863, 868 (D.C. Cir. 2025) ("When reading statutes, we presume that Congress did not include words that have no effect, and so we generally avoid a reading that renders some words altogether redundant." (citation modified)).  In enacting the CRA, Congress set two requirements for records demands, and Plaintiff has no grounds to now claim it only set one.

The absence of any stated "basis" here is in stark contrast to *Lynd*, on which Plaintiff principally relies, where the Attorney General stated that his "demand [was] based upon information . . . tending to show that distinctions on the basis of race or color have been made with respect to registration and voting."  *Kennedy v. Lynd*, 306 F.2d 222, 229 n.6 (5th Cir. 1962); *see also Galvin*, 2026 WL 972129, at *5 (collecting cases).  Even *Benson*, which Plaintiff cherry-picks from among recent cases interpreting this requirement, noted that Plaintiff's letter there "pointed to several purported anomalies within Michigan's voter registration data" and indicated "that the DOJ had received a complaint regarding Michigan's compliance with HAVA's requirements relating to the provision of unique voter identifiers."  *Benson*, 2026 WL 362789, at *8.  Here, by contrast, Plaintiff's August 14, 2025 letter, which Plaintiff identifies as its demand under the CRA, Pl.'s Opp'n at 17, contains no comparable factual allegations.[3]  Thus,

---

dissenting)).  As the opinion Plaintiff cites illustrates, two terms can plausibly be interpreted as redundant only where they are actually synonymous, such as "aid and abet," "cease and desist," or "null and void."  *Burwell*, 576 U.S. at 502 (Scalia, J. dissenting).  The terms "the basis" and "the purpose," by contrast, have distinct meanings as a matter of ordinary English.  And the repetition of the definite article "the" reinforces that Congress intended these to operate as distinct requirements.  Further, as noted above, Plaintiff's own unbroken historical practice confirms that "the basis" and "the purpose" in the statute are to be understood as two separately required pieces of information.

[3]     Plaintiff argues that its July 11, 2025 letter, which demanded the District's unredacted VRL under the NVRA and asked a series of questions about the District's voter list maintenance practices based on information reported by the District to the federal Election Assistance

the Court need not even consider whether Plaintiff "failed to provide a *sufficient* statement of the basis and [the] purpose of its request," as Plaintiff contends would be improper, *id.* at 18 (emphasis added), because Plaintiff offered no basis at all, *see* Defs.' Mot. 23–25; *see also Galvin*, 2026 WL 972129, at *3. Similarly, the Court need not "question or examine 'the reasons why the Attorney General considers the records essential,'" Pl.'s Opp'n at 18 (quoting *Lynd*, 306 F.2d at 226), because Plaintiff has not provided any such reasons.

Contrary to Plaintiff's suggestion, Defendants do not contend that Plaintiff is required to provide "a factual basis showing an *extant* violation of federal law." *Id.* at 19 (emphasis original). Rather, Defendants note that, consistent with other federal investigative powers, Congress here required some factual proffer for the demand. *Galvin*, 2026 WL 972129, at *6 (noting that search warrants must be supported by probable cause but do not require proof beyond a reasonable doubt). In effect, Plaintiff's position appears to be that, despite the CRA's requirement that a demand "shall contain a statement of the basis and the purpose," 52 U.S.C. § 20703, election officials have no recourse when served with a facially deficient demand. That would essentially read the requirement of a statement of the basis and the purpose out of the CRA altogether. *Pulsifer v. United States*, 601 U.S. 124, 143 (2024) ("When a statutory construction renders an entire subparagraph meaningless . . . the canon against surplusage applies with special force." (citation modified)); *Solar Energy Indus. Ass'n*, 154 F.4th at 868. Such a result is particularly absurd where, as here, Congress has chosen to use the mandatory "shall,"

---

Commission (EAC), "provided additional context" for its demand under the CRA. Pl.'s Opp'n at 21. But as noted, Plaintiff's July 11, 2025 letter contained no reference to the CRA whatsoever. *See generally* July 11, 2025 Letter. Moreover, in its August 6, 2025 response, the Board answered all of Plaintiff's questions concerning the EAC data. *See* Aug. 6, 2025 Letter, Dkt. 2-4, at 3–6. Plaintiff did not allege in its August 14, 2025 letter that the Board's responses were deficient or otherwise renew its questions concerning the EAC data, and so Plaintiff gave no indication that these questions served as "the basis" for Plaintiff's CRA demand.

which generally "means a court may not excuse a failure" to comply with the statute's requirements. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Plaintiff's failure to comply with the statutory requirement warrants dismissal of the Complaint.

### B.    Plaintiff's Stated Purpose Does Not Require the Unredacted VRL.

Beyond Plaintiff's failure to accompany its demand with "a statement of the basis . . . therefor," Plaintiff's stated purpose does not require the production of the District's unredacted VRL. Defs.' Mot. at 27–28.

Plaintiff argues that it needs the unredacted VRL "to assess compliance with the NVRA and HAVA," but it never explains why the VRL would be necessary to enforce either of those statutes when neither entitles Plaintiff to such information. *Id.* at 25. Plaintiff notes that the NVRA states that it applies "in addition to all other rights and remedies provided by law." 52 U.S.C. § 20510(d)(1); Pl.'s Opp'n at 17. Left unsaid: what "other rights and remedies" Plaintiff is relying on other than the CRA. And Plaintiff cannot mean to rely on the NVRA itself, because it is well-established that the NVRA does not require the District to produce its unredacted VRL. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) ("[N]othing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the [voter list.]"); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016); *Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 711 (E.D. Va. 2010). The Court should decline to adopt Plaintiff's circular reasoning.

Elsewhere, Plaintiff misreads Defendants' argument. Defendants do not suggest that compliance with the NVRA and HAVA's list maintenance requirements cannot ever implicate the concerns about disenfranchisement that motivated the CRA. *Contra* Pl.'s Opp'n at 21. Indeed, as the history of HAVA makes clear, improving data collection and information sharing can prevent "mistaken voter removals." *Id.* at 22 (quoting Nat'l Comm'n on Fed. Election

6

Reform, *To Assure Pride and Confidence in the Electoral Process* (Aug. 2001), Dkt. 54-10, at 10). For this very reason, the Board works diligently to ensure it complies with the list maintenance requirements of the NVRA and HAVA. Defs.' Mot. at 12 (outlining mail canvass procedure for identifying voters who may have moved for potential removal). Nowhere in Plaintiff's recitation of the history of erroneous voter removals, however, is any indication or explanation of why it now needs the District's unredacted VRL to determine its compliance with the NVRA and HAVA—the purported "purpose" of the demand. *See* Pl.'s Opp'n at 20; *see also Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 624 (6th Cir. 2025) (noting the NVRA requires "that states 'conduct a general program that makes a reasonable effort to remove the names of ineligible voters'" (quoting 52 U.S.C. § 20507(a)(4)(A))). And invoking this history of HAVA is particularly inapposite here, given that Plaintiff seeks to create a role for itself in list maintenance that Congress expressly reserved for the states. *Compare* 52 U.S.C. § 20507(b) (charging states with "the maintenance of an accurate and current voter registration roll for elections for Federal office"), *and id.* § 21085 ("[T]he specific choices on the methods of complying with the requirements of [HAVA] shall be left to the discretion of the State."), *with* Ex. 1 at 106, Transcript of Mots. Hear'g, *United States v. Amore*, 1:25-cv-00639-MSM-PAS (D.R.I. Mar. 26, 2026) (Plaintiff suggesting that it needs unredacted VRLs "to do effective list maintenance").

Finally, Plaintiff asserts that it "previously has pursued successful matters, including in litigation, to obtain statewide voter registration lists under Title III of the CRA." Pl.'s Opp'n at 29. It may well be the case that, in other circumstances and on different "statement[s] of the basis and the purpose," state and local election officials in other states have produced their VRLs to Plaintiff. *Id.* at 36 n.21 (noting that "seventeen states have provided" Plaintiff their unredacted

7

VRLs in response to similar requests). But Plaintiff has not, in fact, "successfully" pursued this issue in litigation—if any court had held that Plaintiff was entitled to a state's unredacted VRL under the CRA, Plaintiff would surely have cited it. That other states have chosen to provide such documents—through settlement or voluntarily—does not mean that the CRA or any other law entitles Plaintiff to the District's unredacted VRL. *Cf. Wilmer Cutler Pickering Hale and Dorr LLP v. Exec. Off. of the President*, 784 F. Supp. 3d 127, 151–52 (D.D.C. 2025) (permanently enjoining as unconstitutional Executive Order targeting law firm's protected speech despite "[o]ther firms facing similar Executive Orders . . . capitulat[ing]").

C.   **The District's Electronic VRL Is Not a Record Covered by Title III.**

Plaintiff's request is also deficient because Title III applies only to records that "come into [the government's] possession," not records that the government itself creates. 52 U.S.C. §§ 20701, 20703. Even Plaintiff's favored authority, *Benson*, concluded that Plaintiff was not entitled to Michigan's unredacted VRL for this reason. *Benson*, 2026 WL 362789, at *9. Plaintiff spends several pages arguing that *Benson* erred in drawing a distinction between "documents that people submit to the State as part of the voter registration process" and documents "like the voter registration list that [are] created by state officials." *Id.*; Pl.'s Opp'n at 25–29. Plaintiff's argument here proceeds in similar fashion to its others, insisting that anything less than "sweeping" authority would frustrate its ability to enforce federal election law, Pl.'s Opp'n at 26–27, despite this having never been a problem in the past.

As previously noted, no court has ever held that the CRA entitles Plaintiff to a copy of a state's unredacted VRL, and the Jim Crow-era cases Plaintiff relies on cannot be to the contrary, as they long predate the existence of centralized, electronic voter rolls. *See id.* at 24 (quoting *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 855 (M.D. Ala. 1960)). *Gallion*'s assertion that "[t]here is nothing uncertain about that part of the Act requiring preservation and production

8

of all records and papers which are in the possession of an election official" came in response to officials spuriously claiming the CRA itself was unclear in order to avoid producing the documents squarely covered by it.  187 F. Supp. at 855.  Contrast here, where Defendants make no such arguments about the clarity of the CRA and have in fact produced a redacted version of the VRL—despite it not being a "record" under the CRA.  *See* Defs.' Mot. at 14.  Plaintiff cannot point to a case holding that it is entitled to the unredacted version of a state VRL under the CRA.  And there is a growing consensus among courts that it is not.  *See Benson*, 2026 WL 362789, at *11; *United States v. Weber*, 2:25-cv-09149-DOC-ADS, 2026 WL 118807, at *8 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, 6:25-cv-01666-MTK, 2026 WL 318402, at *7 (D. Or. Feb. 5, 2026); *Galvin*, 2026 WL 972129, at *3; *United States v. Amore*, 1:25-cv-00639-MSM-PAS, 2026 WL 1040637, at *6 (D.R.I. Apr. 17, 2026).

Further, *Benson*'s observation that "Congress frequently uses the phrase 'come into possession' to refer to items that a person *obtains* rather than *creates*," *Benson*, 2026 WL 362789, at *9 (emphasis original), is more plausible than Plaintiff's "temporal distinctions," Pl.'s Opp'n at 28.  As *Benson* noted, this interpretation "is bolstered by the next words in the sentence," describing records "relating to any *application*, registration, payment of poll tax, or other act requisite to voting in such election." *Benson*, 2026 WL 362789, at *9 (quoting 52 U.S.C. § 20701).  The historical context of the CRA also supports this reading, as "when the CRA was passed, the federal government's attempts to protect the voting rights of Black citizens had been frustrated by state officials' destruction of voter registration applications." *Id.* (quoting U.S. Comm'n on Civ. Rts., *Report of the United States Commission on Civil Rights* 93 (1959)).  The CRA's text and purpose are clear: it covers only documents *submitted* by an applicant for

9

voter registration.  Because Plaintiff is not entitled to the District's unredacted VRL under the

CRA, the Complaint should be dismissed.  Defs.' Mot. at 25–27.

**III.**     **Plaintiff's Demand for the District's Unredacted VRL Violates Federal Privacy Law.**

Not only is Plaintiff not entitled to the District's unredacted VRL under the authorities it

cites, but it is barred from collecting this information under federal privacy law.  *See id.* at 28–

30.  More specifically, Plaintiff failed to comply with the requirements of the Privacy Act and

the E-Government Act before embarking on its quest to collect the tranches of data it seeks here.

*See id.* at 28–30.  This also warrants dismissal of the Complaint with prejudice.

The Privacy Act prohibits the federal government from collecting "records regarding

Americans' First Amendment activities unless narrow exceptions apply."  *Weber*, 2026 WL

118807, at *17 (citing 5 U.S.C. § 552a(a)(3), (a)(5), (e)(4), (e)(7), (f)).  And, as Plaintiff

acknowledges, voter registration and the decision whether to participate in elections is a form of

political expression protected by the First Amendment.  Pl.'s Opp'n at 32 ("Without question,

voting and registration implicate speech and actions protected under the First Amendment."); *see*

*Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 195 (1999); *Weber*, 2026 WL 118807, at

*17 ("[V]oter registration, participation in elections, as well as party affiliation are all types of

political expression protected by the First Amendment.").  Plaintiff's only argument against the

application of the Privacy Act's First Amendment bar is that the unredacted VRL is "within the

scope of an authorized law enforcement activity," because Plaintiff is entitled to it under the

CRA (and the NVRA and HAVA), and the unredacted VRL is necessary for the enforcement of

the NVRA and HAVA.  Pl.'s Opp'n at 32.  As Defendants have explained, Plaintiff is wrong on

both counts.  Defs.' Mot. at 23–27.  Indeed, Plaintiff's own past practice demonstrates that

compliance with the Privacy Act is no barrier to carrying out investigations and enforcing federal

10

election law.  *See* Br. *Amici Curiae* of Former Emps. of the U.S. Dep't of Just., Dkt. 47-1, at 21–22, 22–28.

Plaintiff belatedly attempts to show that its data collection will comply the Privacy Act's requirement that, prior to "establish[ing] or revis[ing]" a "system of records," it must publish a System of Records Notice (SORN) in the Federal Register.  5 U.S.C. § 552a(e)(4); Pl.'s Opp'n at 30–32.  First, Plaintiff argues that its demand "expressly incorporate[d] the Privacy Act" by generally citing a provision of HAVA that references a section of the Privacy Act.  Pl.'s Opp'n at 30 (citing Aug. 14, 2025 Letter at 2).  This is not sufficient to put the District, let alone the individual voters whose personal information would be collected, on notice of the "nature, scope, and routine uses of the records before they are collected by the federal government."  *Weber*, 2026 WL 118807, at *18.  Next, Plaintiff points to a number of previous SORNs and its "Privacy Policy," claiming that "[t]he full list of routine uses for this collection of information" can be found therein.  Pl.'s Opp'n at 31.  But aside from pointing to their existence, Plaintiff offers no insight into how any of these SORNs applies to the information Plaintiff seeks here—the District's unredacted VRL.  *See id.* at 31 (citing the SORN at 68 Fed. Reg. 47,610, 47,611); *Weber*, 2026 WL 118807, at *18 (noting that nothing in the SORN at 68 Fed. Reg. 47,610, 47,611 "put[s] a member of the American public on notice that specifically, their voter registration data is going to be collected on an unprecedented level and used for a plethora of government activity")).  This is plainly insufficient for compliance with the Privacy Act.

Plaintiff's demand similarly violates the E-Government Act because Plaintiff did not complete a "privacy impact assessment" (PIA) prior to demanding the District's unredacted VRL.  Defs.' Mot. at 29–30.  Plaintiff argues that this requirement is only triggered "when a new system is established—not when a demand is made."  Pl.'s Opp'n at 33.  That is a distinction

11

without a difference. Plaintiff demands a copy of an existing database, so a new system would be "established" upon receipt. Other than its suggestion that a PIA is not required, Plaintiff's only argument that the E-Government Act is inapplicable is, again, that it must have the ability to enforce federal election laws. *Id.* at 33–34. Once more left unsaid is how compliance with federal privacy laws prevents Plaintiff from enforcing the NVRA and HAVA. *See* Br. *Amici Curiae* of Former Emps. of the U.S. Dep't of Just. at 21–22 (detailing Privacy Act-compliant methods of enforcing federal election law).

Further, Plaintiff's assertion that it will comply with federal privacy law and only use the District's unredacted VRL for "routine uses" is hard to square with Plaintiff's own statements elsewhere. *See* Defs.' Mot. at 13, 33–34; *see also* Br. *Amici Curiae* of Brennan Ctr. for Just. & Campaign Legal Ctr., Dkt. 48-1, at 18–19 (describing federal government's massive data collection efforts). And those assertions are particularly cold comfort in light of Plaintiff's own admission in open court that it intends to share the unredacted state VRLs it has collected with other federal agencies. *See* Ex. 1 at 66 (in response to court's question about whether Plaintiff could share VRLs with the Department of Homeland Security, Acting Voting Rights Section Chief Eric Neff stating "yes, and we intend to do so"); *see also* Alexander Castro, *Providence Federal Judge Grills DOJ Lawyer Over Reasons for Demanding RI's Voter Data*, Rhode Island Current (Mar. 26, 2026, 6:27 PM), https://rhodeislandcurrent.com/2026/03/26/providence-federal-judge-grills-doj-lawyer-over-reasons-for-demanding-ris-voter-data/. When pressed, Mr. Neff—Plaintiff's declarant here, *see* 2d Decl. Eric Neff, Dkt. 54-1—admitted that "the Civil Rights Division cannot promise what any other agency will or will not do" with the unredacted VRLs. *See* Ex. 1 at 67. Other elements of the federal executive branch, too, have taken actions suggesting that Plaintiff's intent in obtaining the District's unredacted VRL is not for "routine

12

use." *See* Exec. Order No. 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026); *see also* Yunior Rivas,

*Trump Signs Sweeping Order Attacking Mail-In Voting*, Democracy Docket (Mar. 31, 2026),

https://www.democracydocket.com/news-alerts/trump-signs-sweeping-order-attacking-mail-in-

voting/ ("The order directs the Department of Homeland Security to work with the Social

Security Administration to create lists of verified U.S. citizens eligible to vote in each state.").

Because Plaintiff has failed to comply with federal privacy laws, the Complaint should be

dismissed with prejudice.[4]

## IV.     The District's Privacy Laws Are Not Preempted.

Finally, Plaintiff is not entitled to the District's unredacted VRL because the District's

privacy laws allowing for appropriate redaction of personal identifying information (PII) are not

preempted.  *See* Defs.' Mot. at 30–32.  In its opposition, Plaintiff notes that the District's privacy

laws allow for disclosure of information which is otherwise "authorized or mandated by other

law."  Pl.'s Opp'n at 34 (quoting D.C. Code § 2-524(c)).  Again, Plaintiff assumes its conclusion:

that disclosure of the unredacted VRL is "authorized or mandated by other law."  It is not.  As

Defendants explained in their motion, none of the CRA, NVRA, or HAVA expressly preempt

the District's privacy laws, Defs.' Mot. at 30–31, and there is no implied preemption because it is

possible to comply with both the disclosure provisions of the NVRA and the need to redact PII,

*Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012).

Reading the statutes this way does not, as Plaintiff argues, render the CRA's privacy

provisions meaningless.  Pl.'s Opp'n at 35.  Defendants have never argued that the CRA only

covers public information; it quite clearly contemplates access to applications for voter

registration and other documents that are submitted by voters, consistent with its purpose of

---

[4]     Or, at a minimum, the Court should set a hearing to determine whether Plaintiff's demand has been made in good faith.  *See* Defs.' Mot. at 33–34.

13

ensuring that valid registrations are not rejected for discriminatory reasons.  *See, e.g.*, *Benson*,

2026 WL 362789, at *9.  But, as noted, *supra* II.C., the District's VRL itself is not a "record"

under the CRA, and Plaintiff's demand for it is subject to the same constraints as any public

disclosure of a District record containing highly sensitive PII.

## CONCLUSION

For the foregoing reasons and those stated in Defendants' Motion to Dismiss, the Court

should dismiss Plaintiff's Complaint with prejudice.

Date: April 17, 2026.                                      Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Amanda C. Pescovitz*
AMANDA C. PESCOVITZ [1735780]
Assistant Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 805-7495
Email: amanda.pescovitz1@dc.gov

*Counsel for Defendants*

14