IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA BOARD OF ELECTIONS; MONICA H. EVANS, in her Official Capacity as Executive Director for the District of Columbia Board of Elections; GARY THOMPSON, in his official capacity for the District of Columbia Board of Elections as Chair and Member; and KARYN GREENFIELD, in her official capacity for the District of Columbia Board of Elections as Member,<br><br>*Defendants*. | Civil Action No. 25-cv-4403 (RDM) |

**REPLY IN SUPPORT OF MARYLAND/DC ALLIANCE FOR RETIRED AMERICANS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 2

    I.   Rule 12(b) motions are the appropriate vehicles to test the sufficiency of the complaint. .............................................................................................................. 2

    II. DOJ did not state any "basis" or a proper "purpose" for its Title III demand. ................... 4

        A. DOJ failed to provide *any* "basis" for its demand. ......................................... 5

        B. DOJ failed to state a proper "purpose" for its demand. ................................. 9

    III. DOJ failed to demonstrate that it is entitled to unredacted records. ................................ 11

    IV. DOJ's collection of the District of Columbia's voter list would violate the Privacy Act .......................................................................................................................... 16

CONCLUSION ................................................................................................................. 17

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alabama ex rel. Gallion v. Rogers*,
187 F. Supp. 848 (M.D. Ala. 1960) ........................................................................... 13

*ANR Storage Co. v. FERC*,
904 F.3d 1020 (D.C. Cir. 2018) ................................................................................. 9

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
854 F.3d 683 (D.C. Cir. 2017) ................................................................................. 10

*CFPB v. Source for Pub. Data, L.P.*,
903 F.3d 456 (5th Cir. 2018)...................................................................................... 4

*Citizens for Resp. & Ethics in Wash. v. Trump*,
No. 17-cv-1228 (CRC), 2018 WL 8187206 (D.D.C. June 25, 2018) ...................... 12

*Coleman v. Kennedy*,
313 F.2d 867 (5th Cir. 1963)...................................................................................... 7

*Dinkens v. Att'y Gen. of U.S.*,
285 F.2d 430 (5th Cir. 1961)..................................................................................... 13

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) ................................................................................................... 2

*In re Admin. Subpoena No. 25-1431-019*,
800 F. Supp. 3d 229 (D. Mass. 2025) ...................................................................... 10

*In re Subpoena No. 25-1431-014*,
No. MC 25-39, 2025 WL 3252648 (E.D. Pa. Nov. 21, 2025) ................................. 10

*In re Wallace*,
170 F. Supp. 63 (M.D. Ala. 1959)............................................................................ 13

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962).......................................................................... 2, 6, 14

*Leocal v. Ashcroft*,
543 U.S. 1 (2004) ....................................................................................................... 8

*Media Matters for Am. v. Fed. Trade Comm'n*,
No. 25-5302, 2025 WL 2988966 (D.C. Cir. Oct. 23, 2025) ...................................... 9

*Mercy Hosp., Inc. v. Azar*,
   891 F.3d 1062 (D.C. Cir. 2018) ................................................................................. 7

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) ................................................................................................ 14

*Niz-Chavez v. Garland*,
   593 U.S. 155 (2021) ............................................................................................. 6, 9

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Nickels*,
   150 F.4th 1260 (9th Cir. 2025) ................................................................................ 8

*Pub. Int. Legal Found., Inc. v. Bellows*,
   92 F.4th 36 (1st Cir. 2024) .................................................................................... 12

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
   566 U.S. 639 (2012) ................................................................................................ 14

*United States v. Amore*,
   No. 25-cv-00639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr. 17, 2026) ........................ *passim*

*United States v. Benson*,
   No. 25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026) .................................... 2, 4, 10

*United States v. Galvin*,
   No. 25-cv-13816, 2026 WL 972129 (D. Mass. Apr. 9, 2026) ........................................... *passim*

*United States v. Oregon*,
   No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026) ........................................... *passim*

*United States v. Powell*,
   379 U.S. 48 (1964) ............................................................................................. 3, 4, 8

*United States v. Weber*,
   No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) .................................... *passim*

*Voter Reference Found., LLC v. Torrez*,
   160 F.4th 1068 (10th Cir. 2025) ............................................................................. 12

**STATUTES**

26 U.S.C. § 7605(b) .......................................................................................................... 4

26 U.S.C. § 7604(a) .......................................................................................................... 3

5 U.S.C. § 552a ................................................................................................................ 13, 16

52 U.S.C. § 20507(i)(1) .................................................................................................... 12, 14

52 U.S.C. § 20703 ............................................................................................ 1, 4, 7, 9

52 U.S.C. § 20704 ................................................................................................. 13

52 U.S.C. § 21083(a)(1)(A) .................................................................................. 13

52 U.S.C. § 20701 ................................................................................................... 6

52 U.S.C. § 20705 ................................................................................................... 3

D.C. Code § 2-534(a)(2) ................................................................................... 11, 12

## RULES

Fed. R. Civ. P. 1 ...................................................................................................... 1

Fed. R. Civ. P. 12(b) ............................................................................................. 2, 4

## REGULATIONS

3 DCMR § 510.5 ................................................................................................ 11, 12

## OTHER AUTHORITIES

106 Cong. Rec. 7767 (Apr. 8, 1960) ......................................................................... 7

Exec. Order No. 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026) ................................. 11

Purpose, Black's Law Dictionary (4th rev. ed. 1968) ................................................ 5

Basis, Black's Law Dictionary (4th rev. ed. 1968) .................................................... 5

**INTRODUCTION**

The U.S. Department of Justice's ("DOJ") opposition to all Defendants' motions to dismiss merely confirms that the complaint fails to state a claim under Title III of the Civil Rights Act of 1960.[1]

Title III requires an explicit "statement of the basis and the purpose" of all record requests, 52 U.S.C. § 20703, yet DOJ has failed to provide *any* basis for its demand, and its alleged purpose—to "ascertain District of Columbia's compliance with the list maintenance requirements of the NVRA and HAVA," Dkt. 2-5 at 3—is beyond the scope of Title III. Accepting DOJ's claims here would grant the federal government unprecedented power to invade a traditional domain of the States on nothing more than a whim, and to employ the federal judiciary to do so. This is not what Congress authorized.

The plain text of Title III settles this matter, but there are several other reasons why this suit must be dismissed. For one, the District of Columbia's own privacy laws prevent disclosure, and none of the federal laws that DOJ invokes preempt them. For another, the federal Privacy Act prohibits unfettered governmental acquisition of sensitive personal information and requires agencies to implement procedural safeguards before doing so. Because DOJ has not complied with these requirements, it is barred from collecting the sensitive voter data that it seeks.

In an attempt to sidestep the fatal defects in its complaint, DOJ insists that Rule 12(b) does not even apply. But the Federal Rules of Civil Procedure are clear that they "govern the procedure in *all* civil actions," Fed. R. Civ. P. 1 (emphasis added), including this one, absent an express

---

[1] Motions to dismiss have been filed by both sets of Intervenor-Defendants—the Maryland/DC Alliance for Retired Americans, Dkt. 43-3 ("Alliance Mot."), and Common Cause and two individuals, Dkt. 40-1—and by Defendants District of Columbia Board of Elections, Monica H. Evans, Karyn Greenfield, and Gary Thompson, Dkt. 41-1.

exemption. And nothing in the text of Title III allows DOJ to ignore the Federal Rules. Rule 12(b)

motions serve an important gatekeeping function "for weeding out meritless claims," *Fifth Third*

*Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014), and because DOJ's complaint does not state

a claim for relief, the Court should grant those motions, just as five federal district courts in

California, Oregon, Massachusetts, Rhode Island, and Michigan dismissed DOJ's parallel lawsuits

in those States. *See United States v. Weber*, No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan.

15, 2026), *appeal docketed*, No. 26-1232 (9th Cir. Mar. 3, 2026); *United States v. Oregon*, No.

6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026), *appeal docketed*, No. 26-1231 (9th Cir.

Mar. 3, 2026); *United States v. Galvin*, No. 25-cv-13816, 2026 WL 972129 at *4 (D. Mass. Apr.

9, 2026); *United States v. Amore*, No. 25-cv-00639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr.

17, 2026); *see also United States v. Benson*, No. 25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb.

10, 2026), *appeal docketed*, No. 26-1225 (6th Cir. Feb. 27, 2026) (dismissing because DOJ's

demand did not comport with the plain text of Title III).

## ARGUMENT

I.     **Rule 12(b) motions are the appropriate vehicles to test the sufficiency of the complaint.**

DOJ's lead argument is that this case is immune from Rule 12 motion practice simply

because it involves Title III. *See* Mem. of the U.S. in Opp'n to Mots. to Dismiss ("Opp.") at 11–

17, Dkt. 54. But as the Alliance has explained, and multiple federal courts have now found in

rejecting this exact argument from DOJ, nothing in Title III creates such an exemption and the

cases DOJ relies on in support of its argument—*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962),

and a handful of other out-of-circuit cases from the 1960s—are irreconcilable with the Supreme

Court's subsequent decision in *United States v. Powell*, 379 U.S. 48 (1964).[2] *See* Alliance Mot. to Compel Opp. at 9–11 ("Alliance MTC Opp."), Dkt. 43-5; *see also Oregon*, 2026 WL 318402, at *8; *Weber*, 2026 WL 118807, at *8 & n.15; *Amore*, 2026 WL 1040637, at *4.[3]

*Powell* makes clear that cases invoking Title III proceed according to the regular rules of civil litigation. In *Powell*, the Court held that where a statute "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." 379 U.S. at 58 n.18. The Court's conclusion was based on statutory text in the Internal Revenue Code ("IRC") *identical* to the relevant language in Title III—a jurisdictional grant stating that courts "shall have jurisdiction by appropriate process to compel" compliance, *see* 52 U.S.C. § 20705; 26 U.S.C. § 7604(a)—which the Court found to neither displace the Federal Rules nor relieve courts of their duty to examine governmental demands. *See Powell*, 379 U.S. at 58 & n.18. *Powell* thus compels the same conclusion for Title III. As federal courts in parallel cases brought by DOJ have confirmed, *Powell*'s application of the Federal Rules is controlling and a Rule 12(b)(6) motion is procedurally proper. *See Weber*, 2026 WL 118807, at *8 (holding DOJ's parallel lawsuit was governed by the Federal Rules before proceeding to evaluate and grant

---

[2] The Massachusetts federal court that dismissed DOJ's claims first ruled against DOJ on its motion to compel and then dismissed the case as moot. *Galvin*, 2026 WL 972129, at *6. The court did not resolve the precise procedure or standard required by Title III because there, as here, "the Attorney General offered no basis—none—and the demand was therefore facially inadequate." *Id.*

[3] DOJ also includes a stray citation to Rule 81, which identifies certain types of proceedings for which the Federal Rules do not apply. Opp. at 13. But as the Alliance explained, Rule 81 does not apply to Title III, *see* Alliance MTC Opp. at 9, and DOJ does not contend otherwise, *see* Opp. at 13 (noting Rule 81 discusses "*other* federal claims" to which the Federal Rules do not apply (emphasis added)).

3

motions to dismiss); *Oregon*, 2026 WL 318402, at *7–8 (same); *Amore*, 2026 WL 1040637, at *6 (same).[4]

In an attempt to distinguish *Powell*, DOJ posits that the IRC included language that permitted judicial inquiry into the purpose of the government's request for records—namely, the IRC's statement that "[n]o taxpayer shall be subjected to unnecessary examination or investigations," 26 U.S.C. § 7605(b)—that Title III lacks. But DOJ's representation that *Powell* relied on section 7605(b) to apply the Federal Rules is simply wrong. Instead, in addition to observing that the IRC did not specify the procedure to be followed in invoking the court's jurisdiction, *Powell*, 379 U.S. at 58 n.18, the Supreme Court explained that a court may inquire into the underlying reasons for a records examination when the government seeks judicial enforcement. *Id.* at 58. The same is true here: Because the government has invoked the court's process to compel compliance, the Court may examine the request to ensure its own process is not being abused by enforcing a request issued for an improper purpose. *Id.*

## II.     DOJ did not state any "basis" or a proper "purpose" for its Title III demand.

Before a government agency may validly demand information pursuant to an authorizing statute, it first "must comply with statutory requirements." *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 460 (5th Cir. 2018). For Title III, that means DOJ must issue a written demand for covered records that "contain[s] a statement of the basis *and* the purpose therefor." 52 U.S.C. § 20703 (emphasis added). Under basic principles of statutory interpretation, and as recently

---

[4] DOJ cites to the decision in *Benson*, but that case is in accord on this point. After briefly surveying Sixth Circuit law on administrative subpoenas, the court emphasized that DOJ's complaint "takes the form of a traditional civil complaint, not a petition for summary enforcement." *Benson*, 2026 WL 362789, at *7. Accordingly, the court "appl[ied] the Rule 12(b)(6) standard to evaluate"—and dismiss—"the United States' CRA claim." *Id.*

4

confirmed by four federal courts, that provision means "DOJ is required to offer a written statement of *both* the purpose and basis for its demands." *Weber*, 2026 WL 118807, at *8; *Oregon*, 2026 WL 318402, at *9; *Galvin*, 2026 WL 972129 at *4; *Amore*, 2026 WL 1040637, at *5–6. This requirement is "not merely perfunctory—it is a critical safeguard." *Weber*, 2026 WL 118807, at *9. As the Alliance explained in its motion, DOJ fails to provide *any* basis for its demand, and its stated purpose is not proper. *See* Alliance Mot. at 14–22. DOJ fails to rebut these showings, either one of which is sufficient to dismiss the complaint.

### A.    DOJ failed to provide *any* "basis" for its demand.

There is no way to read DOJ's July 11 and August 14 letters to contain any statement of the "basis" for DOJ's demand for the District of Columbia's unredacted voter registration list. The July 11 letter does not make a Title III demand (or cite Title III at all). Instead, DOJ's Title III demand appears in the August 14 letter. Dkt. 2-5 at 3. But, as the *Galvin* court observed about a nearly identical letter that DOJ sent Massachusetts the same day, "[t]he August 14 letter contains nothing that could fairly be characterized as the factual basis for the demand." *Galvin*, 2026 WL 972129, at *4. At most, the August 14 letter states that "[t]he *purpose* of the request is to ascertain District of Columbia's compliance with the list maintenance requirements of the NVRA and HAVA." Dkt. 2-5 at 3 (emphasis added). But a *purpose* for DOJ's request is not the same as the *basis* for the request. *Galvin*, 2026 WL 972129 at *4 ("[T]he statutory text clearly conveys that 'the basis' and 'the purpose' are conceptually distinct."); *compare Basis*, *Black's Law Dictionary* (4th rev. ed. 1968) (including definitions such as the "groundwork," "support," or "foundation" of something), *with Purpose*, *Black's Law Dictionary* (4th rev. ed. 1968) (defining "purpose" to include "an end, intention, or aim, object, plan, project").

In stating that it would use the District of Columbia's voter list to evaluate the District's compliance with list maintenance obligations, DOJ has indicated what it purportedly intends to *do*

with the voter list, *i.e.*, its "purpose" in requesting it. But in no way can DOJ be said to have explained its *basis* for requesting the list, *i.e.*, why DOJ is *justified* in demanding that the District produce sensitive information in the first place. "Reading 'basis' in the way [DOJ] suggests collapses its meaning with that of 'purpose.' Title III explicitly requires a statement of 'the basis *and* the purpose.'" *See Oregon*, 2026 WL 318402, at *9 (citation omitted)). Indeed, DOJ has previously understood how to comply with this requirement: in *Lynd*, for example, DOJ explained that its basis for demanding records under Title III was that it had "information . . . tending to show" that racial discrimination in voter registration had occurred in the target jurisdiction. 306 F.2d at 229 n.6. DOJ's August 14 letter to Defendants says nothing remotely analogous.

Nor can DOJ's July 11 and August 14 letters simply be stitched together to form a "basis" for the demand. Congress was unequivocal: "[t]his demand"—i.e., the "written demand" required under the CRA—"shall contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20701. In *Niz-Chavez v. Garland*, the Supreme Court held that similar statutory instructions require the government to provide "'a' single document containing the required information, not a mishmash of pieces with some assembly required." 593 U.S. 155, 161 (2021) (emphasis added); *id.* at 163 ("Congress's decision to use the indefinite article 'a' … suggests that the government must issue a single statutorily compliant document."). What's more, even if the Court were to consider the July 11 and August 14 letters together for the purpose of evaluating DOJ's Title III "demand," which it should not, *see Oregon*, 2026 WL 318402, at *9, DOJ's correspondence *still* fails to provide a basis. While the July 11 letter reports figures related to the District of Columbia's alleged voter list maintenance efforts and asks questions about those efforts, it does not supply any reason to believe that the District of Columbia is abridging any of its citizens' voting rights or violating any federal laws. *See generally* Dkt. 2-3. At best, "DOJ may have stated a purpose for its

6

request, . . . however, in no circumstances has the DOJ established the basis for its request." *See Weber*, 2026 WL 118807, at *9 (citation modified); *Oregon*, 2026 WL 318402, at *8–9; *Galvin*, 2026 WL 972129 at *4; *Amore*, 2026 WL 1040637, at *4–5.

Left without any articulated basis to point to, DOJ essentially asks the Court to read the "basis" requirement out of the statute. In support, DOJ quotes a decades-old opinion from the Fifth Circuit for the proposition that "a sufficient statement would be the assertion that the demand was made for the purpose of investigating *possible violations* of a Federal statute." Opp. at 19 (emphasis added) (quoting *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963)). But that statement, by its plain terms, speaks only about how DOJ may satisfy the *purpose* requirement— it says nothing about how DOJ would satisfy Title III's separate *basis* requirement. In any event, the Fifth Circuit was merely quoting a single legislator's discussion of Title III. But DOJ omitted what that legislator said in the same colloquy—that Title III was intended "to add essential features to the laws already on the statute books toward ending discrimination in the voting privileges of our citizens." 106 Cong. Rec. 7767 (Apr. 8, 1960) (statement of Sen. Keating). And the actual text of Title III is plain: it requires a statement of "basis *and* . . . purpose." 52 U.S.C. § 20703 (emphasis added). To hold that stating a "purpose" was sufficient to satisfy Title III's requirement to state a "basis *and* . . . purpose," *id.* (emphasis added), would be an impermissible reading of the statute, since "[t]he federal government's logic would collapse 'the basis' into 'the purpose,' rendering a statutory phrase superfluous." *Galvin*, 2026 WL 972129, at *5*; see also Mercy Hosp., Inc. v. Azar*, 891 F.3d 1062, 1068 (D.C. Cir. 2018) ("We presume that Congress did not 'include words that have no effect,' and so we generally 'avoid a reading that renders some words altogether redundant.'" (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176–77 (2012)).

DOJ next lowers the bar for itself again, claiming it can satisfy the "basis" requirement merely by *referencing* a statute, without stating any reason to believe that the District of Columbia might be *violating* that statute. Opp. at 19 ("A reference to the statutory basis for making the demand, namely HAVA and the NVRA, suffices."). But this argument requires a tortured reading of the term "basis," contrary to its standard usage. *See, e.g.*, *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) ("When interpreting a statute, we must give words their 'ordinary or natural' meaning." (citation omitted)). DOJ contends that the mere *existence* of a legal obligation (federal list maintenance requirements) gives DOJ a "basis" to demand the District of Columbia's voter list, even though DOJ has not articulated any reason to believe that the District might not be complying with those requirements. Such an interpretation would drain Title III's "basis" requirement of any practical meaning. *See Pac. Coast Fed'n of Fishermen's Ass'ns v. Nickels*, 150 F.4th 1260, 1273 (9th Cir. 2025) (courts "cannot adopt a statutory reading [that] will sap the interpreted provision of all practical significance"), *cert. pending sub nom. Cal. Sportfishing Prot. All. v. Nickels*, No. 25-989 (U.S. Feb. 17, 2026); *see also Oregon*, 2026 WL 318402, at *8–9; *Weber*, 2026 WL 118807, at *9; *Amore*, 2026 WL 1040637, at *4–5.

Finally, DOJ retreats to its maximalist position that any statement of its basis is wholly immune from judicial scrutiny. Opp. at 18–19. As the Alliance has explained, that extreme contention is plainly wrong. *See* Alliance MTC Opp. at 11–12. Four federal courts have now rejected this very argument, *Weber*, 2026 WL 118807, at *8; *Oregon*, 2026 WL 318402, at *7–8, *Galvin*, 2026 WL 972129, at *4, *Amore*, 2026 WL 1040637, at *5–6, and the Supreme Court held exactly the opposite when construing identical statutory language, *see Powell*, 379 U.S. at 58 & n.18. This Court should find the same.

In several parallel cases, DOJ has responded to the *Galvin* decision by requesting "leave for the United States to send the Defendants a curing elaboration letter rather than dismiss on the merits." *See, e.g.*, Resp. Notice Suppl. Auth. at 2, *United States v. DeMarinis*, 1:25-cv-03934-SAG (D. Md. Apr. 13, 2026), Dkt. 66. But, as the *Amore* court recognized, that is too little, too late. *See* 2026 WL 1040637 (rejecting suggestion that DOJ could cure its deficiency with a new statement of basis). Moreover, in a recent order upholding an injunction against enforcement of a civil investigative demand, the D.C. Circuit emphasized that the "sweeping demand was issued without the statutorily required explanation of the permissible grounds for its issuance" and that "Congress required the [government] to explain itself *when it issued* the Demand." *Media Matters for Am. v. Fed. Trade Comm'n*, No. 25-5302, 2025 WL 2988966, at *7, 10 (D.C. Cir. Oct. 23, 2025) (emphasis added). Congress made the same choice in enacting Title III, which plainly requires DOJ to provide "a statement of the basis and the purpose therefor," in a specific pre-suit written demand. 52 U.S.C. § 20703; *see also Media Matters for Am.*, 2025 WL 2988966, at *7 (stating that whether a government action was "made in accordance with applicable law" depends on the "the reasons stated" at the time of action, not "post-hoc rationalizations") (quoting *ANR Storage Co. v. FERC*, 904 F.3d 1020, 1024 (D.C. Cir. 2018)). The DOJ demand that resulted in this suit is facially invalid, requiring dismissal. *See Niz-Chavez,* 593 U.S. at 161, 172 (holding that the government was required to "issue a single statutorily compliant document").

**B.     DOJ failed to state a proper "purpose" for its demand.**

Even if DOJ had supplied a valid basis, which it did not and cannot, the August 14 letter and any similar letter "would remain legally insufficient to support a Title III records demand because its purpose would fall outside Title III's intended scope." *Amore*, 2026 WL 1040637, at *6. In its motion to dismiss, the Alliance explained that Congress's purpose in enacting Title III was to protect federal voting rights, and that Title III has nothing to do with investigating

administrative voter registration list requirements, which were enacted decades later in the NVRA and HAVA. *See* Alliance Mot. at 13, 18–19 (discussing context in which Title III was enacted, its early enforcement history, and contemporaneous precedent discussing the statute's purpose). The Alliance further explained that courts will not enforce a document demand when made for a purpose that is far removed from that of the authorizing statute. *See, e.g., see CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 689–90 (D.C. Cir. 2017) (rejecting a civil investigative demand supported by a "perfunctory" statement of purpose); *In re Subpoena No. 25-1431-014*, No. MC 25-39, 2025 WL 3252648, at *12, 17 (E.D. Pa. Nov. 21, 2025); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 237 (D. Mass. 2025) (quashing subpoena when DOJ "failed to show proper purpose" under the statutory scheme, rejecting notion that "the Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review"); *see also* Alliance MTC Opp. at 11–12. DOJ simply does not rebut these points. Accordingly, the fact that DOJ's stated reason for demanding the District of Columbia's voter list is disconnected from Title III's purpose is an independent ground upon which the Court can dismiss DOJ's complaint, as three federal courts have already done. *See Oregon*, 2026 WL 318402, at *10 (concluding DOJ failed to state a Title III claim because its stated purpose "lacked any reference or relation to the purposes for which Title III was enacted"); *Weber*, 2026 WL 118807, at *9 (holding that NVRA and HAVA compliance could not be a sufficient purpose for Title III demand); *Amore*, 2026 WL 1040637, at *6 (same).[5]

---

[5] There are other independent grounds to dismiss this case, too: the *Benson* court dismissed because Title III's plain text does not authorize inspection of voter registration lists, which do not "come into possession" of election officials but are instead *created* by them. *Benson*, 2026 WL 362789, at *10; *see* Alliance Mot. at 17–19.

Lastly, there is ample and growing evidence that DOJ's asserted purpose in litigation is not the true purpose of its demands for unredacted voter data. *See Weber*, 2026 WL 118807, at *10–12 (concluding DOJ's stated purpose in demanding California's voter list was "pretextual" and "contrived"); *Oregon*, 2026 WL 318402, at *11 (expressing "serious doubt as to the true purposes for which [DOJ] is seeking voter registration lists in this and other cases, and what it intends to do with that data"). While DOJ claims that it is not "amassing a nationwide voter database," Opp. at 7, this assertion is at odds with reporting as well as repeated comments from the Administration and even President Trump himself. *See* Alliance MTC Opp. at 19. In fact, President Trump recently issued an Executive Order directing federal agencies to create a national list of voters that he demands be used in determining who is allowed to vote by mail. *See* Exec. Order No. 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026). All of this strongly indicates that DOJ's stated purpose is pretextual, which is insufficient to justify its demand. *See Galvin*, 2026 WL 972129, at *3 (recognizing Title III "requires a statement of <u>why</u> the Attorney General demands production of the requested records—and, as conveyed by the statute's use of the definite article, the statement must be 'the' factual basis, not just a conceivable or possible basis"). At the very least it shows why discovery into DOJ's actual purpose is warranted if the Court does not dismiss DOJ's claim.

## III.     DOJ failed to demonstrate that it is entitled to unredacted records.

Even if DOJ's request did not fall outside of Title III (and for the reasons discussed, it plainly does), DOJ still would not be entitled to the records it seeks because Title III reaches only public documents, not "confidential, private" information. *Lynd*, 306 F.2d at 231. District of Columbia law protects sensitive voter data, and nothing in Title III can be read to preempt those laws. *See* 3 DCMR § 510.5 (providing that sensitive voter personal information is "confidential" and not "subject to disclosure"); D.C. Code § 2-534(a)(2) (exempting from disclosure

11

"[i]nformation of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy").

DOJ entirely ignores 3 DCMR § 510.5, forfeiting any argument that those protections are inapplicable or otherwise preempted. *Citizens for Resp. & Ethics in Wash. v. Trump*, No. 17-cv-1228 (CRC), 2018 WL 8187206, at *1–2 (D.D.C. June 25, 2018) (finding that plaintiff had forfeited arguments that it failed to raise in its opposition to the motion to dismiss).

As for D.C. Code § 2-534(a)(2), DOJ points to subsection (c), which provides that "[t]his section shall not operate to permit nondisclosure of information of which disclosure is authorized or mandated by other law." *Id.* § 2-534(c). DOJ contends that the NVRA and HAVA are categories of "other law" exempted from nondisclosure, Opp. at 34, but this argument fails for multiple reasons. DOJ offers no argument against the legions of decisions holding that the NVRA *does not* preempt State privacy protections. *See*, *e.g., Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024); *Voter Reference Found., LLC v. Torrez,* 160 F.4th 1068, 1082–83 n.14 (10th Cir. 2025); *see also* Alliance Mot. at 22–26. Relatedly, DOJ's claim that it is entitled to sensitive information because Title III requires production of "all" records and papers, *id.*, is again at odds with the mountains of decisions holding that redaction is permitted under the NVRA, which likewise mandates public inspection of "all" records, 52 U.S.C. § 20507(i)(1). As explained, courts have consistently concluded that this text is consistent with redaction of sensitive information. *Voter Reference Found., LLC,* 160 F.4th at 1082–83 n.14; Alliance Mot. at 22–26.

DOJ also fails to explain why Title III—its cause of action in this case—mandates disclosure. As explained, *see supra* at 9–10, Title III is unrelated to HAVA and NVRA's list

12

maintenance requirements, and is therefore subject to a separate preemption analysis.[6] And it would make no sense to conclude that Title III preempts State privacy laws to allow DOJ to evaluate a State's compliance with the NVRA and HAVA, when both the NVRA and HAVA themselves express congressional intent *not* to preempt those same laws. *See* Alliance Mot. at 22–26. In fact, HAVA imposes *no* disclosure requirements on States at all. *See* 52 U.S.C. § 21083(a)(1)(A).

DOJ next argues that Title III must be read to reach sensitive information contained within voter files because otherwise Section 304 of the Civil Rights Act—which limits the instances in which DOJ may "disclose" records it receives pursuant to a Title III demand—would have no purpose. Opp. at 35; *see* 52 U.S.C. § 20704. That is wrong. Section 304 exists to prevent DOJ from disclosing sensitive information; it does not indicate any congressional intent to preempt States from enacting *broader* protections from disclosure. Indeed, it is not unusual for Congress to place restrictions on the federal government's ability to disclose information even when the same data could be held and shared freely by other parties. The Privacy Act, for example, does just that. *See* 5 U.S.C. § 552a *et seq.* Moreover, some of the most sensitive information protected by District of

---

[6] The Alliance also explained in its motion that the presumption against preemption applies to the District of Columbia's privacy laws, notwithstanding the fact that Title III concerns the production of voter registration records. Alliance Mot. at 23. In the background section of its brief, DOJ suggests that Title III was passed pursuant to the Elections Clause, *see* Opp. at 9–10, in an attempt to show that the presumption against preemption does not apply here. But contemporary caselaw recognizes that Title III was enacted pursuant to the Fifteenth Amendment. *See Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853–54 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961) (per curiam); *see also In re Wallace*, 170 F. Supp. 63, 66 (M.D. Ala. 1959). That understanding is more appropriate because Title III is a document preservation and production law; it does not make or alter State election regulations, nor does it implicate voting requirements. Accordingly, the presumption against preemption applies here. But even if it did not, Title III still would not conflict with District of Columbia privacy protections for the reasons stated herein.

Columbia law (*e.g.*, social security numbers) were not required to be included in State registration records until HAVA was enacted decades after Title III. Clearly, then, Congress did not contemplate in 1960 that State voter records would contain such sensitive information. Even *Lynd* observed in 1962 that Title III was intended to reach only "public records which ought ordinarily to be open to legitimate reasonable inspection," and that it did *not* reach "confidential, private papers and effects." 306 F.2d at 231.

With the text and caselaw against it, DOJ then resorts to policy arguments, complaining that DOJ would not be able to "meaningfully investigate" a State's list maintenance efforts under HAVA and the NVRA without "access to the voter identification numbers." Opp. at 34 n.19. Lurking in the background of DOJ's theory is the misguided assumption that Congress surely *meant* to provide DOJ this inspection tool for list-maintenance purposes. But there is no indication whatsoever that Congress intended for DOJ to be able to "investigate" a State's compliance with HAVA or the NVRA using Title III. Congress has in fact spoken on disclosure of voter list maintenance records—in the NVRA. The NVRA grants DOJ the right to inspect "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). DOJ cannot supplant the inspection tool Congress *did* provide for federal list maintenance supervision— *id.* § 20507(i)—with the one DOJ *wishes* Congress provided. Doing so would violate the "well established canon of statutory interpretation … that the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)). And again, HAVA and the NVRA indicate that Congress did *not* intend for DOJ to access this type of private information. Alliance Mot. at 23–24; *supra* at 12–13.

14

Nor would the unredacted voter file meaningfully assist DOJ in evaluating whether the District of Columbia has complied with the NVRA and HAVA. The list by itself cannot reveal anything about the District of Columbia's list maintenance *programs* or *procedures* for list maintenance. Moreover, a mere snapshot of the District's voter file and the data within it would become outdated almost immediately and shed little light on whether the District is complying with its list maintenance obligations.

Finally, there is no merit to DOJ's contention that it should be handed the sensitive information it seeks because "private parties have been granted access to even more detailed voter data than what the United States has requested." Opp. at 36. To the contrary, in the case that DOJ cites in support of this argument, the court *excluded* social security numbers and other confidential information, and entered a protective order strictly limiting who can view the limited information that was produced, how they can view it, and for what purposes. *See* Protective Order & Schedule A, *Coal. for Open Democracy v. Formella*, No. 1:24-CV-00312-SE-TSM (D.N.H. June 18, 2025), Dkts. 87 & 87-1.[7] Similarly, that the government has previously obtained Statewide voter registration lists does nothing for DOJ's legal arguments here. As DOJ concedes, the two examples it points to—in Georgia and Texas—were resolved via a consent decree and a memorandum of understanding, and thus the questions raised here were not contested in those litigations. Opp. at 8 & n.2; *see Oregon*, 2026 WL 318402, at *10 n.3.

---

[7] DOJ has been informed about these restrictions in several other cases, including in briefs filed nearly *five* months before DOJ filed its brief here, *see, e.g.*, Reply Br. Supp. Mot. Intervene, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 3, 2025), Dkt. 31; Reply Br. Supp. Mot. Intervene, *United States v. Scanlan*, No. 1:25-cv-371 (D.N.H. Dec. 16, 2025), Dkt. 22, but DOJ persists in repeating this false claim.

**IV.     DOJ's collection of the District of Columbia's voter list would violate the Privacy Act.**

Lastly, DOJ misunderstands how the Privacy Act operates. That Act does not, in fact, "simply require" that protected information "be securely stored and not be subject to unauthorized dissemination or use." Opp. at 30. The Privacy Act requires much more, including that the government give the public notice and publish detailed disclosures whenever an agency "establish[es] or revise[es]" a system of records. 5 U.S.C. § 552a(e)(4), (11). Namely, the agency must publish a Systems of Record Notice ("SORN") that discloses the name and location of the system, the categories of records maintained in it, and all "routine uses" to which the system can be put, among other things. *Id.* § 552a(e)(3)–(4). The agency must also "provide an opportunity for interested persons to submit written data, views, or arguments to the agency." *Id.* § 552a(e)(11).

While DOJ misunderstands the Privacy Act's requirements, it concedes that the Act applies here. Opp. at 30. That means DOJ cannot collect or maintain the District of Columbia's voter list unless there is a SORN that covers that system of records. 5 U.S.C. § 552a(e)(4). Although DOJ cites Federal Register notices containing SORNs in an attempt to show compliance with that requirement, *see* Opp. at 31, as the Alliance has explained, none of the cited SORNs could be read to cover DOJ's unprecedented attempt to maintain a Statewide voter list, *see* Alliance Mot. at 27–28. DOJ does not identify any other SORN that could conceivably cover this system of records. *See Weber*, 2026 WL 118807, at *18 ("[N]one of the SORN[s] identified give sufficient notice to the American public as required under the Privacy Act."). Consequently, until DOJ complies with the Privacy Act's procedural requirements by publishing an appropriate SORN and allowing for public comment, the Privacy Act bars it from collecting and maintaining the District of Columbia's voter list. *Id.* ("Because the DOJ has not fulfilled its requirements under the Privacy Act, it cannot collect the sensitive, unredacted voting records of millions of Californians.").

16

**CONCLUSION**

For all of the foregoing reasons, the Maryland/DC Alliance for Retired Americans respectfully requests that the Court grant its motion, dismiss the Complaint, and enter judgment for Defendants.

Dated: April 17, 2026

Respectfully submitted,

*/s/ Lalitha D. Madduri*
Lalitha D. Madduri (DC 1659412)
Jacob D. Shelly (DC 90010127)
Kevin R. Kowalewski* (NY 5946645)
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4652
lmadduri@elias.law
jshelly@elias.law
kkowalewski@elias.law

*Admitted *pro hac vice*.

*Counsel for Intervenor-Defendant the Maryland/DC Alliance for Retired Americans*

17